UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
NOV 20 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

RHONDA N. BAIRD, Pro Se )
On her behalf and on behalf of National )
Association of Government Employees )
("NAGE") Local R3-77 )
13615 Layhill Road )
Silver Spring, MD 20906 )
 )
     Plaintiff, )
 )
     v. )
 )
DAVID HOLWAY, )  CASE NUMBER 1:06CV01985
PRESIDENT OF NAGE )
159 Burgin Parkway )  JUDGE: John D. Bates
Quincy, Massachusetts 02169 )
 )  DECK TYPE: Labor/ERISA (non-employment)
RICHARD PETTA, Individually and as an )
Officer of NAGE LOCAL R3-77 )  DATE STAMP: 11/20/2006
1200 K Street, NW )
Washington, D.C. 20005 )
 )
DWAYNE JEFFERS, Individually and as an )
Officer of NAGE LOCAL R3-77 )
 )
ROBERT PERRY, Individually and as a )
Former Officer of NAGE LOCAL R3-77 )
1354 Monaco Drive )
Severn, MD 21144 )
 )
     Defendants. )
 )

JURY ACTION

## COMPLAINT AND RQUEST FOR JURY TRIAL

### PRELIMINARY STATEMENT

1.     This is an action for damages suffered by Plaintiff Rhonda Baird through the inexplicable misconduct of various NAGE and Local officers. Despite her best efforts to secure

1

sensitive private records from her arbitration in the Local's possession and to stop the obnoxious name calling by several Local officers, Ms. Baird's worse fears were realized when the records were disseminated and the name calling escalated into complaints that allege that she created an unsafe and hostile work environment for several Local officers.

## PARTIES

2.  Plaintiff Rhonda Baird is an employee of the Pension Benefit Guaranty Corporation ("PBGC"), a government agency, and a dues paying member of NAGE Local R3-77. Ms. Baird resides in Maryland, but works for PBGC in Washington D.C. She is a former Steward of NAGE Local R3-77. Ms. Baird brings this action on her behalf to redress various violations of her rights. However, as important as it is to vindicate her rights, Ms. Baird also files this suit to address claims on behalf of NAGE Local R3-77, which has been injured by the failure of its officers to protect the rights of its members against officers acting against the interest of its members.

3.  NAGE Local R3-77 ("the Union" or "Local") is a Local of NAGE. It is the exclusive representative, under NAGE, of approximately 500 bargaining unit employees at the PBGC in Washington D.C. with respect to certain of their terms and conditions of employment.

4.  Defendant David Holway is the President of NAGE. He is sued in his capacity as President of NAGE and also in his individual recognizance. Holway resides in Massachusetts.

5.  Defendant NAGE is a labor organization and union that is the parent of NAGE Local R3-77. NAGE is headquartered in Boston, Massachusetts.

6.  Richard Petta is an employee of PBGC, and the current President of NAGE Local R3-77, which is located in Washington D.C.

7.  Dwayne Jeffers is an employee of PBGC, and the current Chief Steward and an officer of NAGE Local R3-77, which is located in Washington D.C. Jeffers is believed to reside in

Maryland.

8.  Robert Perry was an employee of PBGC, and the Secretary of NAGE Local R3-77, which is located in Washington D.C.

## JURISDICTION

9.  This jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 2201, 29 U.S.C. §§ 412, 413 and 501(b). This Court has subject matter jurisdiction under 28 U.S.C. § 1331. Plaintiff also seeks relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Plaintiff's claims under the common law of the District of Columbia arise from the same occurrences as his federal law claims and are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## VENUE

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. §§412 and 464(b)(2). The events or omissions giving rise to plaintiff's claims occurred in this judicial district.

## FACTUAL STATEMENT

11. Plaintiff Rhonda Baird started her employment with PBGC in 1997 as an attorney. She currently works in the Office of Chief Counsel ("OCC").

12. Ms. Baird served as a steward for the Local and observed the manner in which NAGE did not support EEO claims.

13. She raised her concerns publicly at a Local meeting and to NAGE leadership directly. For example, Ms. Baird continually raised an EEO matter in a meeting with NAGE President Holway to ensure NAGE took action before an impending deadline in the case. As a result, the employee was able to continue her action with a private attorney and obtained the department

3

transfer she sought and compensatory damages.

