UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RHONDA N. BAIRD, )<br>)<br>　　　　Plaintiff )<br>)<br>　　v. )<br>)<br>DAVID HOLWAY, *et al.*, )<br>)<br>　　　　Defendants. )<br>_____) | Case No. 1:06CV01985 (JDB) |

## MOTION TO DISMISS DEFENDANT DAVID HOLWAY AND NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES

Defendant David Holway, by counsel, hereby files this Motion to Dismiss pursuant to Fed. R. Civ. P 12(b)(6). The reasons supporting this Motion are set forth in the accompanying Memorandum.

To the extent that the National Association of Government Employees ("NAGE") is deemed to be a Defendant in this action, NAGE, by counsel, also moves to dismiss this Complaint against it pursuant to Fed. R. Civ. P. 12(b)(6). The reasons supporting this Motion are set forth in the accompanying Memorandum.

A proposed Order is attached.

Respectfully submitted,

　　　/s/　　　　　　　　　
W. Gary Kohlman (No. 177527)
Dora V. Chen (No. 485200)
BREDHOFF & KAISER, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C.  20005
Telephone:  (202) 842-2600
Fax:  (202) 842-1888

*Counsel for National Association of
Government Employees and Defendant
David Holway*

Dated: May 2, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RHONDA N. BAIRD, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case No. 1:06CV01985 (JDB) |
| ) | |
| DAVID HOLWAY, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT DAVID HOLWAY AND
NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES'
MOTION TO DISMISS**

David Holway, by counsel, files this Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Rhonda Baird's Complaint against him on the grounds that the Complaint, even when liberally construed, does not allege any causes of action against him. Indeed, the Complaint only mentions Holway—who is the President of the National Association of Government Employees ("NAGE")—twice, and not at all in any of Baird's eight causes of action. Complaint ("Compl.") at ¶¶ 13-14.

Although this *pro se* Complaint[1] is not the model of clarity, the essence of Baird's Complaint appears to center around the alleged unauthorized disclosure of her medical records by Dwayne Jeffers, the Chief Steward of Local R3-77 ("Local"). *Id.* at ¶¶ 37-40. Jeffers apparently obtained these documents in connection with his representation of Baird in her grievance arbitration against the employer, the Pension Benefit Guaranty Corporation ("PBGC"),

---

[1]Although Plaintiff Baird is proceeding *pro se*, she has been employed as an attorney in the Office of Chief Counsel at the Pension Benefit Guaranty Corporation since 1997. Compl. ¶ 11.

and disclosed these documents to Robert Perry (another Local officer) and possibly others. *Id.* ¶¶ 25, 39. As a result, Baird has brought this lawsuit against Jeffers, Perry, Richard Petta (the Local President) and NAGE President Holway, alleging eight causes of action ranging from a Labor-Management Reporting and Disclosure Act ("LMRDA") Title I claim to a potpourri of common-law tort claims. We will show that Plaintiff has failed to plead any facts that would support any of those claims against President Holway.

Additionally, in the event that this Court construes Baird's Complaint as having named NAGE as a party, the Complaint should be dismissed against NAGE as well.[2] As we explain further below, as a matter of law, NAGE cannot be liable for the actions of Local officers, nor was NAGE obligated to intervene in an internal matter between Baird and the Local's officers.

## I.     Relevant Facts Alleged in the Complaint

### A.     Background Facts Concerning the Baird Arbitration

Local R3-77 initiated the grievance process on behalf of Baird, alleging various "violations" committed by various PBGC supervisors. Compl. ¶ 19. Once Baird's grievance was appealed to arbitration, her case became ensnared in the political turmoil within the Local's leadership; that turmoil ultimately led to the imposition of a trusteeship by NAGE over the Local under LMRDA Title III in November 2003. Compl. ¶¶ 22-23; *Johnson v. Holway*, C.A. No. 03-2513, 439 F. Supp. 2d 180 (D.D.C. 2006).[3]

---

[2] NAGE is not identified as a party in the caption, and Plaintiff makes only passing references to NAGE in the Complaint. Nonetheless, in an abundance of caution, we address the issue of whether the Complaint sets forth sufficient facts to state any cause of action against NAGE. *See infra* Part III.

