# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RHONDA N. BAIRD, Pro Se<br>On her behalf and on behalf of National<br>Association of Government Employees<br>("NAGE") Local R3-77<br>13615 Layhill Road<br>Silver Spring, MD 20906<br><br>      **Plaintiff,**<br><br>      v.<br><br>DAVID HOLWAY, Individually and as<br>PRESIDENT OF National Association of<br>Government Employees ("NAGE")<br>      &<br>NAGE through its President David Holway<br>159 Burgin Parkway<br>Quincy, Massachusetts 02169<br><br>RICHARD PETTA, Individually and as an<br>Officer of NAGE LOCAL R3-77<br>1200 K Street, NW<br>Washington, D.C. 20005<br><br>DWAYNE JEFFERS, Individually and as an<br>Officer of NAGE LOCAL R3-77<br><br>      **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>    **Case No. 06-1985 (JDB)**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 8(a), Plaintiff Rhonda Baird hereby files this first amended complaint and alleges as follows:

### PARTIES

1.    Plaintiff Rhonda Baird is an employee of the Pension Benefit Guaranty Corporation

# RECEIVED

JUN 1 9 2007


NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

("PBGC"), a government agency, and the current President of NAGE Local R3-77 (the "Union" or "Local"). Ms. Baird resides in Maryland, but works for PBGC in Washington D.C. She is a former Steward of the Local and was elected as its president on April 2, 2007. Ms. Baird brings this action on her behalf to redress various violations of her rights. However, as important as it is to vindicate her rights, Ms. Baird also files this suit to redress claims on behalf of the Local, which has been injured by the failure of the National Association of Government Employees ("NAGE"), David Holway, and certain of the Local's former officers to protect and redress the rights of its members against officers acting against their interests.

2.      NAGE Local R3-77 is a unit of NAGE; it was organized to operate within the framework of the Constitution and Bylaws of NAGE. The Local is entrusted with the responsibility to represent the 500 bargaining unit employees of PBGC in Washington D.C. with respect to certain of their terms and conditions of employment.

3.      Defendant David Holway is the President of NAGE.  He is sued in his capacity as President of NAGE and in his individual recognizance.  Holway lives and works in Massachusetts.

4.      Defendant NAGE is a labor organization and union that is affiliated with the Service Employees International Union ("SEIU").  NAGE, which is headquartered in Boston, Massachusetts, is the exclusive representative of the 500 bargaining unit employees at PBGC.

5.      Richard Petta is an employee of PBGC, and the immediate past President of NAGE Local R3-77, which is located in Washington D.C.

6.      Dwayne Jeffers is an employee of PBGC, and the immediate past Chief Steward and a former officer of NAGE Local R3-77, which is located in Washington D.C.  Jeffers is believed to reside in Maryland.

## JURISDICTION

7.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and

2201, 29 U.S.C. §§ 412, 413 and 501(b). This Court has subject matter jurisdiction under 28 U.S.C.

§ 1331. Plaintiff also seeks relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

Plaintiff's claims under the common law of the District of Columbia arise from the same occurrences

as her federal law claims and are within the Court's supplemental jurisdiction pursuant to 28 U.S.C.

§ 1367.

## VENUE

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. §§412

and 464(b)(2). The events or omissions giving rise to plaintiff's claims occurred in this judicial

district.

## FACTUAL STATEMENT

9.    Plaintiff Rhonda Baird started her employment with PBGC in 1997 as an attorney.

She currently works in the Office of Chief Counsel ("OCC").

10.    In April 2002, Ms. Baird testified on behalf of the Local in a contentious arbitration

brought by the Local challenging the structure and operation of PBGC's Equal Employment

Opportunity Program (the "EEO Structure Arbitration"). Ms. Baird told both the Local's

representative Stuart Bernsen and NAGE Attorney Gina Lightfoot-Walker that she feared her

employer would retaliate against her if she participated. However, she agreed to testify because

NAGE and the Local needed bargaining unit employees to step up and testify.

11.    During her testimony, Ms. Baird was examined by NAGE Attorney Gina Lightfoot-

Walker during the arbitration. Indeed, despite those statements, NAGE sought to expand Ms.

3

Baird's testimony into areas that Ms. Baird told them would definitely result in retaliation from her employer PBGC. Ms. Baird was the only employee who had never filed an EEO complaint to testify on behalf of the Local. This fact was particularly noted by her employer PBGC in its post-hearing brief filed later in 2002. After her testimony in April 2002, Ms. Baird felt a decided chill from PBGC labor management officials-- Deputy General Counsel Philip Hertz in particular.

12.    In November 2002, Ms. Baird was accosted in her office by her acting supervisor, John Paliga. This manager physically intimidated Ms. Baird by backing her into the corner of her desk while making threatening statements, which made Ms. Baird extremely fearful for her safety. When she reported the incident to PBGC management, PBGC's General Counsel and Assistant General Counsel for Labor Management, Jay Resnick, responded with sneers and smirks and intentionally failed to conduct an objective investigation. PBGC forced Ms. Baird to maintain the same reporting obligation with  Mr. Paliga without taking action to correct his violent behavior.

