## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RHONDA N. BAIRD, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 1:06CV01985 (JDB) |
| | ) | |
| DAVID HOLWAY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

## DEFENDANTS DAVID HOLWAY AND NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants David Holway and National Association of Government Employees ("NAGE"), by counsel, hereby files this Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P 12(b)(6). The reasons supporting this Motion are set forth in the accompanying Memorandum.

A proposed Order is attached.

Respectfully submitted,

_____/s/_____
W. Gary Kohlman (No. 177527)
Dora V. Chen (No. 485200)
BREDHOFF & KAISER, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
Fax: (202) 842-1888
*Counsel for National Association of*
*Government Employees and Defendant*
*David Holway*

Dated: July 23, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RHONDA N. BAIRD, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 1:06CV01985 (JDB) |
| | ) | |
| DAVID HOLWAY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT DAVID HOLWAY AND NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants David Holway and National Association of Government Employees ("NAGE") hereby files this motion to dismiss Plaintiff Rhonda Baird's Amended Complaint. Plaintiff's latest attempt to cure the defects in her original complaint are to no avail as her Amended Complaint still states no legally cognizable claims against NAGE or its National President, David Holway.

Although this *pro se* Complaint[1] is not a model of clarity, the essence of Baird's Amended Complaint appears to center around the alleged unauthorized disclosure of her medical records by Dwayne Jeffers, a steward at Local R3-77 ("Local"). Amended Complaint ("Amend. Compl.") ¶ 27. Jeffers apparently obtained these documents in connection with his representation of Baird in her grievance arbitration against the employer, the Pension Benefit Guaranty Corporation ("PBGC"). *Id.* As a result, Baird "initiated this suit to try to encourage NAGE and the Local to redress her concerns for the release of confidential information from the

---

[1]Although Plaintiff Baird is proceeding *pro se*, she has been employed as an attorney in the Office of Chief Counsel at the Pension Benefit Guaranty Corporation since 1997. Amend. Compl. ¶ 9.

Baird arbitration." *Id.* ¶ 28. She has sued Jeffers and Richard Petta (the former Local President), as well as NAGE and NAGE President Holway, alleging eight causes of action ranging from a Labor-Management Reporting and Disclosure Act ("LMRDA") Title I claim to a "respondeat superior" claim as well as a potpourri of common-law tort claims.  As we explain in full below, Plaintiff has failed to plead any facts in her Amended Complaint that would support a Title I retaliation claim against NAGE or President Holway or hold NAGE vicariously liable for the actions of Local officers.  Moreover, Baird cannot avoid the exclusive jurisdiction of the Federal Labor Relations Authority ("FLRA") by bringing claims under the guise of the common-law and Title I violations.

## FACTS AS ALLEGED IN THE AMENDED COMPLAINT

### I.     The Baird Arbitration

In February 2003, Local R3-77 initiated the grievance process on behalf of Baird, alleging misdeeds committed by various PBGC supervisors.  Amend. Compl. ¶ 15.  Once Baird's grievance was appealed to arbitration, her case became ensnared in the political turmoil that had engulfed the Local's leadership; that turmoil ultimately led to the imposition of a trusteeship by NAGE over the Local under LMRDA Title III in November 2003.  Compl. ¶¶ 22-23; *Johnson v. Holway*, 439 F. Supp. 2d 180 (D.D.C. 2006). [2]

---

[2] In November 2003, NAGE instituted a trusteeship over Local R3-77 pursuant to LMRDA Title III, 29 U.S.C. § 462, due to financial improprieties and dysfunction in the Local's leadership.  The Local's former officers, Valda Johnson, Stuart Bernsen, and Elizabeth Baker sued NAGE (and NAGE officers and employees), alleging violations of Title I and III of the LMRDA, Title VII of the Civil Rights Act, and common-law defamation.  In December 2005, Judge Huvelle disposed of the majority of the claims, allowing Bernsen and Johnson's LMRDA Title I and Title VII of the Civil Rights Act claims to be tried.  *See Johnson v. Holway*, C.A. No. 03-2513, 2005 WL 3307296 (D.D.C. Dec. 6, 2005) (Mem. Op.).  After a bench trial in March and April 2006, Judge Huvelle dismissed the remainder of the claims and entered judgment in favor of the Defendants.  439 F. Supp. 2d 180 (D.D.C. 2006).

NAGE, in accordance with its established policy, declined to provide any legal or financial assistance in Baird's arbitration. Amend. Compl. ¶ 16; *see also Johnson*, 439 F. Supp. 2d at 193, 207 & n.17.[3] Under its arbitration policy, when NAGE determines that a grievant's case is not meritorious, it informs the local president that NAGE will not be responsible for the costs of the arbitration nor provide any legal representation. *See* Ex. A (NAGE Arbitration Policy); *see also Johnson*, 439 F. Supp. 2d at 193. Once NAGE declines to provide legal or financial support for an arbitration, its involvement in the case comes to an end. *See Johnson*, 439 F. Supp.2d at 192, 223 (describing the NAGE's application of the arbitration policy to former local president Valda Johnson). If the Local nonetheless decides to pursue the case without national support, then the Local is solely responsible for the fees associated with the arbitration. *Johnson*, 2005 WL 3307296 at *24.

---

The Baird Arbitration became an issue in the *Johnson v. Holway* litigation because of Baird's allegations that the Local's Executive Committee mishandled the scheduling and provision of financial support for her arbitration. *Id.* at 207-08.

[3] On a motion to dismiss, a Court may consider documents referenced in the Complaint, as well as matters of which it may take judicial notice, such as decisions of another court or agency, and matters of public record. *See Howard v. Gutierrez*, 474 F. Supp. 2d 41, 47-48 (D.D.C. 2007) (citing *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) and *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996)). Accordingly, this Court may consider the NAGE Arbitration Policy (attached hereto as Exhibit A), as Plaintiff has referred to it in her Complaint. Amend. Compl. ¶ 16. This Court may also take judicial notice of Judge Huvelle's Memorandum Opinions in *Johnson v. Holway*, *see supra* note 3, from which Plaintiff has admittedly "incorporated . . . many of the[] representations" in her Amended Complaint. Amend. Compl. ¶ 18, n.1.

