RECEIVED
SEP - 6 2007
NANCY MAYER WHITTINGTON CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RHONDA N. BAIRD                           )
                                          )
      **Plaintiff,**                )
                                          )
      v.                            )     **Case No. 06-1985 (JDB)**
                                          )
DAVID HOLWAY, et al.                      )
                                          )
      **Defendants.**      .           )

## PLAINTIFF'S OPPOSITION TO DISMISSAL OF CLAIMS AGAINST DEFENDANTS DAVID HOLWAY AND NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES

### PRELIMINARY STATEMENT

Plaintiff Rhonda Baird opposes the dismissal of claims against Defendants National Association of Government Employees ("NAGE") and David Holway, President of NAGE (the "Defendants"). The instant action properly states claims against the Defendants for the egregious retaliatory actions in failing to even attempt to fulfill duties and responsibilities owed to the Plaintiff. The Defendants' failure is most clearly exhibited by their failure and refusal to even respond to repeated requests for assistance in redressing the publication and disclosure of confidential information. As more fully explained below, Plaintiff has pled sufficient facts to proceed to discovery of evidence to support her claims against the Defendants. The Court should, therefore, deny Defendants' Motion to Dismiss.

### FACTUAL BACKGROUND

Plaintiff is an employee of the Pension Benefit Guaranty Corporation ("PBGC"), a federal government agency. Am. Comp. ¶ 1.[1] She is a former Steward of NAGE Local R3-77 (the "Union"

---

[1] References to specific paragraphs in Plaintiff's Amended Complaint are denoted by "Am. Comp."

or "Local") and was elected as its president on April 2, 2007. *Id.* The Local, a unit of NAGE, operates within the framework of the Constitution and Bylaws of NAGE and is entrusted with the responsibility to represent the 500 bargaining unit employees of PBGC. Am. Comp. ¶ 2. Defendant David Holway is the President of NAGE, which is the exclusive representative of the 500 bargaining unit employees at PBGC. Am. Comp. ¶¶ 3, 4.

In April 2002, the Plaintiff testified on behalf of the Local in a contentious arbitration brought by the Local challenging the structure and operation of PBGC's Equal Employment Opportunity Program (the "EEO Structure Arbitration"); Plaintiff told NAGE she feared retaliation from her employer for her testimony. Am. Comp. ¶ 10. She was the only employee who had never filed an EEO complaint to testify on behalf of the Local, a fact noted by her employer, PBGC, in its post-hearing brief filed later in 2002. Am. Comp. ¶ 11. Later that year, the Plaintiff was accosted in her office by her acting supervisor, an act her employer refused to investigate. Am. Comp. ¶¶ 12, 13.

On February 20, 2003, the Local invoked arbitration to redress PBGC's handling of the incident (the "Plaintiff's Arbitration"). Am. Comp. ¶ 15. In an early 2003 meeting with NAGE President Holway, Plaintiff was outspoken about her opinion that NAGE was not providing the Local with the assistance it needed especially on EEO cases, and that NAGE was also responsible for the breakdown in the relationship between its organization and certain Local officials. Am. Comp. ¶ 17. NAGE President Holway was especially hostile to the Plaintiff after the meeting. Am. Comp. ¶ 17.

At the June 2003, meeting, Holway expressed concern for his ability to continue representing the Local. He said that NAGE would "walk away" if a majority of the members wanted it to, but he noted NAGE's departure would call the continuation of the contract into

question. Am. Comp. ¶ 18. He went on to state that everyone should try to make the relationship between NAGE and the Local work otherwise he would have to "figure out a way" to withdraw that would "protect[]" local members' rights. At that meeting, Holway also said that arbitrations should not be abandoned due to a lack of funds. After this meeting, strife within the Local increased dramatically. Am. Comp. ¶ 18.