14. NAGE President Holway was especially hostile to Ms. Baird after the meeting in which she raised the issue of the deleterious impact if NAGE missed the impending deadline in the EEO case.

15. In April and May 2002, Ms. Baird testified on behalf of the Local in a contentious arbitration brought by the Local challenging the EEO structure of PBGC.

16. Ms. Baird was the only employee who had never filed an EEO complaint to testify on behalf of the Local. Ms. Baird was examined by NAGE Attorney Gina Lightfoot-Walker during the arbitration. Indeed, NAGE sought to expand Ms. Baird's testimony into areas that Ms. Baird told them would definitely result in retaliation from her employer PBGC.

17. In November 2002, Ms. Baird was accosted in her office by her acting supervisor, John Paliga. When she reported the incident to PBGC management, they responded with sneers and smirks and intentionally failed to conduct an objective investigation.

18. Ms. Baird continually informed PBGC and the Local of the emotional and psychological struggles she faced as a result of the incident and subsequent events. Especially the difficulties she faced working in an environment in which she no longer felt safe and/or secure.

19. The Local invoked arbitration to redress the violations committed by supervisor John Paliga and various management officials, specifically PBGC labor management officials Philip Hertz, Jay Resnick and Richard Lattimer (the "Baird Arbitration").

20. Beginning in 2003, NAGE refused all assistance in the arbitration. Ms. Baird followed each step of the process outlined by NAGE to appeal its denial of financial assistance for her arbitration. NAGE continued to deny financial assistance at each step and told Ms. Baird she could seek, among other things, workers compensation or disability benefits.

21. Ms. Baird was therefore forced to proceed with the arbitration at her own costs and representing herself.

22. During the interim, in November 2003, NAGE imposed a trusteeship on NAGE Local R3-77.

23. The trusteeship led to the appointment of a Trustee and the ousting of the Local's officers. The ousted Local officers initiated a legal action in this Court challenging the imposition of the trusteeship and resulting actions of NAGE the "Trusteeship Action"). Plaintiff Rhonda Baird filed several declarations in the Trusteeship Action supporting the ousted officers and expressing her belief that NAGE unlawfully retaliated and discriminated against certain employees including her.

24. The only in-house steward appointed by the Trustee was Dwayne Jeffers.

25. Thus, the only assistance Ms. Baird could have was from Jeffers, someone Ms. Baird knew as a fellow challenger of PBGC's seemingly discriminatory practices. Jeffers became Ms. Baird's assistant despite his lack of experience and legal education.

26. The Baird Arbitration was bifurcated into two phases-- liability and damages. The liability phase resulted in 13 days of hearing in July and August 2004.

27. The Arbitrator issued a strict protective order for records, like personnel records, rendered discoverable in the Baird Arbitration.

28. The attorneys representing PBGC in the Baird Arbitration misused medical information obtained in another action. Despite the fact that PBGC was aware that Ms. Baird's early medical treatment after the November 13, 2002 and subsequent events were the result of a misdiagnosis, PBGC sought to rely on the questionable medical information and to mischaracterize Ms. Baird's condition by using only the questionable medical information.

29. Beginning in the latter phases of the Baird Arbitration hearing, Jeffers and Baird

5

began having differences of opinion on the handling of claims against PBGC. Jeffers subscribed to a theory that did not care about any resulting "collateral damage" from his conduct. Collateral damage referred to any adverse impact on other employees. Ms. Baird strongly opposed this practice not only in her own action but also as used against any other bargaining unit member.

30. This lead to a breakdown in the relationship between Baird and Jeffers and also Perry, who supported Jeffers and whose situation was the pivotal case leading to "collateral damage" of other employees.

31. In early 2005, Jeffers began calling Ms. Baird names such as a "pathological liar" and "psychotic" in e-mails that included PBGC management officials. He alleged, in writing, that Ms. Baird was guilty of making "terrorist style" threats to him, and also called her a "pornographer's friend" simply because Ms. Baird sought to help an employee address a suspension, an employee Ms. Baird did not know prior to rendering assistance to the employee.