[3] In November 2003, NAGE instituted a trusteeship over Local R3-77 pursuant to LMRDA Title III, 29 U.S.C. § 462, due to financial improprieties and dysfunction in the Local's leadership. The Local's former officers, Valda Johnson, Stuart Bernsen, and Elizabeth Baker sued NAGE (and NAGE officers and employees), alleging violations of Title I and III of the LMRDA, Title VII of the Civil Rights Act, and common-law defamation. In December 2005,

2

Ultimately, NAGE "refused all assistance in [Baird's] arbitration" in accordance with its established policy. Compl. ¶ 20; *see also Johnson*, 439 F. Supp. 2d at 193, 207 n.17.[4] Under that policy, when NAGE determines that a grievant's case is not meritorious, it informs the local president that NAGE will not be responsible for the costs of the arbitration nor provide legal representation. *See* Exhibit A (NAGE Arbitration Policy); *see also Johnson*, 439 F. Supp. 2d at 193. NAGE's decision not to fund Baird's arbitration for lack of merit was upheld in its internal appeals process—which Baird had fully invoked. Compl. ¶ 20; *see also Johnson*, 439 F. Supp. 2d at 207. As a result of NAGE's decision, Baird agreed to take full financial responsibility for the costs of her arbitration. Compl. ¶ 21.

Baird also sought and received assistance for her case from the Local's steward, Dwayne Jeffers. Compl. ¶¶ 24-25. The liability phase of the arbitration comprised 13 days in July and August 2004. *Id.* ¶ 26. In late April 2005, the Arbitrator issued a decision on that issue. *Id.* ¶ 33.

---

Judge Huvelle disposed of the majority of the claims, allowing Bernsen and Johnson's LMRDA Title I and Title VII of the Civil Rights Act claims to be tried. *See Johnson v. Holway*, C.A. No. 03-2513, 2005 WL 3307296 (D.D.C. Dec. 6, 2005) (Mem. Op.). After a bench trial in March and April 2006, Judge Huvelle dismissed the remainder of the claims and entered judgment in favor of the Defendants. 439 F. Supp. 2d 180.

The Baird Arbitration became an issue in the *Johnson v. Holway* litigation because of Baird's allegations that the Local's Executive Committee mishandled the scheduling and provision of financial support for Baird's arbitration. *Id.* at 207-08.

[4] On a motion to dismiss, a Court may consider documents referenced in the Complaint, as well as matters of which it may take judicial notice, including decisions of another court. *See Howard v. Gutierrez*, 474 F. Supp. 2d 41, 47-48 (D.D.C. 2007) (citing *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) and *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996)). Accordingly, this Court may consider the NAGE Arbitration Policy (attached hereto as Exhibit A), as Plaintiff has referred to it in her Complaint. Compl. ¶ 20. This Court may also take judicial notice of Judge Huvelle's Memorandum Opinion in *Johnson v. Holway*, 439 F. Supp. 2d 180. *See supra* note 3.

At some point, in the "latter phases" of Baird's arbitration, Jeffers and Baird began having "differences of opinion" over the direction of her case. *Id.* ¶ 29. These disagreements "[led] to a breakdown in the relationship between Baird and Jeffers and also [Robert] Perry, who supported Jeffers and whose situation was the pivotal case leading to 'collateral damage' of other [PBGC] employees," apparently referring to Perry's own litigation against PBGC.[5] *Id.* ¶ 30. Relations between Baird and Jeffers deteriorated to such a degree that Jeffers allegedly called Baird names in email messages to PBGC management officials. *Id.* ¶ 31 (*e.g.* "pathological liar;" accusation that Baird sent "psychotic" emails and made "terrorist style" threats).

Baird alleges that while she submitted complaints about Jeffers' conduct to PBGC, NAGE, and the Local in April and May 2005, none of those entities took any action in response. *Id.* ¶¶ 32, 36. Ultimately, Baird alleges that she requested that the Local remove Jeffers from any representative capacity on her case, but does not say when that request was made. *Id.* ¶ 35.

---

[5] Both Perry and Jeffers have their own ongoing litigation against the PBGC in this District Court. In 2003, Jeffers filed a Title VII lawsuit against PBGC, alleging that PBGC denied him a promotion in retaliation for his participation in protected EEO activity. *Jeffers v. Chao*, No. 03-01762 (D.D.C. filed Aug. 19, 2003).