13.    PBGC assigned Richard Lattimer, one of the labor management attorneys who represented PBGC in the EEO Structure Arbitration, to oversee management's investigation into Ms. Baird's complaint about Mr. Paliga's conduct. Not only was Lattimer present when Ms. Baird testified, but he also wrote PBGC's post-hearing brief that particularly noted Ms. Baird's testimony in an attempt to discount the testimony and Ms. Baird's credibility.

14.    Ms. Baird repeatedly informed PBGC and the Local of the emotional and psychological struggles she faced because of the incident and subsequent events especially the difficulties she faced working in an environment in which she no longer felt either safe or secure. Directly after the incident Ms. Baird reported the incident to her supervisory chain of command. The next day she initiated EEO counseling and subsequently filed a grievance in a desperate attempt to

4

alleviate the stress she felt.

15.     On November 18, 2002, Ms. Baird delivered copies of information important to her case to NAGE officials who were present for a meeting with members of the Local. All along the way, PBGC tried to bury the facts of the case, failing to interview two of its own employees who were key witnesses to critical portions of the incident. On February 20, 2003, the Local invoked arbitration to redress the violations committed by supervisor John Paliga and various management officials especially labor management officials in HRD and OGC (the "Baird Arbitration").

16.     Beginning in 2003, NAGE refused all assistance in the Baird Arbitration. NAGE's factual and legal bases for denying Ms. Baird's requests for assistance was so clearly unfounded that Ms. Baird doggedly followed each step of the process outlined by NAGE to appeal its denial of financial assistance for her arbitration. Among other facts, Ms. Baird repeatedly pointed out to NAGE the relationship between her testimony at the EEO Structure Arbitration in 2002 on behalf of NAGE and the Local, and labor management officials' intentional retaliation against her. NAGE continued to deny financial assistance at each step and told Ms. Baird she could seek, among other things, workers compensation or disability benefits. Because of NAGE's inexplicable denial of the requests for financial assistance, Ms. Baird was forced to proceed with the arbitration at her own costs.

17.     In early 2003, NAGE President Holway held meetings with members of the Local to address growing contention between NAGE and certain Local officials. Ms. Baird was outspoken about her opinion that NAGE was not providing the Local with the assistance it needed especially on EEO cases, and that NAGE was also responsible for the breakdown in the relationship between its organization and certain Local officials. Ms. Baird raised her concerns about NAGE's failure to

represent employees in EEO cases. For example, she continually raised concern about an EEO case in which NAGE had not responded to an impending deadline to ensure NAGE took action before the deadline. As a result of pressing NAGE to respond to the deadline, the employee's case survived long enough for the employee to retain a private attorney who successfully obtained some relief for the employee including compensatory damages. NAGE President Holway was especially hostile to Ms. Baird after the meeting.

18.    At the June 2003, meeting, Holway expressed concern for his ability to continue representing the Local.[1] He said that NAGE would "walk away" if a majority of the members wanted it to, but he noted NAGE's departure would call the continuation of the contract into question. He went on to state that everyone should try to make the relationship between NAGE and the Local work otherwise he would have to "figure out a way" to withdraw that would "protect[]" local members' rights. At that meeting, Holway also said that arbitrations should not be abandoned due to a lack of funds. After this meeting, strife within the Local increased dramatically.

19.    In November 2003, Holway decided to impose an emergency trusteeship on the Local, appointed a trustee of the Local ("NAGE Trustee") and ousted the Local's officers. Among the reasons expressed for the emergency trusteeship was Holway's stated concern for the fiduciary responsibility he owed to the union and to the members. He was concerned about financial irregularities and the running of the Local. According to Holway, after trying to help straighten out

---

[1]  Many of these representations are incorporated into *Johnson v. Holway*, 439 F. Supp. 2d 180 (D.D.C. 2006), the final decision in an action filed by certain former Local officials against NAGE, Holway and other NAGE officials.

the problems to obtain information members were requesting, he felt delay would be a violation of his fiduciary responsibility.

20.    On December 9, 2003, the ousted Local officers initiated a legal action in this Court challenging the imposition of the trusteeship and resulting actions of NAGE the ("Trusteeship Action"), Case No. 03-2513 (ESH).  Plaintiff Rhonda Baird filed several declarations in the Trusteeship Action expressing her belief that NAGE unlawfully retaliated and discriminated against certain employees including her by failing and refusing to advance arbitration matters involving EEO claims.  Additionally, Ms. Baird filed several unfair labor practice charges ("ULP") with the Federal Labor Relations Authority (the "FLRA") to try to obtain some relief from NAGE's refusal to provide any support for her arbitration matter and other harmful actions taken by NAGE and the Local especially the NAGE Trustee who decided to withdraw the Local from assisting with the Baird Arbitration without even responding to Ms. Baird's request to meet and discuss the case so that errors in NAGE's analyses could be corrected.