Additionally, this Court may take judicial notice of Plaintiff's Unfair Labor Practice charge currently pending before the FLRA (attached hereto as Exhibit B), *see infra* at Part III.B, which is a matter of public record. Likewise, NAGE's FLRA petition to disclaim interest in Local R3-77 (attached hereto as Exhibit C), *see infra* at Part III.A, is also a matter of public record as well as referenced in Plaintiff's Amended Complaint, *see* Amend. Compl. ¶¶ 32, 40; NAGE's memorandum to Local R3-77 members regarding the FLRA petition (attached hereto as Exhibit D) is referenced in Plaintiff's Amended Complaint, *see id.*

Baird fully invoked this internal appeals process, which upheld NAGE's initial decision to decline support for her arbitration. Amend. Compl. ¶ 16; *see also Johnson*, 439 F. Supp. 2d at 207. As a result of NAGE's decision, and in order to circumvent the turmoil then embroiling the Local, Baird took full financial responsibility for the costs of her arbitration by retaining her own legal representation. Amend. Compl. ¶ 16; *see also Johnson*, 439 F. Supp. 2d at 207. Although the Local had authorized Baird to proceed entirely on her own with a private attorney, Baird later chose to involve the Local's steward, Dwayne Jeffers, in her case. Amend. Compl. ¶ 21; *see also Johnson*, 439 F. Supp. 2d at 207 (describing Baird's agreement with the Local's Executive Committee authorizing Baird to proceed to arbitration with her private attorney but requiring her to keep the Local appraised of the status of the case, and Baird's subsequent decision to use local representatives in her case). Ultimately, the liability phase of the arbitration spanned 13 days in July and August 2004. Amend. Compl. ¶ 22. In late April 2005, the Arbitrator issued a decision on that issue. *Id.* ¶ 26.

At some point, in the "latter phases" of Baird's arbitration, Jeffers and Baird began having "differences of opinion" over the direction of her case. *Id.* ¶ 23. These disagreements, in Baird's telling, "[led] to a breakdown in the relationship between Baird and Jeffers and also Robert Perry, . . . who supported Jeffers and whose situation was the pivotal case leading to 'collateral damage' of other [PBGC] employees," apparently referring to Perry's own litigation against PBGC.[4] *Id.* Relations between Baird and Jeffers deteriorated to such a degree that

---

[4] Robert Perry is a former Local official. Amend. Compl. ¶ 23. Perry was initially named as a defendant in Plaintiff's original complaint, but appears to have been dropped from the case as he is no longer identified in the case caption. *See* Amend. Compl.

It is worth noting Perry's prior litigation against PBGC, which Plaintiff refers to in her Amended Complaint. *Id.* ¶ 28. In 2003 and 2004, Perry filed two Title VII lawsuits against the agency (Nos. 03-2495 and 04-1996), which were both settled in November 2005 by giving Perry a promotion and a cash payment, but requiring him to resign from PBGC no later than 12 months

Jeffers allegedly called Baird names in email messages to PBGC management officials. *Id.* ¶ 25 (*e.g.* "pathological liar;" accusation that Baird sent "psychotic" emails and made "terrorist style" threats).

Baird contends that she complained about Jeffers' conduct in April and May 2005, ultimately requesting that the Local remove Jeffers from her case. *Id.* During the course of her disagreements with Jeffers, Baird also reportedly requested that the Local protect her arbitration files, and allegedly "urged" that the records be returned to her. *Id.*

## II.    Alleged Release of Documents Containing Baird's Personal Information

The central complaint animating Baird's lawsuit is Jeffers' alleged release of her medical documents. On November 21, 2005, Jeffers allegedly confessed that "he had provided large amounts of the record in the arbitration to Mr. Perry," in an apparent response to a subpoena served on Jeffers seeking files "about Mr. Perry."[5] *Id.* ¶ 27. Also on November 21, 2005, Jeffers allegedly "admitted he released medical (Plaintiff's medical records) and personnel information relating to employees other than Perry." *Id.* Thereafter, Baird contends that she made requests to the Local, as well as to NAGE through President Holway, to "take action to retrieve and

---

after the agreement. In 2006, Perry again sued PBGC alleging that PBGC had failed to protect him from the unsafe working conditions created by Stuart Bernsen, Valda Johnson and Rhonda Baird. *Perry v. Snowbarger*, No. 06-01371 (D.D.C. filed Aug. 2, 2006) (Compl. ¶ 12) (alleging that Bernsen, Johnson, and Baird had "disseminated flyers, e-mails, intimidation, blackmail, slander, inflammatory, defamatory, and libelous statements and went so far as to threaten violence against [Perry]"). Perry also alleged that PBGC discriminated against him because his Form SF-50 indicated that his promotion was "[p]ursuant to a stipulation and settlement presented to the U.S. District Court for the District of Columbia on November 8, 2005." *Id.* ¶ 9.

[5] Dwayne Jeffers also has his own ongoing litigation against the PBGC in this District Court. In 2003, Jeffers filed a Title VII lawsuit against PBGC, alleging that PBGC denied him a promotion in retaliation for his participation in protected EEO activity. *Jeffers v. Chao*, No. 03-01762 (D.D.C. filed Aug. 19, 2003).

redress the dissemination" of her records, but that neither the Local nor President Holway responded. *Id.* ¶ 28.

On May 17, 2006, Baird filed an unfair labor practice charge against NAGE with the FLRA, complaining, *inter alia*, that NAGE had violated its duty of fair representation when it failed to respond to her complaint about Jeffers' disclosure of medical records. *See* Ex. B; *see also supra* note 3. This charge is still pending before the FLRA.

### III.    NAGE's FLRA Petition to Disclaim Interest in Local R3-77

On May 11, 2007, NAGE filed a petition with the FLRA, disclaiming interest in representing the bargaining unit at the PBGC. *See* Amend. Compl. ¶ 32. *See also* Ex. C; *supra* note 3. On the same date, President Holway explained to the Local members that the decision was made because "the resources of any labor organization are not limitless and to continue [NAGE's] relationship with employees of PBGC would be unfair to [NAGE's] other members." *See* Amend. Compl. ¶ 32. *See also* Ex. D (President Holway's Memorandum to Local R3-77 Bargaining Unit Members); *supra* note 3.