Beginning in 2003, NAGE refused all assistance in the Plaintiff's Arbitration. Am. Comp. ¶ 16. NAGE's factual and legal bases for denying the Plaintiff's requests for assistance were so clearly unfounded that the Plaintiff doggedly followed each step of the process outlined by NAGE to appeal its denial of financial assistance for her arbitration. Am. Comp. ¶ 16. Among other facts, the Plaintiff repeatedly pointed out to NAGE the relationship between her testimony at the EEO Structure Arbitration in 2002 on behalf of NAGE and the Local, and PBGC's labor management officials' intentional retaliation against her. *Id.* NAGE continued denial of financial assistance at each step, resulted in the Plaintiff being forced to proceed with the arbitration at her own costs. *Id.*

In November 2003, NAGE President Holway imposed an emergency trusteeship on the Local, appointed a trustee of the Local ("NAGE Trustee") and ousted the Local's officers. Am. Comp. ¶ 19. Among the reasons expressed for the emergency trusteeship was Holway's stated concern for the fiduciary responsibility he owed to the union and to the members. *Id.* On December 9, 2003, the ousted Local officers initiated a legal action in this Court challenging the imposition of the trusteeship, among other things ("Trusteeship Action"). Am. Comp. ¶ 20. Plaintiff provided several declarations in the Trusteeship Action expressing her belief that NAGE unlawfully retaliated and discriminated against certain employees including her by failing and refusing to advance arbitration matters involving EEO claims. *Id.* Additionally, the Plaintiff filed several unfair labor practice charges ("ULP") with the Federal Labor Relations Authority (the

"FLRA"). *Id.* The only steward available to assist Plaintiff with her arbitration was appointed by the NAGE Trustee; additionally Plaintiff's ability to obtain official time was unusually restricted by the NAGE Trustee. Am. Comp. ¶ 21.

Beginning in the latter phases of the Plaintiff's Arbitration hearing, Jeffers and the Plaintiff disagreed about the handling of claims against PBGC with the Plaintiff strongly opposing Jeffers' disregard for adversely impacting employees through his conduct. Am. Comp. ¶ 23. Despite reports about Jeffers conduct and requests for the protection of confidential information in the Plaintiff's Arbitration files in early 2005, President Holway, NAGE, and the Local leadership all failed to take any action in response to complaints about Mr. Jeffers unprofessional conduct. Am. Comp. ¶ 25.

In late April 2005, PBGC was found liable for unlawful violation of Plaintiff's civil rights, among other violations, for retaliating against her because of her testimony on behalf of the Local and NAGE in the EEO Structure Arbitration. Am. Comp. ¶ 26. On November 21, 2005, Plaintiff learned that Local officer Jeffers released Plaintiff's medical records and personnel information relating to PBGC employees. Am. Comp. ¶ 27. On the same day, Plaintiff notified both the Local and NAGE about the conduct and filed complaints with Holway, NAGE, the Local and PBGC shortly thereafter. Am. Comp. ¶ 28. During the next several months, the Plaintiff unsuccessfully beseeched Holway, NAGE and the Local to take action to retrieve and redress the dissemination of the private information contained in the medical and personnel records. *Id.*

Despite its failure to correct the issues that lead to trusteeship, on February 2, 2005, NAGE returned the Local to self-governance while a lot of the internal rancor and strife still continued. Am. Comp. ¶ 24.

After personally experiencing the impact of the Local's dysfunction on herself and observing

4

the impact on others, Plaintiff became active in attempting to assist the Local by volunteering to serve as a steward because there were only three officials serving as stewards in addition to the elected officials of the Local (instead of the dozen allowed under the CBA). Am. Comp. ¶ 29. NAGE and NAGE officials remained very involved in the operation of the Local and was aware of the problems in the Local. *Id.*

For example, the Local failed to bring the CBA for ratification for over a year, it also failed to file DOL reports on time. *Id.* Often at Local meetings, there were very few attendees-- sometimes the Plaintiff would be the only non-Local officer to attend a meeting of the Local. *Id.* PBGC took advantage of the weakness in the Local's leadership by, among other things, negotiating in bad faith and eventually unilaterally implementing several directives including a new draconian table of penalties for use in disciplinary actions. *Id.* The internal strife and conflicts among Local officials began and escalated with NAGE copied on many of the emails but NAGE took no action to redress the myriad of problems existing in the Local. *Id.* Finally, in late 2006 and early 2007, the Plaintiff announced to the officers and NAGE that she would run for President of the Local to try to return it to some semblance of a representative organization. *Id.*