32. In April and May 2005, Ms. Baird filed complaints about Mr. Jeffers' conduct with PBGC, NAGE and the Local.

33. In late April 2005, a decision was issued in the Baird Arbitration that found PBGC liable for unlawful retaliation, violations of several provisions of the Collective Bargaining Agreement ("CBA"), PBGC's own rules and various provisions of labor law.

34. Due to the level of hostility from Jeffers and Perry, who were now officers of the Local, Ms. Baird repeatedly requested that the Local protect the medical and personnel information in the Baird Arbitration files in its custody. Ms. Baird strongly urged that she be provided the records to preserve the sensitive private and confidential information contained in the records.

35. Furthermore, Ms. Baird asked the Local to remove Mr. Jeffers from serving in any capacity on the Baird Arbitration due to the conflicts of interests between them and the disturbing

6

names Mr. Jeffers called her in writing.

36. PBGC, NAGE, and the Local leadership all failed to take any action in response to complaints about Mr. Jeffers.

37. On November 21, 2005, during a conference in the Arbitration, Jeffers informed the Arbitrator, Ms. Baird and representatives of PBGC, that he had provided large amounts of the record in the arbitration to Mr. Perry.

38. The records were allegedly released in response to a subpoena issued to Jeffers. The subpoena was issued to Jeffers in his individual capacity, not as a Local officer. The subpoena sought only files related to Mr. Perry and no one else.

39. Jeffers admitted he released medical (Plaintiff's mental health records) and personnel information relating to employees other than Perry. Jeffers only access to the information was in his capacity as an officer of the Local.

40. Though the subpoena Mr. Jeffers was responding to only sought information in the record related to Mr. Perry, Mr. Jeffers acknowledged producing protected personnel information on other employees and my medical information from the record.

41. On November 21, 2005, the same day Jeffers reported his release of the protected information, Ms. Baird filed notices to both the Local and NAGE about the conduct. Shortly thereafter, complaints were filed with NAGE, the Local and PBGC.

42. Several weeks after the initial complaint, Richard Petta, President of the Local, stated that he did not know anything about the release of the records until he read the November 21, 2005 e-mail from me.

43. During the next several months, Ms. Baird beseeched the Local and NAGE to take action to retrieve and redress the dissemination of the highly private information contained in the

7

medical and personnel records. To date, no substantive action has been taken by NAGE or officers of the Local in response to this unwarranted and unsanctioned release of information by Jeffers.

44.     Additionally, Jeffers and Perry have now officially asserted that Ms. Baird created an unsafe work environment for them to include spurious allegations that Ms. Baird created or maintained a hostile work environment for Jeffers and Perry. Mr. Perry doing so publicly on August 2, 2006 in a complaint filed in this Court (Case No. 06-1371).

## COUNT I
### Violation of Bill of Rights of Members of Labor Organizations

45.     Plaintiff adopts and incorporates by reference al of the allegations set forth in the previous paragraphs as if the same were set forth in full in this count.

46.     Under 29 U.S.C. § 411(a)(a)(2), every member of a labor organization has the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting.

47.     NAGE deliberately failed to take action to protect the rights and interest of Plaintiff Rhonda Baird particularly after she provided declarations for use in the Trusteeship action, Declarations that were not favorable for NAGE.

48.     Plaintiff Rhonda Baird had openly questioned NAGE's actions that did not appear to be supportive of members struggling to address EEO claims against PBGC. Not only did Ms. Baird comment publicly at Local meetings, but she also stated her belief and knowledge of various facts and circumstances in writing.

49.     When Ms. Baird went to NAGE for any assistance at all, NAGE was hostile to her and her requests. Including its failure to address the latest and egregious actions of Local officers

8

who were involved in disseminating privacy protected information from Local records

50. As a result of NAGE's failure to act, Plaintiff has suffered further emotional stress, shock, anguish, loss of self-esteem, fear, helplessness, insult, hair loss, anxiety and loss of sleep.