In 2003 and 2004, Perry filed two Title VII lawsuits against PBGC (Nos. 03-2495 and 04-1996), which were both settled in November 2005 by giving Perry a promotion and a cash payment, but requiring him to resign from PBGC no later than 12 months after the agreement. In 2006, Perry again sued PBGC alleging that PBGC had failed to protect him from the unsafe working conditions created by Stuart Bernsen, Valda Johnson and Rhonda Baird. *Perry v. Snowbarger*, No. 06-01371 (D.D.C. filed Aug. 2, 2006) (Compl. ¶ 12) (alleging that Bernsen, Johnson, and Baird had "disseminated flyers, e-mails, intimidation, blackmail, slander, inflammatory, defamatory, and libelous statements and went so far as to threaten violence against [Perry]"). Perry also alleged that PBGC discriminated against him because his Form SF-50 indicated that his promotion was "[p]ursuant to a stipulation and settlement presented to the U.S. District Court for the District of Columbia on November 8, 2005." *Id.* ¶ 9.

4

### B. Alleged Release of Documents Containing Baird's Personal Information

The central complaint animating this lawsuit appears to be Jeffers' alleged release of documents containing Baird's personal medical information. The arbitrator in Baird's case had issued a protective order for certain documents, such as personnel records. *Id.* ¶ 27. Baird contends that as a result of her disputes with Jeffers and Perry, she "repeatedly requested that the Local protect the medical and personnel information in the Baird Arbitration files in its custody." Baird further alleges that she "strongly urged that she be provided the records to preserve the sensitive private and confidential information contained in the records." *Id.* ¶ 34. The Complaint does not allege when, or to whom, these requests were made.

On November 21, 2005, Jeffers allegedly confessed that "he had provided large amounts of the record in the arbitration to Mr. Perry." *Id.* ¶ 37. Apparently, Jeffers received a subpoena seeking files "related to Mr. Perry." *Id.* ¶¶ 38, 40. The Complaint does not identify the source of the subpoena, nor the litigation to which the subpoena was related. Also on November 21, 2005, Jeffers allegedly "admitted he released medical (Plaintiff's medical health records) and personnel information to employees other than Perry." *Id.* ¶¶ 39, 40. Although the Complaint identifies November 21, 2005 as the date Baird learned of the release of records, it is silent on when Jeffers actually released Baird's records to Perry and others.

Thereafter, Baird alleges that she "beseeched" the Local and NAGE to "retrieve and redress" Jeffers' alleged dissemination of her medical and personnel records, but that "[t]o date, no substantive action has been taken." These requests were allegedly made on November 21, 2005, as well as "[d]uring the next several months." *Id.* ¶¶ 41, 43.

5

## II.   Plaintiff's Complaint Fails to State A Claim Against President Holway

Taking all the facts alleged in the Complaint as true, with all reasonable inferences viewed in the light most favorable to Plaintiff, as we must do on a Rule 12(b)(6) motion, this Complaint asserts no facts that could support any claims against President Holway.  *See Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979).  To be clear, while the Complaint alleges eight causes of action, none of them, by their own terms, actually refers to President Holway. Nonetheless, construing the Complaint in generous terms in deference to this *pro se* plaintiff, only Count I, alleging a LMRDA Title I "free speech" claim, 29 U.S.C. § 411(a)(2), can arguably be construed as asserting a claim against President Holway.  The remaining claims allege facts focusing almost exclusively on the actions of the Local officer defendants, Perry, Petta, and Jeffers. [6]

Plaintiff's Complaint fails to state a legally cognizable cause of action against President Holway based on LMRDA Title I.  That provision sets forth the so-called "Bill of Rights" for union members.  Section 101(a)(2), in pertinent part, protects the right of a union member to "express any views, arguments or opinions; and to express at meetings of the labor organization [her] views . . . upon any business properly before the meeting . . . ." 29 U.S.C. §411(a)(2).  In order for a plaintiff to state a Title I claim, she must allege facts showing: (1) she "exercised the

---

[6] Count II alleges that Jeffers violated his fiduciary duty under 29 U.S.C. § 501(a), and that Perry and Petta failed to protect Baird's records from "further improper dissemination." Compl. ¶¶ 52-58.  Count III alleges that Jeffers violated the D.C. Mental Health Information Act, and that Petta and Perry were "complicit in the actions of Jeffers." *Id.* ¶¶ 59-65.  Count IV alleges that Jeffers violated Baird's right to privacy by disseminating her personal records. *Id.* ¶¶ 66-70.  Count V alleges that Jeffers committed intentional infliction of emotional distress against Baird, and that Perry, Petta and NAGE failed to act to protect Baird's records. *Id.* ¶¶ 71-75. Count VI alleges that Jeffers, Perry and Petta violated their duty of care to Plaintiff and therefore committed "negligence." *Id.* ¶¶ 76-79.  Count VII alleges "respondeat superior" against NAGE. *Id.* ¶¶ 80-84.  Count VIII alleges defamation by Jeffers and Perry. *Id.* ¶¶ 85-90.