21.    After Ms. Baird was finally able to obtain some assistance with representation at the Local level, the only in-house steward appointed by the NAGE Trustee, and thus available to assist Ms. Baird, was Dwayne Jeffers.  Jeffers had no relevant experience representing arbitration matters and no legal education.  Furthermore, Ms. Baird's ability to obtain official time was unusually restricted by the NAGE Trustee.

22.    The Baird Arbitration was bifurcated into two phases-- liability and damages.  The liability phase resulted in 13 days of hearing in July and August 2004.  During the case, the arbitrator issued a strict protective order for confidential records used in the Baird Arbitration.  PBGC labor management attorneys representing the agency in the Baird Arbitration misused medical information

obtained in another action in an attempt to mischaracterize Ms. Baird's medical diagnosis. Both

PBGC and Mr. Jeffers were aware that as a result of the violent behavior of John Paliga towards her

and PBGC's intentional failure to take any corrective action, Ms. Baird sought psychiatric treatment

for the first time in her life. Both PBGC and Mr. Jeffers were aware that the early medical treatment

Ms. Baird received, starting in January 2003, resulted in a misdiagnosis. Additionally, the initial

diagnosis has been discounted by every other professional Ms. Baird has seen since her initial

treatment. During the hearing, PBGC made spurious unfounded arguments based on the initial

medical information to mischaracterize Ms. Baird's condition contradicting all the other medical

information in its possession.

23.    Beginning in the latter phases of the Baird Arbitration hearing, Jeffers and Baird

began having differences of opinion on the handling of claims against PBGC. Jeffers subscribed to a

theory that he did not care about any resulting "collateral damage" from his conduct. Collateral

damage referred to any adverse impact on other employees. Ms. Baird strongly opposed this

practice not only in her own action but also as used against other bargaining unit employees. This

led to a serious breakdown in the relationship between Baird and Jeffers and also Robert Perry, a

former Local official who supported Jeffers and whose situation was the pivotal case leading to

"collateral damage" of other employees.

24.    During the pendency of the trusteeship, NAGE through the NAGE Trustee took little

or no action to train stewards or future leaders for the Local. It took no action to understand and

address the issues that were inherent in the Local. Membership in the Local plummeted with the

NAGE Trustee taking no action to understand why by seeking out information from the remaining

bargaining unit employees about the problems. The Local's insolvency, which was one basis for the

imposition of the emergency trusteeship, still existed in early 2005. On February 2, 2005, NAGE

returned the Local to self-governance while a lot of the internal rancor and strife still continued.

Among the officials nominated to office were Richard Petta as President, Dwayne Jeffers as Vice

President at Large. Additionally, the delay in negotiating and bringing a CBA to the members for

ratification, another reason for the emergency trusteeship, was not resolved during the 14 months of

trusteeship.

      25      In early 2005, Jeffers began calling Ms. Baird names such as a "pathological liar" and

"psychotic" in e-mails that included PBGC management officials. He alleged, in writing, that Ms.

Baird was guilty of making "terrorist style" threats to him, and also called her a "pornographer's

friend" seemingly intent on harming not only Ms. Baird's reputation, but also her arbitration that was

ongoing. In April and May 2005, Ms. Baird filed complaints about Mr. Jeffers' conduct with the

Local, PBGC, and NAGE. Due to the level of hostility from Jeffers and Perry, who were now

officers of the Local, Ms. Baird repeatedly requested that the Local protect the medical and

personnel information in the Baird Arbitration files in its custody. Ms. Baird strongly urged that she

be provided the records to preserve private and confidential information contained in the records.

Furthermore, Ms. Baird asked the Local to remove Mr. Jeffers from serving in any capacity on the

Baird Arbitration due to the conflicts of interests between them and the disturbing names Mr. Jeffers

called her in writing. President Holway, NAGE, and the Local leadership all failed to take any action

in response to complaints about Mr. Jeffers completely unprofessional conduct.

      26.      In late April 2005, a decision was issued in the Baird Arbitration that found PBGC

liable for unlawful retaliation in violation of both civil rights and labor law as well as violations of

several provisions of the Collective Bargaining Agreement ("CBA"), and PBGC's own policies and

directives. Not only did the arbitrator find that the supervisor Ms. Baird complained of, John Paliga, violated PBGC's Professional Courtesy Directive, but he also violated PBGC's Workplace Violence Policy. Additionally, the allegations against labor management officials in both HRD and OGC for unlawful retaliation were upheld. The arbitrator determined that Ms. Baird was retaliated against primarily because of her testimony on behalf of the Local and NAGE. Notably, the arbitrator found that under the emergency trusteeship the NAGE Trustee "pulled the rug from under" Ms. Baird, leaving her to proceed on her "own wits and purse". The arbitrator went on to find that from the testimony and demeanor of some PBGC's witnesses, PBGC hoped the situation created by the emergency trusteeship and PBGC's own actions in taking advantage of it could lead to a decertification drive in the Local or to the sowing of further discord in the ranks among Local members. The arbitrator noted the failure of PBGC to show it did not intend to cripple the Local by its actions of seeking out information from the internal union strife to cripple the Local.