### ARGUMENT

In order to survive a motion to dismiss, as the Supreme Court recently clarified in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), it is not enough for a plaintiff to provide a "formulaic recitation of the elements of a cause of action." *Id.* at 1965. Rather, the complaint must contain "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of one of the elements of her case. *Id.* Otherwise, "without some further factual enhancement," the mere "naked assertion" of a legal element of the plaintiff's claim "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1966 (citation

omitted).  Especially instructive here is the Court's analysis of the deficiencies in the factual

pleadings in *Twombly*.  In the context of a Sherman Act § 1 antitrust lawsuit, the Court held:

> Without more, parallel conduct does not suggest conspiracy, and a
> conclusory allegation of agreement at some unidentified point does
> not supply facts adequate to show illegality.  Hence, when
> allegations of parallel conduct are set out in order to make a § 1
> claim, they must be placed in a context that raises a suggestion of a
> preceding agreement, not merely parallel conduct that could just as
> well be independent action.

*Id*.  In other words, because parallel conduct among competitors could just as easily result from a

multitude of permissive reasons—such as "chance, coincidence, [or] independent responses to

common stimuli," *Id.* at 1966, n.4—a plaintiff cannot rely on allegations of parallel conduct

alone to show an impermissible agreement.  Instead, a plaintiff must allege "enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement."  *Id.* at 1965.

Therefore, on a defendant's motion to dismiss, when the complaint only recites conclusory legal

assertions, the court "need not accept inferences drawn by plaintiffs if such inferences are

unsupported by the facts set out in the complaint."  *Kowal v. MCI Communications Corp.*, 16

F.3d 1271, 1276 (D.C. Cir. 1994).

As we show below, Plaintiff Baird is far short of the requisite pleading standard as her

Complaint contains only conclusory legal assertions supported by wild speculation, neither of

which are sufficient to allow her to proceed to discovery on her claims against NAGE and

President Holway based on LMRDA Title I retaliation.  Likewise, although the Complaint baldly

contends that NAGE should be held vicariously liable for the actions of the Local, it fails to

allege any facts that would demonstrate the requisite control over the Local, over the relevant

time period, that would overcome the presumption that national unions are not liable for its

locals.  Finally, to the extent that Plaintiff brings any common-law tort claims against NAGE or

President Holway, those claims are thinly-veiled duty of fair representation claims, which properly belong before the FLRA—the exclusive forum for such claims. For the same reason, Plaintiff's attempt to challenge NAGE's petition to disclaim interest in the bargaining unit at PBGC must be dismissed for lack of jurisdiction.

I.    **Plaintiff Fails To Allege Sufficient Facts Supporting Her LMRDA Title I Claim That NAGE and President Holway Retaliated Against Her By Failing To Respond To Her Complaints About Jeffers.**

Plaintiff's LMRDA Title I claim is fatally flawed because it does not contain any factual allegations that could possibly establish that NAGE or President Holway had retaliated against her for protected activity. Title I sets forth the so-called "Bill of Rights" for union members; section 101(a)(2), in pertinent part, protects the freedom of a union member to "express any views, arguments or opinions" by prohibiting retaliation on the basis of her speech. 29 U.S.C. §411(a)(2). In order for a plaintiff to state a Title I claim, she must allege facts showing: (1) she "exercised the right to oppose union policies"; (2) she "was subjected to retaliatory action"; and (3) the retaliatory action was "'a direct result of [her] decision to express disagreement' with the union's leadership." *See, e.g., Casumpang v. Int'l Longshoremen's & Warehousemen's Union, Local 142*, 269 F.3d 1042, 1058 (9th Cir. 2001) (quoting *Sheet Metal Workers v. Lynn*, 488 U.S. 347, 354 (1989)). Therefore, an "obvious necessity" in any Title I case is "a real, as opposed to an imaginary or improperly inferred, threat of retaliation." *Rumore v. Belk*, 907 F. Supp. 487, 493 (D.D.C. 1995), *aff'd,* 107 F.3d 923 (D.C. Cir. 1996) (unpublished table decision). While at this juncture, of course, Plaintiff does not need to proffer any *proof* of retaliation, she must—at a bare minimum—allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" of retaliation. *Twombly*, 127 S. Ct. at 1965. As we now show, she has not done so.

8

As bottom, Plaintiff's Title I claim is that President Holway's alleged failure to respond personally to her complaint about Jeffers's conduct was a deliberate act done in retaliation for her protected activity. *See* Amend. Compl. ¶ 37. Even assuming, for purposes of this motion, that she had engaged in protected activity under Title I, Plaintiff has alleged no facts supporting a reasonable inference that NAGE or President Holway's inaction was attributable to retaliation, rather than an entirely permissible motivation. *See Twombly*, 127 S. Ct. at 1966 & n. 4. In that vein, it is worth reiterating the undisputed fact that NAGE had explicitly washed its hands of Plaintiff's arbitration once the internal appeals process affirmed the initial determination that her case did not merit financial and legal support. From that point forward, just as the financial responsibility for the arbitration rested entirely on the shoulders of the Local and Baird, control over the arbitration itself was likewise within the purview of the Local and Baird alone. Any dispute arising out of her arbitration, therefore, was a matter between her and the Local—not NAGE. *See supra* at 3-4. Simply put, neither NAGE nor President Holway had any obligation to respond to Baird's complaints, for her arbitration was solely a Local matter. Therefore, it "could just as well be," *Twombly*, 127 S. Ct. at 1966, that given the history of Plaintiff's case, NAGE had determined that the Local was the appropriate entity to handle the dispute, and for that reason, declined to insert itself into a local matter.

Further undermining Plaintiff's Title I claim is the omission of any allegations suggesting that either NAGE, which has 45,000 members, *see Johnson*, 439 F. Supp. 2d at 186, or its national president, for that matter, has a regular practice of intervening in every—or even *any*—union member's personal dispute with his or her local such that the failure to respond to

*Plaintiff's* request in particular was a deliberate and retaliatory act.[6]  Instead, Plaintiff's sole factual allegation supporting her claim of retaliatory differential treatment is as follows: "when compared to [NAGE's] willingness to impose a trusteeship on the Local for violations that were not as egregious, NAGE's treatment of Plaintiff is malicious . . . entitl[ing] [her] to punitive damages." Amend. Comp. ¶ 42.  Without recounting in full the reasons why NAGE imposed the trusteeship, which are set forth in precise detail in Judge Huvelle's two opinions in *Johnson v. Holway*, *see supra* note 2, suffice it to say that when NAGE made its decision to impose the trusteeship, it had been confronted with an apparently insolvent local that could not pay its mounting arbitration bills, as well as a dysfunctional leadership that refused to disclose basic information to members and retaliated against those who dared to dissent; imposition of the trusteeship was "the only responsible action that could have been taken."  *Johnson*, 439 F. Supp. 2d at 215-16.  Simply put, the issue that Plaintiff raised with NAGE regarding her personal dispute with Jeffers pales in comparison to the systematic abuse of power and dysfunction that permeated every aspect of Local R3-77's governance.  The difference between the circumstances surrounding NAGE's imposition of the trusteeship and the circumstances of Baird's personal dispute with a Local steward is so vast that it could hardly be the basis of differential treatment giving rise to a reasonable inference of retaliatory motive.