On April 2, 2007, the Plaintiff and the slate of candidates she supported swept into office by a vote of at least two-to-one, turning out the two incumbent officials on the ballot who were in contested races. Am. Comp. ¶ 30. Immediately after taking office, the Plaintiff, on behalf of the Local's new officers, communicated her goal of working with NAGE to "vigorously and competently" represent the bargaining unit's interests. *Id.* The Plaintiff also sought NAGE's assistance to train stewards and to help conduct basic training on the CBA. *Id.*

The new Local officials were experiencing great success in returning hope to the bargaining unit. *Id.* On April 12, 2007, at the first general meeting for all bargaining unit employees over 70

employees turned out for the meeting; NAGE official Susanne Pooler-Johnson attended. Am.
Comp. ¶ 31.  Shortly after the elections, the Local was able to recruit seven stewards, double the
number who served before the elections. *Id.* Membership in the Local continued to grow and the
atmosphere in the Local was positive and hopeful. *Id.*

Suddenly, on May 14, 2007, the Plaintiff received a letter from NAGE President Holway
informing her, and all other members of the PBGC bargaining unit, that NAGE decided to rescind
its status as the exclusive representative of the Local. Am. Comp. ¶ 32. The only reason stated is
the expense of "ongoing litigation." *Id.* The statement appears to refer to this pending litigation.
*Id.* All attempts to obtain assistance from NAGE explaining how this would affect the bargaining
unit have been unsuccessful. *Id.* NAGE's only written response to the Local stated that Holway
could not respond to Local questions on the advice of the attorneys in this action, Bredhoff &
Kaiser, P.L.L.C. *Id.*

The Local officers have learned that the CBA is in jeopardy and will be lost when NAGE's
withdrawal is final. *Id.* A NAGE official reportedly told Local members that NAGE intended to
"dump" pending arbitrations and grievances on the Local. *Id.* The Local officials continue diligent
efforts to protect the bargaining unit from the deleterious effects of NAGE's precipitous decision
along with bargaining unit employees who are also fighting to retain the workplace protections
contained in the CBA. *Id.* Over 150 signed letters to the FLRA, the agency responsible for ruling
on NAGE's petition to withdraw. *Id.* PBGC has been asked to maintain the CBA post-NAGE, but
has not indicated that it will. *Id.* On or about June 12, 2007, a PBGC official stated that cases
pending when NAGE withdraws might have to be moved to other forums. *Id.* As both PBGC and
NAGE know, the damages phase of the Plaintiff's Arbitration is currently underway with the
hearings held in mid-April 2007. NAGE's withdrawal at this time is going to be disruptive to

pending cases including the Plaintiff's Arbitration. *Id.*

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Standard of Review**

To survive a motion to dismiss, a plaintiff need only satisfy the simple requirements of

Federal Rules of Civil Procedure 8(a), which only requires a complaint to contain "'a short and

plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the. . .claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957));

*accord Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007)(*per curiam*). The "threshold

requirement" of the Federal Rules is that the 'plain statement' possess enough heft to 'sho[w] that

the pleader is entitled to relief.' *Bell Atl. Corp.*, 127 S. Ct. at 1965, 1966 (quoting Fed. R. Civ. P.

8(a)(2)).

"The liberal concepts of notice pleading embodied in the Federal Rules do not require the

pleading of legal theories," but instead require only the pleading of basic factual allegations.

*Empagran S.A. v. F. Hoffman LaRouche, Ltd.*, 388 F. 3d 337, 341 (D.C. Cir 2004); *accord*

*Hanson v. Hoffman*, 628 F. 2d 42, 53 (D.C. Cir. 1980); *Lemmons v. Georgetown Univ. Hosp.*, 241

F.R.D. 15, 28 (D.D.C. 2007). When the sufficiency of a complaint is challenged by a motion to

dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be

liberally construed in his or her favor. *Leatherman v. Tarrant County Narcotics & Coordination*

*Unit*, 507 U.S. 163, 164 (1993); *Phillips v. Bureau of Prisons*, 591 F. 2d 966, 968 (D.C. Cr. 1979);

*see also Erickson*, 127 S. Ct. at 2200 (*citing Bell Atl. Corp.*, 127 S. Ct. at 1965)).