51. When compared to its willingness to impose a trusteeship on the Local for violations that were not as egregious, NAGE's treatment of the Plaintiff is malicious, reckless, and indifferent to Plaintiff's legal rights. For this Plaintiff is entitled to punitive damages.

## COUNT II
### Violation of Fiduciary Responsibilities of Officers of Labor Organizations

52. Plaintiff adopts and incorporates by reference al of the allegations set forth in the previous paragraphs as if the same were set forth in full in this count.

53. Under 29 U.S.C. § 501(a), when any officer, agent, or representative of a labor organization is alleged to have violated the fiduciary duties owed to the organization and its members and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization.

54. By his own statements, Jeffers disseminated medical and personnel records from the record in the Baird Arbitration. Among the disseminated information were documents Jeffers and all other Local officers knew was protected by an order issued by the Arbitrator.

55. Instead of respecting the protective order or the rights and privileges of the employees to protect the information in the records, Jeffers unlawfully converted union property to

9

his own use. Perry and Petta, the other Local officers at the time, were aware of the unlawful conversion of the records. Surprisingly, neither Perry nor Petta took immediate action to protect the records from further improper dissemination or use.

56. For months, Plaintiff tried valiantly to get the Local to take action to recover the converted property and to punish Jeffers for his actions.

57. This conversion is a violation of the fiduciary duty owed to the members of the Local by Jeffers. Petta and Perry likewise violated their duty by not taking action to secure the documents and to punish Jeffers for his gross misconduct.

58. As a result of Jeffers misconduct and the failure of Petta and Perry to act in conformity with the fiduciary duties owed to the members of the Local, the Local has suffered the exposure to liability for the misconduct and the loss of trust of its membership in the Local's leadership. Damages should be assessed for these violations of fundamental rights of Local members.

## COUNT III
### Violation of D.C. Mental Health Information Act

59. Plaintiff adopts and incorporates by reference al of the allegations set forth in the previous paragraphs as if the same were set forth in full in this count.

60. Pursuant to the District of Columbia Mental Health Information Act, especially § 6-2034, redisclosure of mental health information disclosed in a court proceeding shall be governed by order of the court or, if no order is issued, by the rules of the Superior Court of the District of Columbia.

61. On the facts alleged above, Defendant Jeffers was never asked to provide any information on the mental health records of Plaintiff Rhonda Baird. Thus, the act of divulging the

information was malicious and totally without foundation.

62.    Plaintiff did not authorize the release of her mental health records. Furthermore, Jeffers was aware that the particular records he released were contradicted by later information PBGC tried to mischaracterize.

63.    Jeffers' ability to divulge the records without the knowledge of the Local's President suggests that the records were not adequately protected, despite Plaintiff's repeated requests for its protection and/or return to her. Thus, Local officers Petta and Perry were at a minimum complicit in the actions of Jeffers by not securing the information to protect against conversion; neither did Petta nor Perry work to recover the property when they learned of the dissemination. Indeed, the information is likely to have ended up in the possession of Perry for use in his own legal actions, which now include claims alleging that Plaintiff and other employees whose information was converted from Local records created or maintained an unsafe and hostile work environment for Perry.

64.    As a result of Jeffers misconduct and Perry and Petta's complicity, Plaintiff has suffered further emotional stress, shock, anguish, loss of self-esteem, fear, helplessness, insult, hair loss, anxiety and loss of sleep.

65.    Jeffers, Perry and Petta's treatment of the Plaintiff is malicious and reckless and indifferent to Plaintiff's legal rights. For this Plaintiff is entitled to punitive damages.

## COUNT IV
### Invasion of Privacy

66.    Plaintiff adopts and incorporates by reference al of the allegations set forth in the previous paragraphs as if the same were set forth in full in this count.

67.    Under District of Columbia law, one who gives publicity to private facts without

permission is liable for invasion of privacy if the matter publicized would be highly offensive to a reasonable person and is not of legitimate concern to the public. Similarly, the intentional intrusion into someone's privacy or private affairs could lead to liability.

68. On the facts alleged above, Defendant Jeffers acted intentionally when he disseminated information of a very personal nature. He had no authorization to do so and his conduct would be viewed as highly offensive to a reasonable person. The information disseminated was not of a public nature. Thus, Jeffers unlawfully violated Plaintiff's rights to privacy.