right to oppose union policies"; (2) she "was subjected to retaliatory action"; and (3) the retaliatory action was "'a direct result of [her] decision to express disagreement' with the union's leadership." *See, e.g., Casumpang v. Int'l Longshoremen's & Warehousemen's Union, Local 142*, 269 F.3d 1042, 1058 (9th Cir. 2001) (quoting *Sheet Metal Workers v. Lynn*, 488 U.S. 347, 354 (1989)). As to the third element, courts have held that causation can be shown either through direct or circumstantial evidence, such as the union's knowledge of the protected activities or temporal proximity between the protected activity and the retaliatory action. *Id.* (citing the "related field" of retaliatory actions by employers under Title VII).

While at this juncture, of course, Baird does not need to proffer *evidence* of causation, she must—at a bare minimum—allege facts that would support a *prima facia* case of Title I liability against President Holway. Here, Plaintiff has made a single factual allegation against President Holway: that "after the meeting [with Holway] in which [Baird] raised the issue of the deleterious impact if NAGE missed the impending deadline in the EEO case," "NAGE President Holway was especially hostile to [her]." Compl. ¶¶ 13, 14.

This lone allegation is simply inadequate to support a Title I claim against President Holway. Even construing a Complaint on a motion to dismiss in the most favorable light, this Court "need not accept inferences drawn by the plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Even assuming that President Holway bore any hostility to Baird—an allegation he strongly disputes, but for purposes of this motion must accept as true—the omission of any factual allegations supporting a theory of causation demonstrating that this alleged hostility bore some causal relationship to Jeffers' alleged disclosure of Baird's records is fatal. For example, the Complaint does not allege the date of this meeting, so it is impossible

7

even to infer causation based on temporal proximity. Likewise, the Complaint fails to allege any facts supporting an inference that President Holway had any knowledge of Baird's complaints. The Complaint does not allege that Baird lodged any complaint about Jeffers' representation or Jeffers' alleged release of her records with President Holway. *See, e.g.,* Compl. ¶ 32, 34, 35, 49. Nor is there any allegation that President Holway was informed about Baird's complaints. *Id.*

Therefore, Plaintiff has pled no factual allegations that would give rise to an inference that explains how alleged bias on President Holway's part somehow caused Jeffers' alleged disclosure of Baird's records. Indeed, a Title I plaintiff's "burden [to demonstrate causation] cannot be satisfied by the unsupported contention that plaintiff's 'vociferous criticism necessarily would have created animus' and as a result, retaliation." *Johnson,* 439 F. Supp. 2d at 228 (quoting *Commer v. McEntee*, 121 F. Supp. 2d 388, 398 (S.D.N.Y. 2000)). Plaintiff's Complaint against President Holway should be dismissed.

> **III.    Any Claims Asserted By Plaintiff Against NAGE Should Be Dismissed Because NAGE Is Not Vicariously Liable For The Actions Of Local Officers Nor Was NAGE Obligated To Intervene In Baird's Internal Dispute with Local Officers**

As best as Defendant is able to discern, again, in deference to this *pro se* Plaintiff, this Complaint contains two arguable claims against NAGE. *See supra* note 2. First, Baird alleges a nonsensical, catch-all "Respondeat Superior" cause of action, contending that NAGE is "liable for the acts and omissions of its employees and agents." ¶ 82. Her second claim is that NAGE "deliberately failed to take action to protect the rights and interests of Plaintiff Rhonda Baird particularly after she provided declarations for use in the Trusteeship Action . . . that were not favorable for NAGE." Complaint ¶ 47. This, Baird contends, constitutes a LMRDA Title I violation.

8

At bottom, Baird's contention is two-fold: NAGE is vicariously liable for the actions of Local officers Jeffers, Perry, and Petta; and, NAGE is itself liable for its alleged failure to intervene in Baird's dispute with the Local officers. *See* ¶¶ 49, 83. These claims, however, cannot stand because she has not pled any facts that would compel this Court to disregard the long-standing, fundamental principle that national or international unions are not automatically liable for the acts of locals and local officers.