27.    On November 21, 2005, during a conference in the Baird Arbitration, Jeffers informed the arbitrator, Ms. Baird and representatives of PBGC, that he had provided large amounts of the record in the arbitration to Mr. Perry. The records were allegedly released in response to a subpoena issued to Jeffers. The subpoena was issued to Jeffers in his individual capacity, not as an officer of the Local. The subpoena sought only files about Robert Perry and no one else. Jeffers admitted he released medical (Plaintiff's medical records) and personnel information relating to employees other than Perry. Jeffers only access to the information was in his capacity as an officer of the Local.

28.    On November 21, 2005, the same day Jeffers reported his release of the protected information, Ms. Baird filed notices to both the Local and NAGE about the conduct. Shortly

thereafter, complaints were filed with Holway, NAGE, the Local and PBGC. Several weeks after

the initial complaint, Richard Petta, President of the Local, stated that he did not know anything

about the release of the records until he read the November 21, 2005 e-mail from me. During the

next several months, Ms. Baird beseeched Holway, NAGE and the Local to take action to retrieve

and redress the dissemination of the highly private information contained in medical and personnel

records. To date, no substantive action has been taken by Holway, NAGE or officers of the Local in

response to this unwarranted and unsanctioned release of information by Jeffers. Additionally,

Jeffers and Perry have now officially asserted that Ms. Baird created an unsafe work environment for

them, they include spurious allegations that Ms. Baird created or maintained a hostile work

environment for Jeffers and Perry. Mr. Perry did so publicly on August 2, 2006 in a complaint filed

in this Court (Case No. 06-1371). Finally, with the impending expiration of the period within which

to file a legal action, Ms. Baird initiated this suit to try to encourage NAGE and the Local to redress

her concerns for the release of confidential information from the Baird Arbitration. Ms. Baird has

had no success to date.

29.    After personally experiencing the impact of the Local's dysfunction on herself and

observing the impact on others, Ms. Baird first tried to help by volunteering to serve as a steward

because there were only three officials serving as stewards in addition to the elected officials of the

Local (instead of the dozen allowed under the CBA). Often at Local meetings, there were very few

attendees-- sometimes Ms. Baird would be the only non-Local officer to attend a meeting of the

Local. NAGE and NAGE officials remained very involved in the operation of the Local and was

aware of the problems in the Local. For example, the same CBA that NAGE was concerned about

was still not brought to ratification for another year after the Local was returned to self-governance.

NAGE learned in November 2006 that the Local had not filed the required financial form with the Department of Labor. PBGC took advantage of the weakness in the Local's leadership by, among other things, negotiating in bad faith and eventually unilaterally implementing several directives including a new draconian table of penalties for use in disciplinary actions. The internal strife and conflicts among Local officials began and escalated with NAGE copied on many of the emails. Yet, NAGE took no action to redress the myriad of problems existing in the Local. Finally, in late 2006 and early 2007, Ms. Baird announced to the officers and NAGE that she would run for President of the Local to try to return it to some semblance of a representative organization.

30.    On April 2, 2007, Ms. Baird and the slate of candidates she supported swept into office by a vote of at least two-to-one, turning out the two incumbent officials on the ballot who were in contested races. During the campaign period, membership in the Local picked up more than at any time after the emergency trusteeship was imposed in November 2003. Dozens of members turned out for the debates between the candidates. The newly elected officers literally took office right away because the terms of the prior officers expired before the elections were held. Immediately after taking office, Ms. Baird, on behalf of the Local's new officers, communicated her goal of working with NAGE to "vigorously and competently" represent the bargaining unit's interests. Ms. Baird also sought NAGE's assistance to train stewards and to help conduct basic training on the CBA. Ms. Baird also communicated the Local's new officers interest in creating a positive, productive and respectful working relationship between the Local and PBGC. The new Local officials were experiencing great success in returning hope to the bargaining unit.

31.    On April 12, 2007, the first general meeting was held for all bargaining unit employees. Over 70 employees turned out for the meeting; NAGE official Susanne Pooler-Johnson

also attended. During the meeting, Ms. Baird expressed the new Local officials intent to encourage all employees to step up and work to rebuild the Local by first offering opportunities to serve to dues paying members and then soliciting additional needed assistance from the bargaining unit. Shortly after the elections, the Local was able to recruit seven stewards, double the number who served before the elections. Membership in the Local continued to grow. The atmosphere in the Local was positive and hopeful.