Therefore, because Plaintiff "does not set forth a single fact in a context that suggests" retaliation on the part of NAGE or President Holway, the Amended Complaint simply fails "raise a reasonable expectation that discovery will reveal evidence" of an LMRDA Title I violation.  *See Twombly*, 127 S. Ct. at 1965, 1968.  Indeed, Plaintiff failed to heed Judge

---

[6] Additionally, since NAGE had no blanket obligation to intervene in an internal matter between a local and a disgruntled member, *see infra* Part II, its alleged failure to do so on behalf of Baird in particular cannot constitute disparate retaliatory treatment that infringes upon her free speech rights under Title I.

Huvelle's admonition that a Title I plaintiff's "burden [to demonstrate causation] cannot be satisfied by the unsupported contention that plaintiff's 'vociferous criticism necessarily would have created animus' and as a result, retaliation." *Johnson,* 439 F. Supp. 2d at 228 (quoting *Commer v. McEntee*, 121 F. Supp. 2d 388, 398 (S.D.N.Y. 2000)). Plaintiff's Title I charge against NAGE and President Holway based on an alleged failure to respond her complaints must be dismissed. (Plaintiff's Title I claim based on NAGE's decision to disclaim interest in the PBGC bargaining unit is discussed *infra* at Part III.)

II.     **Plaintiff's "Respondeat Superior" Claim Against NAGE Should Be Dismissed Because NAGE Is Not Vicariously Liable For The Actions Of Local Officers And Had No Duty To Intervene in Plaintiff's Dispute With The Local.**

Baird alleges a nonsensical, catch-all "Respondeat Superior" cause of action in Count VII, contending that NAGE is "liable for the acts and omissions of its employees and agents." Amend. Compl. ¶¶ 73-74. However Plaintiff styles her claim, NAGE is not vicariously liable because she has not pled any facts under the *Twombly* standard that would compel this Court to disregard the long-standing, fundamental principle that national or international unions are not automatically liable for the acts of locals and local officers.

It is well-established that a national or international union is a separate body from its local unions. Therefore, "[t]he acts of the local and its agents cannot automatically be imputed to the International." *Shimman v. Frank,* 625 F.2d 80, 97 (6th Cir. 1980). Instead, as the D.C. Circuit has held, "common-law agency principles . . . provide the appropriate analytical framework" for determining a national union's liability for a local's actions. *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1427 (D.C. Cir. 1988). Under this standard, a national union cannot be vicariously liable for the actions of its local affiliates absent proof that the national union, "with knowledge of the surrounding circumstances, . . . authorizes,

ratifies, or approves a local's actions the effects of which are sufficient to establish a claim . . .

against the local." *See id.* at 1430. The case law further establishes that courts will look not to a

national union's "theoretical control" over its locals, but instead will analyze the "nature and

extent of *actual* control" over the local in the relevant factual context. *See id.* at 1431 (citing

*Shimman*, 625 F.2d at 98 n.36) (emphasis added). On a motion to dismiss, the failure to plead

sufficient factual allegations to support an agency relationship requires the dismissal of the

national union from the case. *See Saunders v. Hankerson*, 312 F. Supp. 2d 46, 59 (D.D.C. 2004)

(dismissing the complaint on the ground that plaintiffs' allegations were "insufficient to establish

the requisite agency relationship").

 Applying this legal framework here, it is clear that NAGE cannot be held vicariously

liable for Jeffers' alleged disclosure of Baird's personal records because Plaintiff has alleged no

relevant facts supporting an inference that NAGE had "actual control" over the Local, its

officers, or Baird's arbitration. As a threshold matter, as discussed at length *supra* at 3-4 and 9,

the undisputed fact remains that far from having any "actual control" over Baird's arbitration,

NAGE had specifically declined any involvement, support, or responsibility over that matter.

There are no factual allegations in the Complaint demonstrating that NAGE had, notwithstanding

its decision, thereafter authorized, ratified, or approved of any aspect of the Local's handling of

Baird's arbitration. Therefore, NAGE cannot be held vicariously responsible for actions of the

Local or Local officers with respect to Baird's arbitration.

 The sole fact advanced by Plaintiff to support her "respondeat superior" claim does not

undercut this conclusion in any respect. While she alleges that NAGE "was directly involved in

the operations of the Local" during the trusteeship, Amend. Compl. ¶ 72, this event is not at all

dispositive of the "actual control" issue because NAGE's trusteeship over the Local was lifted on

February 2, 2005—*before* Baird's complaint about Jeffers' representation and Jeffers' alleged disclosure of her personal records allegedly occurred. *See Johnson*, 439 F. Supp. 2d at 213, 221-22; *supra* notes 3 & 4. Specifically, Baird alleges that her first complaints about Jeffers' conduct were first made in "April and May 2005." *See supra* at 5; Amend. Compl. ¶ 25. Baird's complaint about Jeffers' alleged disclosure of the records occurred on November 21, 2005. Amend. Compl. ¶ 27. Thus, by the time Baird allegedly began making her complaints to the Local and NAGE, the Local had been already returned to self-governance. And, from the point in time that the trusteeship was lifted on February 2, 2005, NAGE ceased to have "actual control" over her arbitration. The trusteeship allegations, therefore, do not advance Baird's attempt to hold NAGE responsible for the actions of the Local.

Apart from these trusteeship allegations and a conclusory statement that "NAGE . . . remained very involved in the operation of the Local and was aware of the problems in the Local," *Id.* ¶ 29, the Complaint is devoid of any sufficient "factual enhancement," as required by *Twombly*, *see supra* at 6-7, that could possibly establish an agency relationship between the Local officers and NAGE with regard to her arbitration. *Compare Berger*, 843 F.2d at 1428 (finding agency relationship on the ground that the international union had approved of the practice that was later found to be discriminatory); *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 409 (6th Cir. 1999) (same).