The plaintiff must be given every favorable inference that may be drawn from the allegations

of fact. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir . 2000). A plaintiff is not required to plead facts supporting each and every element of her prima facie case. *Swierkiewicz v. Sorema N.A.*, 122 S. Ct. 992, 997 (2002). Rather, she need only plead enough facts to "give the [d]efendant fair notice of what [his] claim is and the grounds upon which it rests." *Id.* at 998. It is not fatal if at the initiation of a case some of the allegations may be legal conclusions rather than facts. *Id.* at 999.

## II. The Complaint Sufficiently States Title I Claims Against Defendants Holway and NAGE

Title I of the LMRDA is regarded as a "bill or rights for union members." *See Hammontree v. NLRB*, 925 F.2dd 1486, 1510 (D.C. Cir. 1991)(*en banc*). Union members who believe their Title I rights have been infringed upon, can "bring a civil action in a district court of the United States" for appropriate relief. 29 U.S.C. § 412. Plaintiff's Amended Complaint states sufficient facts to support the claim that she was retaliated against in violation of her Title I rights.

As stated in paragraph 34 of the Amended Complaint, 29 U.S.C. § 411(a)(1), every member of a labor organization has equal rights and privileges within such organization to nominate candidates, to vote in elections and referendums, to attend membership meetings and to participate in the deliberations and voting upon business in such meetings. In paragraph 35 of the Amended Complaint, 29 U.S.C. § 411(a)(2), every member of a labor organization has the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting. Paragraph 36 of the Amended Complaint stated that under 29 U.S.C. § 411(a)(4), no labor organization shall limit the right of any member to institute any action in court, or in a proceeding with an administrative agency, or the right of any member to appear as a witness in any judicial, administrative or legislative proceeding.

Am. Comp. ¶ 36.

President Holway has expressed his duty to bargaining unit employees at PBGC under oath. He has "a fiduciary responsibility to the union and to the members of the union," so when he received reports from Local members over a six-month period, he acted to address the concerns noting that "any further delay would really be against my fiduciary responsibility." *Johnson v. Holway*, 439 F. Supp. 2d 180, 214 (D.D.C. 2006). Holway acknowledged that he had "certain responsibilities" under NAGE's constitution and bylaws. *Id.* According to President Holway, NAGE "support[s] all its members and w[ould] continue to support the members of [the Local] in an appropriate capacity." *Id.*, at 196. In recognition of these duties, NAGE previously instituted disciplinary action against former officers of the Local. *Id.*, at 219, 221. The charges were initiated by Holway himself. *Id.*, at 219. Indeed, NAGE instituted an emergency trusteeship of the Local in response to complaints by bargaining unit members. *Id.*, at 213-215. Plaintiff repeatedly sought the assistance of Holway and NAGE to address and protect her interests. With no success. The factual statements in the Amended Complaint about NAGE and Holway's failure to act and hostility to the Plainitff when coupled with her outspoken statements against the Defendants has sufficient "heft" to move Plaintiff's Title I claims to discovery.

In April and May 2005, Plaintiff reported to NAGE that Jeffers began calling her names such as a "pathological liar" and "psychotic" in e-mails that included PBGC management officials. *See* Am. Comp. ¶ 25. NAGE also received reports that Jeffers stated in writing, that Plaintiff was guilty of making "terrorist style" threats to him, and also called her a "pornographer's friend." *Id.* Plaintiff not only reported the conduct, but also requested the protection of confidential information in the Plaintiff's Arbitration files. *Id.* President Holway, NAGE, and the Local leadership all failed to take any action in response to complaints about Mr. Jeffers unprofessional conduct. *Id.*

Six months later, on November 21, 2005, Plaintiff learned that Local officer Jeffers released Plaintiff's medical records and personnel information relating to PBGC employees. Am. Comp. ¶ 27. On the same day, Plaintiff notified both the Local and NAGE about the conduct and filed complaints with Holway, NAGE, the Local and PBGC shortly thereafter. Am. Comp. ¶ 28. During the next several months, the Plaintiff unsuccessfully beseeched Holway, NAGE and the Local to take action to retrieve and redress the dissemination of the private information contained in the medical and personnel records. *Id.*