69. As a result of Jeffers misconduct, Plaintiff has suffered further emotional stress, shock, anguish, loss of self-esteem, fear, helplessness, insult, hair loss, anxiety and loss of sleep.

70. Jeffers conduct was malicious, reckless, and indifferent to Plaintiff's legal rights. For this Plaintiff is entitled to punitive damages.

## COUNT V
### Intentional Infliction of Emotional Distress

71. Plaintiff adopts and incorporates by reference al of the allegations set forth in the previous paragraphs as if the same were set forth in full in this count.

72. By his involvement in the Baird Arbitration, Jeffers was aware of the emotional nature of Plaintiff's struggles with the unlawful treatment she suffered. Yet, he took advantage of this knowledge and deliberate released information he knew would lead to further distress by the Plaintiff.

73. Perry, Petta and NAGE calculatedly failed to act to protect the sensitive information in the Local's possession despite months of requests from Ms. Baird that the information be protected. This failure makes these parties complicit in the actions of Jeffers and also liable for the resultant emotional distress caused by the outrageous conduct of Jeffers.

Indeed, NAGE as the "exclusive representative" of PBGC bargaining unit employees, is implicitly liable for the conduct of its officers.

74. As a result of the intentional infliction of emotional distress, Plaintiff has suffered further emotional stress, shock, anguish, loss of self-esteem, fear, helplessness, insult, hair loss, anxiety and loss of sleep.

75. This violation was malicious, reckless, and indifferent to Plaintiff's legal rights. For this Plaintiff is entitled to punitive damages.

## COUNT VI
### Negligence

76. Plaintiff adopts and incorporates by reference al of the allegations set forth in the previous paragraphs as if the same were set forth in full in this count.

77. Under District of Columbia law, a plaintiff in a negligence action must establish three elements: an applicable standard of care, a deviation from that standard by the defendant, and injury resulting from that deviation.

78. On the facts alleged above, Defendants Jeffers, Perry, and Petta held positions of trust vis-à-vis the Plaintiff. These Defendants breached the duty owed to Plaintiff by their actions, and the breach caused emotional harm to the plaintiff. This harm should be compensated by the Defendants.

79. The actions of Jeffers, Perry and Petta were taken with reckless disregard for its impact on Plaintiff. Thus, Plaintiff is entitled to punitive damages.

## COUNT VII
### Respondeat Superior

80. Plaintiff adopts and incorporates by reference al of the allegations set forth in the

13

previous paragraphs as if the same were set forth in full in this count.

81. NAGE is the exclusive representative of bargaining unit employees of NAGE Local R3-77. As such, NAGE's Constitutional and Bylaws govern the conduct of Local officers. It was under this power that NAGE removed former officers of the Local (*See* District Court Case No. 03-2513). Thus, NAGE is liable for the conduct or misconduct of officers of the Local.

82. Under respondeat superior, NAGE is liable for the acts and omissions of its employees and agents, when done within the scope of their duties.

83. The actions of the Local officer's were done within the scope of their roles as officers of the Local. Thus, NAGE should stand for the misconduct of its agents.

84. Plaintiff has suffered further emotional stress, shock, anguish, loss of self-esteem, fear, helplessness, insult, hair loss, anxiety and loss of sleep. Damages caused to the Plaintiff, both compensatory and punitive, should be charged not only to the wrongdoers but also to NAGE, under whose authority the Local officers are empowered to act.

## COUNT VIII
### Defamation

85. Plaintiff adopts and incorporates by reference al of the allegations set forth in the previous paragraphs as if the same were set forth in full in this count.

86. Defendants Jeffers and Perry have engaged in the dissemination of information intended to impair Plaintiff's reputation and cause her harm.

87. Defendant Jeffers knows that the information he disseminated on Plaintiff was contradicted by subsequent information. Yet, he calculatedly chose to disseminate information intended to harm Plaintiff's reputation.

88. Perry appears to be using that information as a part of the defamatory statements

made in his complaint filed in this court in August 2006 (*See* Case No. 06-1371). Perry incorrectly and unjustifiably state that Plaintiff created or maintained a hostile and unsafe work environment for him.