As a general matter, it is well-established that a national or international union is a separate body from its local unions. Therefore, "[t]he acts of the local and its agents cannot automatically be imputed to the International." *Shimman v. Frank,* 625 F.2d 80, 97 (6th Cir. 1980). Instead, as the D.C. Circuit has held, "common-law agency principles provide the appropriate analytical framework" for determining a national union's liability for a local's actions. *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1427 (D.C. Cir. 1988). Under this standard, a national union cannot be vicariously liable for the actions of its local affiliates absent proof that the national union, "with knowledge of the surrounding circumstances, . . . authorizes, ratifies, or approves a local's actions the effects of which are sufficient to establish a claim . . . against the local." *See id.* at 1430. The case law further establishes that courts will look not to a national union's "theoretical control" over its locals, but instead will analyze the "nature and extent of *actual* control" over the local in the relevant factual context. *See id.* at 1431 (citing *Shimman*, 625 F.2d at 98 n.36) (emphasis added).

Applying this framework here, it is clear that NAGE cannot be held vicariously liable for Jeffers' alleged disclosure of Baird's personal records because Plaintiff has alleged no relevant facts supporting an inference that NAGE had "actual control" over the Local, its officers, or Baird' personal records. Instead, the only fact advanced by Plaintiff to support her "respondeat

superior" claim is that NAGE had placed the Local in trusteeship. Compl. ¶ 51, 81. This event, however, is not dispositive of the "actual control" issue because NAGE's trusteeship over Local R3-77 was lifted on February 2, 2005—*before* Baird's complaint about Jeffers' representation and Jeffers' alleged disclosure of her personal records allegedly occurred. *See Johnson*, 439 F. Supp. 2d at 213, 221-22; *supra* notes 3 & 4. Specifically, Baird alleges that her first complaints about Jeffers' conduct were first made in "April and May 2005." *See supra* Part I.A.& B; Compl. ¶ 32. Baird's complaint about Jeffers' alleged disclosure of the records occurred on November 21, 2005. Compl. ¶ 41. Thus, by the time Baird allegedly began making her complaints to the Local and NAGE, the Local had been already returned to self-governance. Apart from these trusteeship allegations, the Complaint is devoid of any other factual allegations supporting Baird's bald contention that NAGE "should stand for the misconduct of its agents," the Local officers. *Id.* ¶ 83.

Moreover, it is worth noting that Baird herself concedes that NAGE had washed its hands of her arbitration once it determined that the case did not merit financial and legal support. *See* Compl. ¶ 20 ("NAGE refused all assistance in the arbitration"); *see also supra* Part I.A. From that point forward, any issue arising in Baird's case was a matter between the Local and her. *See* Compl. ¶ 21 ("Baird was therefore forced to proceed with the arbitration at her own costs"); *see also Johnson,* 439 F. Supp. 2d at 207 (describing Baird's agreement with the Local's Executive Committee authorizing Baird to proceed to arbitration with her private attorney but requiring her to keep the Local appraised of the status of the case). Therefore, once the trusteeship was lifted on February 2, 2005, NAGE did not have "actual control" over her arbitration, and Baird has alleged no facts to the contrary that would establish an agency relationship between the Local officers and NAGE. *Compare Berger*, 843 F.2d at 1428 (finding agency relationship on the

10

ground that the international union had approved of the practice that was later found to be discriminatory); *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 409 (6th Cir. 1999) (same).

Further, because Baird has not pled any facts supporting an agency relationship, NAGE was under no affirmative duty to respond to Baird's complaints. The Supreme Court has held that "[i]n the face of Congress' clear statement of the limits of an international union's legal responsibility for the acts of one of its local unions, it would be anomalous to hold that an international is nonetheless liable for its failure to take certain steps in response to actions of the local." *Carbon Fuel Co. v. United Mine Workers of Amer.*, 444 U.S. 212, 217-218 (1979). Thus, "[a]n International union has no independent duty to intervene in the affairs of its local chapters, even where the international has knowledge of the local's unlawful acts." *Phelan v. Local 305*, 973 F.2d 1050, 1061 (2d Cir. 1992); *accord Brenner v. Carpenters Local 514*, 927 F.2d 1283, 1289 (3d Cir. 1991). Put another way, "the International's decision to take no action notwithstanding the complaints [it received] . . . is insufficient as a matter of law" to establish ratification by the International. *Brenner*, 927 F.2d at 1290.