32.        Suddenly, on May 14, 2007, Ms. Baird received a letter from NAGE President Holway informing her, and all other members of the PBGC bargaining unit, that NAGE had decided to seek to rescind its status as the exclusive representative of the Local. The only reason stated is the expense of "ongoing litigation." The statement appears to refer to this pending litigation. All attempts to obtain assistance from NAGE explaining how this would affect the bargaining unit have been unsuccessful. NAGE's only written response to the Local stated that Holway could not respond to Local questions because of the action on the advice of the attorneys, Bredhoff & Kaiser, P.L.L.C. The Local officers have learned that the CBA is in jeopardy and will be lost when NAGE's withdrawal is final. A NAGE official reportedly told Local members that NAGE intended to "dump" pending arbitrations and grievances on the Local. The Local officials continue diligent efforts to protect the bargaining unit from the deleterious effects of NAGE's precipitous decision. Bargaining unit employees are also fighting to retain the workplace protections in the CBA. Over 150 signed letters to the FLRA, the agency responsible for ruling on NAGE's petition to withdraw. PBGC has been asked to maintain the CBA post-NAGE, but has not indicated that it will. On or about June 12, 2007, a PBGC official stated that cases pending when NAGE withdraws might have to be moved to other forums. As both PBGC and NAGE know, the damages phase of the Baird Arbitration is

currently underway with the hearings held in mid-April 2007 and briefs now due. NAGE's

withdrawal at this time is going to be disruptive to pending cases including the Baird Arbitration.

## COUNT I
### Violation of Bill of Rights of Members of Labor Organizations

33.     Plaintiff adopts and incorporates by reference all of the allegations set forth in the

previous paragraphs as if the same were set forth in full in this count.

34.     Under 29 U.S.C. § 411(a)(1), every member of a labor organization has equal rights

and privileges within such organization to nominate candidates, to vote in elections and referendums,

to attend membership meetings and to participate in the deliberations and voting upon business in

such meetings.

35.     Under 29 U.S.C. § 411(a)(2), every member of a labor organization has the right to

meet and assemble freely with other members; and to express any views, arguments, or opinions; and

to express at meetings of the labor organization his views, upon candidates in an election of the labor

organization or upon any business properly before the meeting.

36.     Under 29 U.S.C. § 411(a)(4), no labor organization shall limit the right of any

member to institute any action in court, or in a proceeding with an administrative agency, or the right

of any member to appear as a witness in any judicial, administrative or legislative proceeding.

37.     NAGE and Holway deliberately failed to take action to protect the rights and interests

of Plaintiff Rhonda Baird particularly after she provided declarations for use in the Trusteeship

Action, Declarations that were not favorable for NAGE.

38.     Plaintiff Rhonda Baird has openly questioned NAGE's actions that did not support

members struggling to address EEO claims against PBGC. Not only did Ms. Baird comment

publicly at Local meetings, but she also stated her belief and knowledge of various facts and

circumstances in writing. Starting in 2003, Ms. Baird filed ULPs against NAGE and Holway challenging their decisions. Ms. Baird also participated in the Trusteeship Action by submitting declarations through the Plaintiffs who sued NAGE. Ms. Baird also doggedly pursued her arbitration and obtained a very favorable decision from the arbitrator that proved the facts of the situation NAGE worked to bury.

39.    When Ms. Baird went to Holway and NAGE for any assistance at all, there was not only hostility to her and her requests, but most often Holway and NAGE would not even respond to her requests. The non-responsiveness includes their failure to address the egregious actions of Local officers who were involved in disseminating privacy-protected information from Local records.

40.    NAGE and Holway then compounded their failure to act to fulfill the duty of fair representation by the most recent act of pulling the rug out from under Plaintiff and the other 500 bargaining unit members of PBGC when it decided to withdraw its representation without even trying to work with the bargaining unit to protect the CBA and pending cases including Plaintiff's arbitration. Holway and NAGE's action in withdrawing deprives Ms. Baird and members of the Local the fruits of their vote in the April 2, 2007 election. The actions and inactions of Holway and NAGE in response to well founded complaints filed by Ms. Baird were taken to punish her for her expression of her opinion about Holway and his actions towards members of the Local including her opinion expressed during the Trusteeship Action and ULP charges. Holway and NAGE are in violation of 29 U.S.C. §§ 411(a)(1), (2) and (4).

41.    As a result of NAGE's failure to act, Plaintiff has suffered further emotional stress, shock, anguish, loss of self-esteem, fear, helplessness, insult, hair loss, anxiety and loss of sleep.

42.    When compared to its willingness to impose a trusteeship on the Local for violations

15

that were not as egregious, NAGE's treatment of the Plaintiff is malicious, reckless, and indifferent to Plaintiff's legal rights. For this Plaintiff is entitled to punitive damages.