Further, because Baird has not pled any facts supporting an agency relationship, NAGE was under no affirmative duty to respond to Baird's complaints. The Supreme Court has held that "[i]n the face of Congress' clear statement of the limits of an international union's legal responsibility for the acts of one of its local unions, it would be anomalous to hold that an international is nonetheless liable for its failure to take certain steps in response to actions of the

13

local." *Carbon Fuel Co. v. United Mine Workers of Am.*, 444 U.S. 212, 217-18 (1979). Thus, "[a]n International union has no independent duty to intervene in the affairs of its local chapters, even where the international has knowledge of the local's unlawful acts." *Phelan v. Local 305*, 973 F.2d 1050, 1061 (2d Cir. 1992); *accord Brenner v. Carpenters Local 514*, 927 F.2d 1283, 1289 (3d Cir. 1991). Put another way, "the International's decision to take no action notwithstanding the complaints [it received] . . . is insufficient as a matter of law" to establish ratification by the International. *Brenner*, 927 F.2d at 1290.[7]

Accordingly, in the absence of factual allegations that would establish the "requisite agency relationship" between NAGE and the Local officials, Plaintiff's claims against NAGE must be dismissed. *See Saunders*, 312 F. Supp. 2d at 59.

### III. Because This Court Does Not Have Jurisdiction To Decide Matters Within The Exclusive Jurisdiction Of The FLRA, Plaintiff's Title I Challenge To NAGE's Petition To Disclaim Interest In Local R3-77 And Plaintiff's Common-Law Tort Claims Must Be Dismissed.

#### A. Plaintiff's Attempt To Circumvent The Exclusive Jurisdiction Of The FLRA By Pleading A Title I Claim Based On NAGE's Decision To Disclaim Interest Must Be Rejected.

The Federal Labor Relations Authority "possesses exclusive jurisdiction over federal labor relations matters," *Columbia Power Trades Council v. United States Dep't of Energy*, 671 F.2d 325, 327 (9th Cir. 1982), including "matter[s] relating of representation" posed by union's disclaimer of interest in a bargaining unit. 5 U.S.C. § 7111(b)(2). Therefore, under Title VII of the Civil Service Reform Act, the *only* avenue for judicial review is *after* the FLRA's

---

[7] Indeed, in light of the undisputed facts that NAGE had declined any involvement or support in Baird's arbitration and that her case was solely with the control of the Local and herself, *see supra* at 3-4 & 9, there can be no basis for the breach of fiduciary duty claim Plaintiff advances in Count II against NAGE. Amend. Compl. ¶¶ 43-49. Assuming that Plaintiff's medical records from her arbitration constituted "property" within the meaning of LMRDA §501, those records were with the custody and control of the Local *not* NAGE.

administrative process has been exhausted and a final order issued.  5 U.S.C. § 7123(a).  Even

then, the aggrieved party may only file an appeal of the final order in the circuit courts; "[t]he

district courts do not have concurrent jurisdiction over matters within the exclusive purview of

the FLRA."  *Am. Fed'n of Gov't Employees v. Loy*, 367 F.3d 932, 935 (D.C. Cir. 2004) (citing

*Karahalios v. Nat'l Fed'n of Fed. Employees*, 489 U.S. 527, 533 (1989)); *see also Ass'n. of*

*Civilian Technicians, Inc. v. FLRA*, 283 F.3d 339, 342 (D.C. Cir. 2002).  Therefore, there can be

no reasonable dispute that Plaintiff is statutorily barred from filing a direct challenge to NAGE's

disclaimer of interest in representing the bargaining unit at PBGC because, not only has the

FLRA not completed its consideration of NAGE's petition, but even if Plaintiff *had* exhausted

her administrative remedies, this Court is not the correct forum for her appeal.

Instead, Plaintiff attempts an end-run around "the expressed desire of Congress to create

an exclusive statutory scheme," *Columbia Power Trades Council*, 671 F.2d at 327, by

camouflaging her challenge to NAGE's petition to disclaim interest as another LMRDA Title I

retaliation claim.  Amend. Compl. ¶ 40.  Courts, however, do not "put a premium on clever

drafting of a complaint" when determining jurisdictional questions: "[i]t would require the

suspension of disbelief to ascribe to Congress the design to allow its careful and thorough

remedial scheme to be circumvented by artful pleading."  *Steadman v. Governor, United States*

*Soldiers' & Airmen's Home*, 918 F.2d 967 (D.C. Cir. 1990) (quoting *Brown v. Gen. Servs.*

*Admin.*, 425 U.S. 820, 933 (1976)).  It is within the exclusive jurisdiction of the FLRA to resolve

any issues arising out of NAGE's petition to disclaim interest, and this Court simply does not

have jurisdiction to intrude into matters placed by Congress to be solely within that agency's

purview by rendering a decision on Baird's contention that NAGE's petition somehow violated

LMRDA Title I.[8]

    **B.**    **To The Extent That Plaintiff States Any Common-Law Tort Claims Against NAGE And President Holway Directly, Those Claims Are Preempted By The Exclusive Jurisdiction Of The FLRA To Hear Duty Of Fair Representation Claims.**

The application of this legal framework also mandates the dismissal of Plaintiff's

common-law tort claims. Although these claims appear to focus largely on the actions of the

Local officer defendants, Perry, Petta, and Jeffers, [9] to the extent Plaintiff seeks to bring any of

these claims against NAGE and President Holway, those claims are preempted by the FLRA's

exclusive jurisdiction to hear duty of fair representation claims.