NAGE and Holway deliberately failed to take action to protect the rights and interests of the Plaintiff particularly after she provided declarations for use in the Trusteeship Action, declarations that were not favorable to NAGE. Am. Comp. ¶ 37. At Local meetings and in writing (through ULPs and declarations in the Trusteeship Action), Plaintiff spoke out about NAGE's failure to support members struggling to address EEO claims against PBGC. *See* Am. Comp. ¶ 38. Plaintiff also doggedly pursued her arbitration and obtained a very favorable decision from the arbitrator that proved the facts of the situation NAGE worked to bury. *Id.* When the Plaintiff went to Holway and NAGE for any assistance at all, there was not only hostility to her and her requests, but most often Holway and NAGE would not even respond to the Plaintiff. Am. Comp. ¶ 39. The non-responsiveness includes their failure to address the egregious actions of Local officers who were involved in disseminating privacy-protected information from Local records. *Id.*

NAGE and Holway knew they maintained ultimate responsibility for the handling of the Plaintiff's Arbitration. During the Trusteeship Action, NAGE's Chief Counsel, Richard Barry, "noted the importance of [NAGE's] control over arbitrations since it is "the certified bargaining agent and has ultimate responsibility" for arbitrations. *Johnson v. Holway*, 439 F. Supp. 2d at 224, 225. According to Holway, "under the constitution and bylaws of [NAGE], I'm charged with

certain responsibilities." *Id.* at 214. To now maintain that this duty evaporated in Plaintiff's situation is contrary to the Defendants assertions under oath.

Not only did NAGE and Holway retaliate against Plaintiff in the mishandling of the situation involving her medical records, but they compounded their actions by pulling the rug out from under Plaintiff when NAGE decided to withdraw its representation without even trying to protect the collective bargaining agreement and pending cases including Plaintiff's arbitration. *See* Am. Comp. ¶ 40. This claim is based on the improper motivations of Holway and NAGE to retaliate against the Plaintiff in the manner in which it instituted and explained the decision to withdraw as the exclusive representative of the bargaining unit at PBGC.

Just a year ago, Holway expressed concern that if NAGE were to withdraw, he would have to "figure out a way" to do so that would "protect[]" local members' rights. *Johnson*, at 439 F.Supp.2d at 201 (Holway also noted that withdrawal would call into question whether the contract would continue, a fact he apparently raised while discussing outstanding arbitrations). Withdrawing while alluding that Plaintiff's claims in this case is the cause for the decision to withdraw is calculated to seriously damage Plaintiff's reputation and create hostility towards her in her workplace. *See* Am. Comp. ¶ 32; Exhibit D to Defendants' Motion to Dismiss. Defendants knew exactly what they were doing in the paperwork they sent to all bargaining unit employees. Thus, NAGE and Holway's actions in the withdrawal are sufficient to support a claim that these Defendants engaged in additional retaliatory actions against the Plaintiff in violation of her Title I rights.

NAGE as the exclusive bargaining unit representative should "serve all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 74-

77 (1991). The actions and inactions of Holway and NAGE in response to well founded complaints filed by the Plaintiff were taken to punish her for expressing her opinion in the Trusteeship Action, in ULP charges, and even for instituting the instant action. The Amended Complaint seeks to redress the failure of NAGE and Holway to act to protect the interests of the Plaintiff when they had an obligation to do so as the Plaintiff's exclusive bargaining unit representative. Plaintiff has sustainable Title I claims against Defendants NAGE and Holway. The facts stated in the Amended Complaint are sufficient to move this case forward to discovery where Plaintiff will be able to obtain evidence to prove that Holway and NAGE unlawfully violated Plaintiff's rights under 29 U.S.C. §§ 411(a)(1), (2) and (4).