89. On the facts alleged above, Defendant Jeffers and Perry are liable to the plaintiff under District of Columbia law for defaming her.

90. Plaintiff has suffered further emotional stress, shock, anguish, loss of self-esteem, fear, helplessness, insult, hair loss, anxiety and loss of sleep. Damages caused to the Plaintiff, both compensatory and punitive, should be charged not only to the wrongdoers Jeffers and Perry but also to NAGE, under whose authority the Local officers are empowered to act.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Rhonda Baird prays this Court grant the following relief:

(a) A declaratory judgment that Defendants in their official capacities violated Plaintiff's legal rights;

(b) An injunction enjoining Defendants from engaging in such conduct in the future;

(c) A judgment awarding Plaintiff compensatory damages from the Defendants in an amount appropriate to the proof adduced at trial;

(d) A judgment awarding Plaintiff punitive damages from Defendants in an amount appropriate to the proof adduced at trial;

(e) Award Plaintiff her costs and reasonable attorney's fees; and

(f) Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Trial by jury is demanded on all issues for which a jury trial is available.

Respectfully submitted,

November 20, 2006

*[signature]*

Rhonda Baird, Pro Se
Plaintiff
13615 Layhill Road
Silver Spring, MD 20906
(301) 603-1641
rnbaird64@aol.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RHONDA N. BAIRD, Pro Se )
On her behalf and on behalf of National )
Association of Government Employees )
("NAGE") Local R3-77 )
13615 Layhill Road )
Silver Spring, MD 20906 )
)
        Plaintiff, )
)
        v. )
)
DAVID HOLWAY, )
PRESIDENT OF NAGE )
159 Burgin Parkway )    Case No. _____
Quincy, Massachusetts 02169 )
)
RICHARD PETTA, Individually and as an )
Officer of NAGE LOCAL R3-77 )
1200 K Street, NW )
Washington, D.C. 20005 )
)
DWAYNE JEFFERS, Individually and as an )
Officer of NAGE LOCAL R3-77 )
)
ROBERT PERRY, Individually and as a )
Former Officer of NAGE LOCAL R3-77 )
1354 Monaco Drive )
Severn, MD 21144 )
)
        Defendants. )
_____)

## VERIFICATION OF COMPLAINT BY RHONDA BAIRD

    I, Rhonda Baird, Plaintiff in the matter of Rhonda Baird v. David Holway, et al., hereby verify the Complaint to enforce and uphold rights under federal and District of Columbia laws by stating that I declare under penalty of perjury, that the factual statements contained in the Complaint are true and correct.

Date: November 20, 2006

                                              Rhonda Baird, Pro Se Plaintiff
                                              13615 Layhill Rd
                                              Silver Spring, MD 20906
                                              (301) 603-1641

06 1985

FILED
NOV 20 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

K-1785
06-1985
JDB

## I (a) PLAINTIFFS

RHONDA BAIRD
13615 Layhill Rd, Silver Spring, MD 20906   88888

## DEFENDANTS

DAVID HOLWAY, PRESIDENT OF NAGE  ET AL
159 Burgin Pkwy, Quincy MA 02169

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __88888__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __88888__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

PRO SE
(301) 603-1641

CASE NUMBER   1:06CV01985
JUDGE: John D. Bates
DECK TYPE: Labor/ERISA (non-employment)
DATE STAMP: 11/20/2006

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⦿ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP
FOR PLAINTIFF AND

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ⦿ 2 | ⦿ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)   OR   F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(4)

| ○ G. *Habeas Corpus/ 2255* | ○ E. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ⊙ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☒ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
29 U.S.C. §§ 411 and 501: interference with plaintiffs right to express views adn maintain an arbitration without punitive action against her.

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ over 150,000   Check YES only if demanded in complaint
JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY** N.O.   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 11/20/06   SIGNATURE OF ATTORNEY OF RECORD [signature]

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

  I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

  III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

  IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the *primary* cause of action found in your complaint. You may select only *one* category. You *must* also select *one* corresponding nature of suit found under the category of case.

  VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

  VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.