Since NAGE's alleged failure to intervene in Baird's dispute with the Local officers is the cornerstone of her LMRDA Title I claim, Compl. ¶¶ 47, 49, the absence of facts sufficient to establish an agency relationship between NAGE and the Local officers necessarily forecloses that claim. As NAGE had no blanket obligation to intervene in an internal matter between a local and a disgruntled member, its alleged failure to do so on behalf of Baird in particular does not infringe upon her free speech rights under Title I.

Accordingly, in the absence of factual allegations establishing the "requisite agency relationship" between NAGE and the Local officials, Plaintiff's claims against NAGE must be

11

dismissed. *See, e.g., Saunders v. Hankerson*, 312 F. Supp. 2d 46, 59 (D.D.C. 2004) (dismissing the complaint on the ground that plaintiffs' allegations were "insufficient to establish the requisite agency relationship").

## **CONCLUSION**

For the foregoing reasons, the Complaint against Defendant David Holway should be dismissed. To the extent that the Complaint is deemed to have named NAGE as a party, for the foregoing reasons, the Complaint should be dismissed against NAGE as well.

        Respectfully submitted,

        /s/
        W. Gary Kohlman (No. 177527)
        Dora V. Chen (No. 485200)
        BREDHOFF & KAISER, P.L.L.C.
        805 15th Street N.W., Suite 1000
        Washington, D.C. 20005
        Telephone: (202) 842-2600
        Fax: (202) 842-1888

        *Counsel for National Association of Government Employees and Defendant David Holway*

Dated: May 2, 2007

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 2nd day of May, 2007, it filed Defendant's Motion to Dismiss, and supporting Memorandum and Proposed Order, through the Court's ECF system and served paper copies to the following parties via overnight mail:

Rhonda N. Baird
13615 Layhill Road
Silver Spring, MD 20906

Dwayne Jeffers
1200 K Street, NW
Washington, DC 20005

Richard Petta
1200 K Street, NW
Washington, DC 20005

Robert Perry
1354 Monaco Drive
Severn, MD 21144

                                                                    ___/s/_____
                                                                         Dora V. Chen

# NAGE Arbitration Policy

**Purpose:** To provide fair and equitable legal services to members and to establish a clear policy for arbitration requests.

1. Locals will file for arbitration if necessary to protect any contractual timeline.

2. Locals will submit the case to the NAGE Legal Staff for review.

3. Locals may be asked to request an arbitrator's list and submit the list to the Legal Staff for assistance in selecting an arbitrator.

4. An attorney will be assigned to review the case. Upon review, the assigned attorney will issue a letter of acceptance. Should the case be found to lack merit, the reviewing attorney will provide the Local President and the Grievant written notice of the deficiencies of the case.

5. The Local President and the Grievant, upon receipt of the deficiency notice, will be given a reasonable period of time to provide additional information and/or to discuss the case with the assigned attorney.

6. Should the case continue to lack merit, the case shall be forwarded to the Chief Counsel for review. The Local President and the Grievant will receive written notice explaining the decision not to process the case further. The notice will explain that the National will not be responsible for any costs associated with arbitration, nor will attorney services be provided.

7. The determination not to proceed with the case can be appealed to the National President in writing within seven (7) business days following the determination.

    (a) Such appeal shall set forth a complete narrative as to the facts in support of the Grievance, a copy of the Collective Bargaining Agreement, the decision of the Legal Department, and whatever documents are reasonably necessary for an understanding of the case.

    (b) The National President shall designate an Appeals Board consisting of one (1) National Vice-President and two (2) Executive Board members. The Appeals Board shall conduct whatever investigation they deem appropriate to render a decision.

8. The Local President and the Grievant will be provided with the decision of the Appeals Board.

9. The Local President and the Grievant may request final review by the National President.

10. This policy shall take effect December 16, 2002.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RHONDA N. BAIRD, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case No. 1:06CV01985 (JDB) |
| ) | |
| DAVID HOLWAY, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

### ORDER

The matter came before the Court on Defendant David Holway and National Association of Government Employees' Motion to Dismsiss pursuant to Fed. R. Civ. P. 12(b)(6).

For good cause shown,

It is **ORDERED** that David Holway be **DISMISSED** from this case.

It is further **ORDERED** that to the extent that the Complaint names the National Association of Government Employees ("NAGE") as a defendant in this case, NAGE is **DISMISSED** from this case.

_____
John D. Bates
United States District Judge