## COUNT II
### Violation of Fiduciary Responsibilities of Officers of Labor Organizations

43.    Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were set forth in full in this count.

44.    Under 29 U.S.C. § 501(a), when any officer, agent, or representative of a labor organization is alleged to have violated the fiduciary duties owed to the organization and its members and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization.

45.    By his own statements, Jeffers disseminated medical and personnel records from the record in the Baird Arbitration. Among the disseminated information were documents Jeffers and all other Local officers knew was protected by an order issued by the arbitrator.

46.    Instead of respecting the protective order or the rights and privileges of the employees to protect the information in the records, Jeffers unlawfully converted union property to his own use. Perry and Petta, the other Local officers at the time, were aware of the unlawful conversion of the records. Surprisingly, neither Perry nor Petta took immediate action to protect the records from further improper dissemination or use.

47.    For months, Plaintiff tried valiantly to get the Local to take action to recover the

converted property and to punish Jeffers for his actions. Plaintiff also strived to get Holway and NAGE to take action to protect the records and to address Jeffers outrageous conduct.

48.     The conversion of the private confidential records is a violation of the fiduciary duty owed to Ms. Baird and the members of the Local by Jeffers. Holway, NAGE and Petta likewise violated their fiduciary duty owed to the Plaintiff and indeed members of the Local by not taking action to secure and/or retrieve the documents and to punish Jeffers for his gross misconduct. Other misdeeds in the Local under the administration placed in office by NAGE and Holway were just overlooked and swept under the rug by NAGE and Holway. When the Local finally had administration working to restore the Local to basic principles of unionism, Holway and NAGE pulls the rug out from under the entire bargaining unit, including Ms. Baird.

49.     As a result of Jeffers misconduct and the failure of Petta to act in conformity with the fiduciary duties owed to the members of the Local and to the Plaintiff, the Local has suffered the exposure to liability for the misconduct and the loss of trust of its membership in the Local's leadership. Additionally, Holway and NAGE's actions were direct violations of the fiduciary duty Holway explicitly acknowledged he owes to the Local's members. Damages should, therefore, be assessed for these violations of fundamental rights of Local members including Ms. Baird.

## COUNT III
### Violation of D.C. Mental Health Information Act

50.     Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were set forth in full in this count.

51.     Pursuant to the District of Columbia Mental Health Information Act, especially § 6-2034, redisclosure of mental health information disclosed in a court proceeding shall be governed by order of the court or, if no order is issued, by the rules of the Superior Court of the District of

Columbia.

52.    On the facts alleged above, Defendant Jeffers was never asked to provide any information on the mental health records of Plaintiff Rhonda Baird.  Thus, the act of divulging the information was malicious and totally without foundation.

53.    Plaintiff did not authorize the release of her mental health records.  Furthermore, Jeffers was aware that the particular records he released were contradicted by later information PBGC tried to mischaracterize.

54.    Jeffers' ability to divulge the records without the knowledge of the Local's President suggests that the records were not adequately protected, despite Plaintiff's repeated requests for its protection and/or return to her.  Thus, then Local President Petta  was at a minimum complicit in the actions of Jeffers by not securing the information to protect against conversion; neither did Petta work to recover the property when he learned of the dissemination.  Indeed, the information is likely to have ended up in the possession of Perry for use in his own legal actions, which now include claims alleging that Plaintiff, and other PBGC employees whose information was also converted from Local records, created or maintained an unsafe and hostile work environment for Perry.

55.    As a result of Jeffers misconduct and Petta's complicity, Plaintiff has suffered further emotional stress, shock, anguish, loss of self-esteem, fear, helplessness, insult, hair loss, anxiety and loss of sleep.

56.    Jeffers, and Petta's treatment of the Plaintiff is malicious, reckless, and indifferent to Plaintiff's legal rights.  For this Plaintiff is entitled to compensatory and punitive damages.

## COUNT IV
### Invasion of Privacy

57.    Plaintiff adopts and incorporates by reference all of the allegations set forth in the

previous paragraphs as if the same were set forth in full in this count.

58.     Under District of Columbia law, one who gives publicity to private facts without permission is liable for invasion of privacy if the matter publicized would be highly offensive to a reasonable person and is not of legitimate concern to the public.  Similarly, the intentional intrusion into someone's privacy or private affairs could lead to liability.

59.     On the facts alleged above, Defendant Jeffers acted intentionally when he disseminated information of a very personal nature. He had no authorization to do so and his conduct would be viewed as highly offensive to a reasonable person.  The information disseminated was not of a public nature.  Thus, Jeffers unlawfully violated Plaintiff's rights to privacy.

60.     As a result of Jeffers misconduct, Plaintiff has suffered further emotional stress, shock, anguish, loss of self-esteem, fear, helplessness, insult, hair loss, anxiety and loss of sleep.

61.     Jeffers conduct was malicious, reckless, and indifferent to Plaintiff's legal rights.  For this Plaintiff is entitled to punitive damages.