The FLRA's exclusive jurisdiction over federal labor relations includes disputes arising

out of a union's duty of fair representation. *See Karahalios*, 489 U.S. at 531-32. In the federal

---

[8] While this Court has no jurisdiction to decide the merits of Plaintiff's challenge to NAGE's FLRA petition, it is worth noting that, as a general matter, a "union may disclaim its role as a collective-bargaining representative," and "cannot [be] compel[led] . . . to represent employees it no longer desires to represent." *Prod. & Maint. Union, Local 101 (Bake Line Products, Inc.)*, 329 N.L.R.B. 247, 248 (1999); *Elec. Workers IBEW Local 58 (Thomas Edison Club)*, 234 N.L.R.B.633, 634 (1978). *See also Corrugated Asbestos Contractors, Inc v. N.L.R.B.*, 458 F.2d 683, 687 (5th Cir. 1972) ("We cannot force a union to continue, against its wishes, a relationship that is in its very nature predicated upon voluntariness and consent."); *United Steel Workers of Am., Local 14693 (Skibeck)*, 345 N.L.R.B. No. 46 at 3 (2005) (Member Liebman, dissenting in part) ("[E]mployees do not have a protected right to insist that a union continue to represent them without disclaiming interest. Otherwise, contrary to our decisions, a union would be required to continue representing a bargaining unit that it no longer desires to represent.").

[9] Count III alleges that Jeffers violated the D.C. Mental Health Information Act, and that Petta was "complicit in the actions of Jeffers." Amend. Compl. ¶¶ 50-56. Count IV alleges that Jeffers violated Baird's right to privacy by disseminating her personal records. *Id.* ¶¶ 57-61. Count V alleges that Jeffers committed intentional infliction of emotional distress against Baird, and that Petta and NAGE failed to act to protect Baird's records. *Id.* ¶¶ 62-66. Count VI alleges that Holway, NAGE, Jeffers and Petta violated their duty of care to Plaintiff and therefore committed "negligence." *Id.* ¶¶ 67-70. Count VIII alleges defamation by Jeffers and Perry. *Id.* ¶¶ 76-80.

sector, like its private counterpart,[10] a union that is the exclusive representative of a bargaining

unit "is responsible for representing the interests of all employees in the unit it represents without

discrimination and without regard to labor organization membership."  5 U.S.C. § 7114(a)(1).

The Supreme Court has made clear that, unlike in the private sector, "neither the language nor

the structure of the Act shows any congressional intent to provide a private cause of action to

enforce federal employees unions' duty of fair representation."  *Karahalios*, 489 U.S. at 533

(noting that the federal judiciary's only role in such cases is in review of FLRA final orders).

       As was the fate of Plaintiff's LMRDA Title I challenge to NAGE's petition to disclaim

interest in the bargaining unit, Plaintiff's attempt to circumvent the exclusive jurisdiction of the

FLRA by dressing up her duty of fair representation claims as common-law tort claims must fail.

*See May v. Shuttle, Inc.*, 129 F.3d 165, 179 (D.C. Cir. 1998) (federal duty of fair representation

preempts identical state law claims);  *Nellis v. Air Line Pilots Ass'n*, 15 F.3d 50, 51 (4th Cir.

1994) (same).  If a state-law claim "is based on the same conduct that would support a federal

duty of fair representation claim or if it seeks to vindicate the same rights as the federal duty of

fair representation," then it is preempted.  *Cooper v. TWA Airlines, LLC*, 349 F. Supp. 2d 495,

508 (E.D.N.Y. 2004).  That Plaintiff seeks to "vindicate the same rights" as are protected by the

duty of fair representation is made clear by the following excerpt of her unfair labor practice

charge currently pending before the FLRA:[11]

> This complaint seeks redress for the intentional failure of the
> National Association of Government Employees ("NAGE") to
> fulfill the duties and obligations it owes me under its own

---

[10] *See generally Vaca v. Sipes*, 386 U.S. 171, 180-83 (1967).

[11] This is not Plaintiff's first unfair labor practice charge; she has previously filed
"several" unfair labor practice charges against NAGE and the Local for other disputes arising out
of her arbitration.  *See* Amend. Compl. ¶ 20.

> Constitution and Bylaws, under federal labor and civil rights laws, and other applicable rules and laws. This failure stems from NAGE's attempts to retaliate and discriminate against me for testifying and engaging in other protected activities that reflected negatively on NAGE.

Ex. B; *supra* note 3. Plaintiff goes on to recite the same grievances against Jeffers and NAGE that form the factual basis of her Amended Complaint. *Id.* (Plaintiff filed a separate charge with the FLRA against the Local). In essence, Plaintiff's allegation in both the FLRA charge and her Complaint is that NAGE's failure to respond to her complaints about Jeffers's conduct violated NAGE's duty of care to represent her fairly and discriminated against her on the basis of her protected activity. Amend. Compl. ¶¶ 68-69.[12] Since Plaintiff's common-law claims "amount to nothing more than an allegation that [NAGE] breached [its] duty of fair representation . . . this Court lacks subject matter jurisdiction over" those claims." *Buesgens v. Coates*, 435 F. Supp. 2d 1, 4 (D.D.C. 2006).

## CONCLUSION

For the foregoing reasons, the Complaint against Defendants NAGE and President David Holway should be dismissed.

---

[12] The case law also makes clear that Plaintiff's state-law claims are *still* preempted by the duty of fair representation even if NAGE did not owe Plaintiff such a duty in the context of her grievance arbitration because NAGE had specifically declined any role in her case, which therefore placed it strictly within the purview of the Local. *See supra* at 11. (demonstrating that the Amended Complaint fails to allege sufficient facts to give rise to an inference that NAGE should be held liable for the acts of the local). "If the duty of fair representation is inapplicable, plaintiff[] cannot avoid that result by simply using state common law labels for [her] claims. Put another way, plaintiff[] cannot substitute for an inadequate duty of fair representation claim a state law claim arising out of the same facts and theories of obligation or 'mere refinements' of those theories." *Cooper*, 349 F. Supp. 2d at 508; *see also Bensel v. Allied Pilots Ass'n,* 387 F.3d 298, 322 (3d Cir. 2004).

Respectfully submitted,

_____/s/_____
W. Gary Kohlman (No. 177527)
Dora V. Chen (No. 485200)
BREDHOFF & KAISER, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C.  20005
Telephone:  (202) 842-2600
Fax:  (202) 842-1888

*Counsel for National Association of Government
Employees and Defendant David Holway*

Dated: July 23, 2007

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 23rd day of July, 2007, it filed Defendant's Motion to Dismiss, and supporting Memorandum and Proposed Order, through the Court's ECF system and served paper copies to the following parties via overnight mail:

Rhonda N. Baird
13615 Layhill Road
Silver Spring, MD 20906

Dwayne Jeffers
1200 K Street, NW
Washington, DC 20005

Richard Petta
1200 K Street, NW
Washington, DC 20005

_____/s/_____
Dora V. Chen

# Exhibit A

# NAGE Arbitration Policy

**Purpose:** To provide fair and equitable legal services to members and to establish a clear policy for arbitration requests.