## III.   STATE CLAIMS AGAINST NAGE AND HOLWAY ARE NOT PREEMPTED

Contrary to Defendants NAGE and Holway's arguments, the state law claims in this case are not preempted. State law claims are not preempted when the claims involve rights and obligations that exist independent of the collective bargaining agreement. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994). Moreover, this District Court considered and ruled on the merits of a state law claim against Holway in the Trusteeship Action. *See Johnson v. Holway*, Civ. No. 03-2513, 2005 VL 3307296 (D.D.C. Dec. 6, 2005).

In this action, state law provides independent rights for the state law based claims made against Defendants-- the D.C. Mental Health Information Act. Plaintiff has rights that flow from this law that co-exist with her rights under the LMRDA. Thus, her state law claims have an independent basis and are not preempted. NAGE as the exclusive bargaining representative has the responsibility for complying with this act. The state law claims raised in Plaintiff's Amended Complaint also state sufficient facts to allow them to proceed to discovery.

NAGE argues from law that addresses the responsibilities of international unions. Motion

to Dismiss, p. 11. NAGE is not an international union. It is itself a local of the Service Employees International Union ("SEIU"). *Johnson*, 439 F. Supp. 2d at 186. Indeed, NAGE is the "exclusive representative" of PBGC bargaining unit employees. Am. Comp. ¶ 64. Thus, NAGE and Holway's responsibilities flow directly from the status as the exclusive representative of PBGC bargaining unit employees, a status that is statutory and not contractual. *See* Exhibit C to Defendants' Motion to Dismiss (NAGE's petition to the Federal Labor Relations Authority to disclaim its status as the exclusive representative of PBGC bargaining unit employees).

Holway and NAGE calculatedly failed to act to protect the private confidential information in the Local's possession despite months of requests from the Plaintiff that the information be protected. Am. Comp. ¶ 64. What is particularly egregious in this action is the fact that the actions of NAGE and its officers, including officers of the Local, compounded PBGC's misuse and mischaracterization of the Plaintiff's medical conditoin. *See* Am. Comp. ¶ 22.

NAGE and the Local were aware that the information PBGC placed in the Plaintiff's Arbitration was a misdiagnosis made when Plaintiff sought psychiatric treatment for the first time in her life to deal with the struggles she experienced after the violent behavior towards her by a PBGC manager and PBGC's failure to address the behavior. *Id.* Indeed, NAGE was aware of PBGC's spurious and unfounded arguments based on the misdiagnosis (the Local was in trusteeship and under direct NAGE administration at the time the arbitration hearings were held). *See Id.* Yet, by its actions and inactions, NAGE and Holway compounded PBGC retaliatory acts against Plaintiff by smearing her reputation and not acting to stop or redress the dissemination of incorrect medical information. PBGC's labor management officials were found liable for unlawfully retaliating against the Plaintiff in violation of her civil rights. *See* Am. Comp. ¶ 26. PBGC was not successful in its attempts to win at all costs by disparaging and mischaracterizing the Plaintiff's condition during the

13

Plaintiff's Arbitration. NAGE and Holway likewise should not succeed in their unlawful retaliatory conduct towards the Plaintiff. Through this action, Plaintiff seeks an opportunity to prosecute claims against the Defendants for their conduct.

## CONCLUSION

For the foregoing reasons, Defendants Motion to Dismiss should be denied. There are sufficient facts in the complaint to allow this case to proceed to discovery and a trial.

Respectfully Submitted:

Date: 9/6/07

Rhonda Baird, Pro Se
Plaintiff
13615 Layhill Road
Silver Spring, Maryland 20906
(301) 603-1641
rnbaird64@aol.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 6th day of September 2007, she filed an Opposition to

Defendant NAGE and Holway Motion to Dismiss and served paper copies to the following persons

via first class mail:

W. Gray Kohlman, Esq.
Dora V. Chen, Esq.
Bredhoff & Kaiser, P.L.L.C.
805 15th street, N.W.
Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
Fax: (202) 842-1888
Counsel for David Holway and National Association of Government Employees

Richard Petta
NAGE Local R3-77
1200 K Street, NW
Washington D.C. 20005

Dwayne Jeffers
NAGE Local R3-77
1200 K Street, NW
Washington D.C. 20005

_____
Rhonda Baird