## COUNT V
### Intentional Infliction of Emotional Distress

62.     Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were set forth in full in this count.

63.     By his involvement in the Baird Arbitration, Jeffers was aware of the emotional nature of Plaintiff's struggles with the unlawful treatment she suffered.  Yet, he took advantage of this knowledge and deliberately released information he knew would lead to further distress by the Plaintiff.

64.     Petta, Holway and NAGE calculatedly failed to act to protect the private confidential information in the Local's possession despite months of requests from Ms. Baird that the information

be protected. This failure makes these parties complicit in the actions of Jeffers and liable for the resultant emotional distress caused by the outrageous conduct of Jeffers. Indeed, NAGE as the "exclusive representative" of PBGC bargaining unit employees, is implicitly liable for the conduct of its officers. NAGE and Holway are conscious of the adverse impact NAGE's withdrawal will have on pending cases. Even if PBGC's attempts to have the cases dismissed is unsuccessful, employees like Ms. Baird, are going to have to expend even more resources to fight the likely challenges from PBGC. This is a continuation of the manner in which NAGE and Holway's actions have adversely affected the Baird Arbitration.

65.    These actions resulted in the intentional infliction of emotional distress. Plaintiff has suffered further emotional stress, shock, anguish, loss of self-esteem, fear, helplessness, insult, hair loss, anxiety and loss of sleep.

66.    These violation was malicious, reckless, and indifferent to Plaintiff's legal rights. For this Plaintiff is entitled to compensatory and punitive damages.

### COUNT VI
### Negligence

67.    Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were set forth in full in this count.

68.    Under District of Columbia law, a plaintiff in a negligence action must establish three elements: an applicable standard of care, a deviation from that standard by the defendant, and injury resulting from that deviation.

69.    On the facts alleged above, Defendants Holway, NAGE, Jeffers, and Petta  held positions of trust vis-à-vis the Plaintiff. These Defendants breached the duty owed to Plaintiff by their actions, and the breach caused emotional harm to the plaintiff. This harm should be

compensated by the Defendants.

70. The actions of Jeffers, Perry and Petta were taken with reckless disregard for its impact on Plaintiff. Thus, Plaintiff is entitled to punitive damages.

## COUNT VII

### Respondeat Superior

71. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were set forth in full in this count.

72. NAGE is the exclusive representative of bargaining unit employees of NAGE Local R3-77. As such, NAGE's Constitutional and Bylaws govern the conduct of Local officers. It was under this power that NAGE removed former officers of the Local (See District Court Case No. 03-2513). NAGE also maintained a particularly close working relationship with the Petta and Jeffers. Indeed, Petta and Jeffers were key players in the institution of the November 2003 emergency trusteeship. The relationship between these players is long-standing. During the administration of the Local, NAGE was aware of the actions of these officials, NAGE saw all of violations committed by these officials without taking action. NAGE acted as more than just an affiliate or parent union. NAGE was directly involved in the operations of the Local. Thus, NAGE is liable for the conduct or misconduct of officers of the Local.

73. Under respondeat superior, NAGE is liable for the acts and omissions of its employees and agents, when done within the scope of their duties.

74. The actions of the Local officer's were done within the scope of their roles as officers of the Local, and as a part of their relationship with NAGE officials. Thus, NAGE should stand for the misconduct of Petta and Jeffers.

75.    Plaintiff has suffered further emotional stress, shock, anguish, loss of self-esteem, fear, helplessness, insult, hair loss, anxiety and loss of sleep.  Damages caused to the Plaintiff, both compensatory and punitive, should be charged not only to the wrongdoers but also to NAGE, under whose authority the former Local officers were empowered to act.

## COUNT VIII
### Defamation

76.    Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were set forth in full in this count.

Under District of Columbia law, a defendant who makes a false and defamatory statement concerning the plaintiff that is published without privilege to a third party and causes harm to the plaintiff is liable for defamation.

77.    Defendant Jeffers published to a third party, Perry, false information intended to impair Plaintiff's reputation and cause her harm.

78.    Defendant Jeffers knew that the information he disseminated about Plaintiff was contradicted by subsequent information.  Yet, he calculatedly chose to disseminate information intended to harm Plaintiff's reputation.

79.    On the facts alleged above, Defendant Jeffers is liable to the Plaintiff under District of Columbia law for defaming her.

80.    Plaintiff has suffered further emotional stress, shock, anguish, loss of self-esteem, fear, helplessness, insult, hair loss, anxiety and loss of sleep.  Plaintiff is entitled to compensatory and punitive damages for Jeffers conduct.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Rhonda Baird prays this Court grant the following relief:

22

(a)    A declaratory judgment that Defendants in their official capacities violated Plaintiff's legal rights;

(b)    An injunction enjoining Defendants from engaging in such conduct in the future;

(c)    Return of all of the information released by Defendant Jeffers;

(d)    A judgment awarding Plaintiff compensatory damages from the Defendants in an amount appropriate to the proof adduced at trial;

(e)    A judgment awarding Plaintiff punitive damages from Defendants in an amount appropriate to the proof adduced at trial;

(f)    Award Plaintiff her costs and reasonable attorney's fees; and

(g)    Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Trial by jury is demanded on all issues for which a jury trial is available.