1. Locals will file for arbitration if necessary to protect any contractual timeline.

2. Locals will submit the case to the NAGE Legal Staff for review.

3. Locals may be asked to request an arbitrator's list and submit the list to the Legal Staff for assistance in selecting an arbitrator.

4. An attorney will be assigned to review the case. Upon review, the assigned attorney will issue a letter of acceptance. Should the case be found to lack merit, the reviewing attorney will provide the Local President and the Grievant written notice of the deficiencies of the case.

5. The Local President and the Grievant, upon receipt of the deficiency notice, will be given a reasonable period of time to provide additional information and/or to discuss the case with the assigned attorney.

6. Should the case continue to lack merit, the case shall be forwarded to the Chief Counsel for review. The Local President and the Grievant will receive written notice explaining the decision not to process the case further. The notice will explain that the National will not be responsible for any costs associated with arbitration, nor will attorney services be provided.

7. The determination not to proceed with the case can be appealed to the National President in writing within seven (7) business days following the determination.

   (a) Such appeal shall set forth a complete narrative as to the facts in support of the Grievance, a copy of the Collective Bargaining Agreement, the decision of the Legal Department, and whatever documents are reasonably necessary for an understanding of the case.

   (b) The National President shall designate an Appeals Board consisting of one (1) National Vice-President and two (2) Executive Board members. The Appeals Board shall conduct whatever investigation they deem appropriate to render a decision.

8. The Local President and the Grievant will be provided with the decision of the Appeals Board.

9. The Local President and the Grievant may request final review by the National President.

10. This policy shall take effect December 16, 2002.

# Exhibit B

Form Exempt Under 44 U.S.C. 3512

| | FOR FLRA USE ONLY |
|---|---|

**UNITED STATES OF AMERICA**
**FEDERAL LABOR RELATIONS AUTHORITY**

**CHARGE AGAINST A LABOR ORGANIZATION**

Case No. _____

Date Filed _____

Complete instructions are on the back of this form.

**1. Charged Labor Organization**

Name: **NAGE**

Address: 159 Burgin Parkway
Quincy, MA 02169

Tel.#: (617) 376-0220     Ext.

Fax#: ( )

**2. Charging Party (Individual, Labor Organization, Activity, or Agency)**

Name: **RHONDA BAIRD**

Address: 13615 LAYHILL ROAD
SILVER SPRING

Tel.#: (301) 603-1641     Ext.

Fax#: ( )

**3. Charged Labor Organization Contact Information**

Name: **DAVID HOLWAY**

Title: **PRESIDENT**

Address: 159 Burgin Parkway
Quincy, MA 02169

Tel.#: ( )     Ext.

Fax#: ( )

**4. Charging Party Contact Information**

Name: SAME AS ABOVE

Title:

Address:

Tel.#: ( )     Ext.

Fax#: ( )

**5. Which subsection(s) of 5 U.S.C. 7116(b) and/or (c) do you believe have been violated? [See reverse]**   (1), (2), (3), (4), and (8)

**6. Tell exactly WHAT the labor organization did. Start with the DATE and LOCATION, state WHO was involved, including titles.**

This complaint seeks redress for the intentional failure of the National Association of Government Employees ("NAGE") to fulfill the duties and obligations it owes me under its own Constitution and Bylaws, under federal labor and civil rights laws, and other applicable rules and laws. This failure stems from NAGE's attempts to retaliate and discriminate against me for testifying and engaging in other protected activities that reflected negatively on NAGE.

Beginning in early 2005, I started complaining to NAGE about Mr. Jeffers' misconduct, a representative of the Local in an ongoing arbitration brought on my behalf (the "Arbitration"). Mr. Jeffers falsely referred to me as a "pathological liar" and "psychotic" in e-mails that included PBGC management officials; Mr. Jeffers even went so far as to accuse me of making "terrorist style" threats. Due to my concern that the breakdown of the relationship between these Local officers and myself could lead to misuse of the record in my Arbitration. In April 2005, I made a complaint to NAGE about the misconduct of Mr. Jeffers specifically. I asked NAGE repeatedly to help secure information in Mr. Jeffers' possession that was confidential and privacy protected because it was apparent there was a conflict of interest between myself and Mr. Jeffers. NAGE received complaints that made it aware that: (1) the Local had failed to fulfill its duty of fair representation to me and its failure had been, and continues to be, harmful to me and other Pension Benefit Guaranty Corporation ("PBGC") employees whose rights were unlawfully violated; (2) the Local was interfering, restraining, and coercing me with respect to my rights, including my right to proceed with an arbitration case; 3) the Local was attempting to cause the PBGC to further discriminate against me such as by publicizing false health information to PBGC; and (4) NAGE was aware that the Local was discriminating against me with respect to my union membership such as by failing and refusing to process my complaints and by failing to provide proper representation and financial support in my arbitration. Despite being aware of all this, NAGE failed and refused to investigate and/or take any other action to address the flagrant misconduct of the Local.

On November 21, 2005, this situation became dire when during a conference in the Arbitration, Mr. Jeffers informed the Arbitrator, with myself and the representatives of PBGC who were present, that he had provided large amounts of the record in the Arbitration to Mr. Perry. Though the subpoena Mr. Jeffers was responding to only sought information in the record related to Mr. Perry, Mr. Jeffers acknowledged producing protected personnel information on other PBGC employees and my medical information from the record. Despite the order of the Arbitrator that the medical and personnel information be retrieved and destroyed, Mr. Jeffers and Mr. Perry continued to conduct more violations of the Arbitrator's confidentiality order by again disseminating information from the record. NAGE was timely informed of the facts above and despite repeated attempts to get them to act, they have failed to do so. Therefore, I request that the FLRA promptly investigate this matter and issue an injunction against NAGE, as well as any and all other relief that could be granted.