Respectfully submitted,

6/19/07

Rhonda Baird, Pro Se
Plaintiff
13615 Layhill Road
Silver Spring, MD 20906
(301) 603-1641
rnbaird64@aol.com

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RHONDA N. BAIRD, Pro Se<br>On her behalf and on behalf of National<br>Association of Government Employees<br>("NAGE") Local R3-77<br>13615 Layhill Road<br>Silver Spring, MD 20906<br><br>        Plaintiff,<br><br>        v.<br><br>DAVID HOLWAY, Individually and as<br>PRESIDENT OF National Association of<br>Government Employees ("NAGE") and<br>NAGE through its President David Holway<br>159 Burgin Parkway<br>Quincy, Massachusetts 02169<br><br>RICHARD PETTA, Individually and as an<br>Officer of NAGE LOCAL R3-77<br>1200 K Street, NW<br>Washington, D.C. 20005<br><br>DWAYNE JEFFERS, Individually and as an<br>Officer of NAGE LOCAL R3-77<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No. 06-1985 (JDB) |

## VERIFICATION OF COMPLAINT BY RHONDA BAIRD

I, Rhonda Baird, Plaintiff in the matter of *Rhonda Baird v. David Holway, et al.*, hereby

verify the Plaintiff's First Amended Complaint to enforce and uphold rights under federal and

District of Columbia laws by stating that I declare under penalty of perjury, that the factual

statements contained in Plaintiff's First Amended Complaint are true and correct.

Date:  June 19, 2007

_____
Rhonda Baird, Pro Se Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RHONDA N. BAIRD, Pro Se<br>On her behalf and on behalf of National<br>Association of Government Employees<br>("NAGE") Local R3-77<br>13615 Layhill Road<br>Silver Spring, MD 20906<br><br>Plaintiff,<br><br>v.<br><br>DAVID HOLWAY, Individually and as<br>PRESIDENT OF National Association of<br>Government Employees ("NAGE")<br>&<br>NAGE through its President David Holway<br>159 Burgin Parkway<br>Quincy, Massachusetts 02169<br><br>RICHARD PETTA, Individually and as an<br>Officer of NAGE LOCAL R3-77<br>1200 K Street, NW<br>Washington, D.C. 20005<br><br>DWAYNE JEFFERS, Individually and as an<br>Officer of NAGE LOCAL R3-77<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 06-1985 (JDB)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF THE FILING OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Rhonda Baird hereby provides notice of the filing of her First Amended Complaint

(the "Amended Complaint"). In order to clarify some of the claims against Defendants David

Holway and NAGE and to include additional facts that support the previously filed claims. The

Defendants have not filed an Answer in this case, only a Motion to Dismiss.

# RECEIVED

### JUN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course at any time before a responsive pleading is served. Fed. R. Civ. P. 15(a). The D.C. Court of Appeals has held that Rule 15(a) "guarantee[s] a plaintiff an absolute right" to amend the complaint once at any time so long as the defendant has not served a responsive pleading and the court has not decided a motion to dismiss. *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282-83 (D.C. Cir. 2000)(citing Fed. R. Civ. P. 15(a)). If there is more than one defendant, and not all have served responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer. 6 Fed. Prac. & Proc. 2d § 1481. Motions to dismiss do not qualify as responsive pleadings for the purpose of Rule 15. *James V. Hurson Assocs.*, 229 F.3d at 283; *Bowden v United States*, 176 F.3d 552 (D.C. Cir. 1999).

Defendants David Holway and NAGE have filed only a Motion to Dismiss. Thus, under the law governing amendments to pleadings, Plaintiff Rhonda Baird has an absolute right to file her First Amended Complaint as a "matter of course."

Respectfully submitted,

Rhonda Baird, Pro Se
Plaintiff
13615 Layhill Road
Silver Spring, MD 20906
(301) 603-1641
rnbaird64@aol.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 19th day of June 2007, she filed her First Amended Complaint

and Notice of the Filing of Plaintiff's First Amended Complaint and served paper copies to the

following persons as indicated:

W. Gray Kohlman, Esq.
Dora V. Chen, Esq.
Bredhoff & Kaiser, P.L.L.C.
805 15th street, N.W.
Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
Fax: (202) 842-1888
Counsel for David Holway and National Association of Government Employees

Richard Petta
NAGE Local R3-77
1200 K Street, NW
Washington D.C. 20005

Dwayne Jeffers
NAGE Local R3-77
1200 K Street, NW
Washington D.C. 20005

_____
Rhonda Baird