**7. Have you or anyone else raised this matter in any other procedure?**   ✓ No     Yes     If yes, where: [see reverse] _____

**8. I DECLARE THAT I HAVE READ THIS CHARGE AND THAT THE STATEMENTS IN IT ARE TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF. I UNDERSTAND THAT MAKING WILLFULLY FALSE STATEMENTS CAN BE PUNISHED BY FINE AND IMPRISONMENT, 18 U.S.C. 1001. THIS CHARGE WAS SERVED ON THE PERSON IDENTIFIED IN BOX #3 BY [check "x" box]**   ☐ Fax   ☒ 1st Class Mail   ☐ In Person
☐ Commercial Delivery   ☐ Certified Mail

**Rhonda Baird**
Type or Print Your Name

_signature_
Your Signature

5/17/06
Date

# Exhibit C

OMB Control No. 3070-0003
Approved through 3/31/99



**UNITED STATES OF AMERICA**
**FEDERAL LABOR RELATIONS AUTHORITY**

**PETITION**

| FOR FLRA USE ONLY |
|---|
| Case No. *WA-RP-07-0053* |
| Date Filed *05-21-2007* |

See instructions on the back of this form. Attach additional sheets if needed, numbered according to the item to which they pertain. By signing the petition form, a labor organization/petitioner certifies it has submitted to the agency or activity and to the Department of Labor a roster of its officers and representatives, a copy of its constitution and by-laws, and a statement of its objectives.

1. Clear and concise statement of the purpose of the petition and the issues raised by the petition.

The National Association of Government Employees/SEIU Local 5000 ("NAGE") hereby disclaims any and all interest in the bargaining unit described in Block 2 below. NAGE requests the rescission of the certification issued on January 29, 1999, in FLRA Case No. WA-RP-80100.

| 2. Description of the unit(s): | 3 Approximate number of employees in the unit(s) affected by issues raised in the petition. |
|---|---|
| Included: All professional and nonprofessional employees employed by the Pension Benefit Guaranty Corporation, including employees serving on appointments of ninety days or more. | Currently 500 ☒<br>Proposed |
| Excluded: Management officials, supervisors, and employees described in 5 U.S.C. 7112(b)(2), (3), (4), (6) and (7). | 4 The petition is supported by:<br>☐ a showing of interest of not less than 30%<br>☐ evidence of membership of not less than 10% of the employees in the unit(s) involved in the petition. |

| 5. PETITIONER: NAME | AFFILIATION / DEPARTMENT | ADDRESS (Street and Number, City, State, and ZIP Code) | PHONE NO. |
|---|---|---|---|
| A. Petitioner NAGE/SEIU | | 159 Burgin Parkway, Quincy, MA 02169 | 617-376-0220 |
| B. Petitioner Contact Gina Lightfoot-Walker | | 601 North Fairfax Street, Suite 125, Alexandria, VA 22314 | 703-519-0300 |

| 6. AGENCY(IES), OTHER THAN PETITIONER, AFFECTED BY THE PETITION: NAME | DEPARTMENT | ADDRESS (Street and Number, City, State, and ZIP Code) | PHONE NO. |
|---|---|---|---|
| A. Activity/Agency Pension Benefit Guaranty Corp. | | 1200 K Street N.W., Washington, DC 20005-4026 | 202-326-4000 |
| B. Activity/Agency Contact Ruben Moreno | | 1200 K Street N.W., Washington, DC 20005-4026 | 202-326-4000 x3170 |

| 7. LABOR ORGANIZATION(S), OTHER THAN PETITIONER, AFFECTED BY THE PETITION: NAME | AFFILIATION | ADDRESS (Street and Number, City, State, and ZIP Code) | PHONE NO. |
|---|---|---|---|
| A. Labor Organization N/A | | | |
| B. Labor Organization Contact | | | |

| 8A. Date(s) of Recognition/Certification (Month, Day and Year) of any unit(s) affected by issues raised in the petition. | 8B. Expiration of Current Agreement(s) (Month, Day and Year) covering any unit(s) affected by issues raised in the petition. |
|---|---|
| January 29, 1999 | February 19, 2009 |

9. Name, title, address, and telephone number of person filing petition.

David J. Holway, National President, 159 Burgin Parkway, Quincy, MA 02169 (617) 376-0220

10. I DECLARE THAT I HAVE READ THIS PETITION AND THAT THE STATEMENTS IN IT ARE TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF. I UNDERSTAND THAT MAKING WILLFULLY FALSE STATEMENTS CAN BE PUNISHED BY FINE AND IMPRISONMENT, 18 U.S.C. 1001. THIS PETITION WAS SERVED ON ALL PARTIES KNOWN TO BE AFFECTED BY ISSUES RAISED IN THIS PETITION.

| David J. Holway | | 5/11/07 |
|---|---|---|
| Type or Print Your Name | Your Signature | Date |

# Exhibit D



**SEIU**

**NAGE**

National Association of Government Employees

AFFILIATED WITH THE SERVICE EMPLOYEES INTERNATIONAL UNION

TO:      All Local R3-77 Bargaining Unit Members

FROM:   David J. Holway, National President

DATE:    May 11, 2007

SUBJ:    NAGE's Decision to Waive Interest in PBGC Bargaining Unit

159 Burgin Parkway
Quincy, MA 02169

617.376.0220

This is to notify you that the National Association of Government Employees/SEIU has informed the Federal Labor Relations Authority and the Pension Benefit Guaranty Corporation that NAGE has waived all interest in the bargaining unit employed by PBGC.

On May 11, 2007, NAGE filed a representation petition requesting the rescission of the certification dated January 29, 1999, granting NAGE exclusive representation of the bargaining unit.

Our decision to waive interest in the bargaining unit truly saddens me but given the ongoing litigation and the cost thereof we had no other choice. The resources of any labor organization are not limitless and to continue our relationship with employees of PBGC would be unfair to our other members.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RHONDA N. BAIRD,                                   ) | |
|                                                    ) | |
| Plaintiff                                          ) | |
|                                                    ) | |
| v.                                                 ) | Case No. 1:06CV01985 (JDB) |
|                                                    ) | |
| DAVID HOLWAY, *et al.*,                             ) | |
|                                                    ) | |
| Defendants.                                        ) | |
| _____)               | |

## <u>ORDER</u>

The matter came before the Court on Defendants David Holway and National

Association of Government Employees' Motion to Dismsiss pursuant to Fed. R. Civ. P. 12(b)(6).

For good cause shown,

It is **ORDERED** that Defendants' Motion is **GRANTED**.

It is further **ORDERED** that Defendants David Holway and National Association of

Government Employees be **DISMISSED** from this action.

_____
John D. Bates
United States District Judge