## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RHONDA N. BAIRD, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 1:06CV01985 (JDB) |
| | ) | |
| DAVID HOLWAY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

### REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
### PLAINTIFF'S AMENDED COMPLAINT

As set out in Defendants' Motion to Dismiss, although Plaintiff's Amended Complaint alleges numerous claims against NAGE and NAGE's President, David Holway, the factual allegations made in support of those claims are legally insufficient to state a claim against either NAGE or Holway on any theory. Plaintiff's opposition brief, which contains almost no citation to legal authorities supporting her legal assertions, cannot rescue her Amended Complaint ("Complaint"). To the contrary, as this Reply discusses in more detail below, Plaintiff's opposition brief confirms that the allegations in the Complaint are insufficient to state a claim against Defendants NAGE and Holway under Title I of the Labor-Management Reporting and Disclosure Act ("LMRDA"), under 29 U.S.C. § 501, which imposes a fiduciary duty on union officers, and under the various state law tort claims alleged by Plaintiff.

### I.  Plaintiff Has Not Stated a Claim Under Title I of the LMRDA

As set forth in Defendants' Motion to Dismiss, Plaintiff's Complaint can be read to allege two separate basis for her claim under Title I of the LMRDA. The Complaint alleges that

Defendants retaliated against Plaintiff on account of her protected activity (a) by failing to remedy the disclosure of her private medical information by certain officers of Local R3-77 ("the Local") and (b) by filing a petition with the Federal Labor Relations Authority ("FLRA") seeking to rescind its certification as the bargaining representative of the Local. Neither allegation, however, states a claim under Title I.

> **A.    Defendants' alleged failure to remedy the disclosure of Plaintiff's medical information does not state a claim under Title I.**

In her opposition, Plaintiff does not dispute the legal standards set forth in Defendants' Motion to Dismiss. Under these standards, to state a Title I retaliation claim, Plaintiff must allege not only protected activity, but also facts that would support a conclusion, or at least "raise a reasonable expectation that discovery will reveal evidence" that she was subjected to retaliatory action and that the retaliatory action was "a direct result of [her] decision to express disagreement with the union's leadership." Mot. Dismiss at 8 (citing cases); *see also Bell Atl. Corp v. Twombly,* 127 S. Ct. 1955, 1965 (2007) (holding that the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level"); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint"). Thus, it is not enough for Plaintiff to allege that Defendants failed to act on her complaints about Jeffers or his release of her medical information; rather, Plaintiff must allege facts suggesting that Defendants' failure to act was motivated by her protected activity. Put another way, Plaintiff must allege facts that would support an inference of causation between the protected conduct and the retaliatory action. *Johnson v. Holway*, 439 F. Supp. 2d 180, 228 (D.D.C. 2006) (causation "cannot be satisfied by the unsupported contention that plaintiff's 'vociferous criticism necessarily would have created animus' and as a result, retaliation").

As set out in the Motion to Dismiss, the Complaint is devoid of any factual allegation supporting a reasonable inference that Defendants' inaction was attributable to retaliation, rather than an entirely permissible motivation. The Complaint contains no allegations establishing either an obligation or a practice for Defendants to intervene in any dispute between a local union member and the local's officers. Mot. Dismiss at 9-10. Moreover, Defendants' decision to disclaim any responsibility or involvement in Plaintiff's arbitration was made well *before* Plaintiff's alleged protected activity occurred. *See* Compl. ¶ 16 (NAGE declined to provide financial or legal assistance for Plaintiff's arbitration in 2003); 439 F. Supp. 2d at 215 (trusteeship hearings began in November 2003 and concluded in July 2004); Compl. ¶ 25 (Plaintiff complained about Jeffers's conduct in April and May of 2005); Compl. ¶ 28 (Plaintiff complained about release of medical information in November of 2005); Compl. ¶ 30 (Plaintiff elected president of the Local in 2007). Thus, there are no facts that would support an inference that Defendants' inaction in this case was motivated by retaliatory animus.

Although Plaintiff does not deny that her Complaint is devoid of such factual allegations, she does make two arguments in response. First, Plaintiff argues that Defendants had a fiduciary duty to support local union members and that Defendants have acted on that duty in the past. Opp. at 9. Second, Plaintiff argues that Defendants "maintained ultimate responsibility for the handling of the Plaintiff's arbitration," such that they were obligated to intervene in the disputes arising from the handling of that arbitration. Opp. at 10. Neither argument, however, permits an inference that Defendants' were impermissibly motivated.

1.     While Defendant Holway has a fiduciary duty to NAGE and its members under 29 U.S.C. § 501(a), that duty does not equate to a duty to intervene in disputes among members of a local union arising out of an arbitration that NAGE has expressly disclaimed any

responsibility for or involvement in handling. *See also infra* at 9 (noting that Holway's fiduciary duty under § 501 runs only to NAGE, not the Local). Indeed, not only does Plaintiff cite no authority suggesting otherwise, but she does not dispute that the Complaint lacks any allegation that NAGE has either a practice or policy of intervening in disputes between local union members. Mot. Dismiss at 9-10. This is significant because in the absence of any such allegation, Plaintiff has not alleged facts from which one could infer that Defendants' inaction vis-à-vis Plaintiff's issues with Jeffers and Petta was the result of retaliatory motive, as opposed to simply Defendants' standard policy or practice.

While it is true that Holway felt he had a responsibility to impose a trusteeship over the Local in 2003, that is not, as Plaintiff suggests, Opp. at 9, the same as a duty to intervene in Plaintiff's dispute with the Local's officials regarding her arbitration. To be sure, NAGE takes seriously allegations that a local union's officers are financially mismanaging the local or suppressing dissent among the membership. For that reason, NAGE's constitution gives the president the power to impose a trusteeship over a local union under certain circumstances. *See* 439 F. Supp. 2d at 213-14 (noting that NAGE's Constitution provides for imposition of a trusteeship when enumerated conditions are met); *see also* Opp. at 10-11 (quoting Holway as testifying that "under the constitution and bylaws of [NAGE], I'm charged with certain responsibilities"). Absent that delegation of authority in NAGE's Constitution, however, there would be no basis for imposing a trusteeship over a local union as NAGE and its locals are legally separate entities.[1]

---

[1] While Holway referred to his responsibility to impose a trusteeship over the Local as a "fiduciary duty," there is no indication that he was referring to a duty under 29 U.S.C. § 501. Moreover, even if Holway believed the trusteeship was necessary under section 501, his opinion does not make it so as a matter of law. *See infra* at 9-10 (arguing that fiduciary duties under 501 do not extend to intervening in local union matters).

Furthermore, Plaintiff's attempt to draw an analogy between the circumstances necessitating the trusteeship over the Local in 2003 and Defendants NAGE and Holway's failure to intervene in Plaintiff's dispute regarding her arbitration fails. In contrast to Plaintiff's allegations here, Holway's decision to impose a trusteeship over the Local was not simply the result of complaints from members of the Local (which is what Plaintiff is alleging Defendants should have responded to here). Rather, it was imposed only after an extensive investigation by an independent monitor appointed by Holway. 439 F. Supp. 2d at 208-12. In addition, it was necessitated by evidence of the Local's financial mismanagement and insolvency, *id.* at 214, 205, 211 n.22, attempts by the then-Local president to obstruct NAGE officials investigating the situation, *id.* at 212, 211 n.23, and systematic suppression of dissent by the Local's officers, *id.* at 212. *See also* Compl. ¶¶ 19, 24. In contrast, Plaintiff alleges that Jeffers called her derogatory names to management and improperly released her medical records in response to a subpoena, Compl. ¶¶ 25, 27-28. There is an obvious difference between allegations that a local's officers are engaging in financial mismanagement, have rendered the local insolvent, and are suppressing dissent within the union—allegations which implicate the rights of every member of the bargaining unit and raise questions regarding the local's continued ability to exist—and allegations that a single officer is name-calling and improperly releasing records in connection with an arbitration that Defendants expressly disclaimed any interest or responsibility for— allegations which implicate the rights of a single member. In light of this difference, the fact that Defendants imposed a trusteeship on the Local cannot give rise to an inference that Defendants' failure to act on Plaintiff's complaints was retaliatory.

     **2.**      Plaintiff is also incorrect in suggesting that Defendants had an obligation to assist in Plaintiff's arbitration (and presumably to assist with the disagreements arising out of that

arbitration), such that their failure gives rise to an inference of retaliation.  Opp. at 10.  Although this argument is not supported by any factual allegations in her Complaint, in her opposition, Plaintiff cites to the testimony of NAGE's Chief Counsel, Richard Barry, in *Johnson v. Holway*, where Barry "noted the importance of [NAGE's] control over arbitrations since it is 'the certified bargaining agent and has ultimate responsibility' for arbitrations."  Opp. at 10.  Barry, however, was responding to a question regarding why, as a matter of policy, NAGE wanted to have some say in whether a Local proceeded with an arbitration.  *Johnson v. Holway,* C.A. No. 03-2513 (ESH), Trial Tr. at 1245-1246 (Vol. 5).  There is no indication that Barry was suggesting that NAGE had control over arbitrations that it had elected not to pursue but that the Local continued with anyway.  Indeed, the court in *Johnson v. Holway* used this quote to rebut the claim by the plaintiffs there that NAGE was obligated to finance *any and every* arbitration the Local chose to proceed with regardless of its merits.  429 F. Supp. 2d at 224.  There is an obvious difference between NAGE's obligation toward arbitrations that it funds and provides legal representation for and those arbitrations that it does not, especially where the local union is electing to pursue the arbitration on its own.  Statements regarding NAGE's interest in the former categories of arbitrations are not admissions regarding its obligations in the latter, particularly where the Complaint contains no factual allegations supporting such an obligation.

Moreover, Plaintiff herself alleges that NAGE did not retain any responsibility for her arbitration.  In her Complaint, Plaintiff alleges that "[b]eginning in 2003, NAGE refused all assistance in the Baird Arbitration," and that "NAGE continued to deny financial assistance at each step" of NAGE's arbitration policy.  Compl. ¶ 16.  Furthermore, in *Johnson v. Holway*, which details the facts surrounding the Plaintiff's arbitration, the court found that after NAGE denied funding for Plaintiff's arbitration, Plaintiff "signed an agreement where by the [Local's]

Executive Committee authorized her personal attorney to conduct the arbitration on her behalf," 439 F. Supp. 2d at 207, and that even after this agreement was signed, the Local's officer continued to exercise control over the scheduling of Plaintiff's arbitration and over which other local members would be assigned to assist her, *id.* at 208. Thus, it cannot be disputed that it was Plaintiff's choice to proceed with her arbitration without the support or involvement of NAGE and that choice relieves Defendants of any obligation to involve itself in her arbitration or any disagreements resulting from that arbitration. Especially given that Plaintiff filed a duty of fair representation claim against the then-President of the Local, not NAGE, regarding the handling of her arbitration, *id.* at 208, Plaintiff cannot deny that she understood the Local, not NAGE, to be responsible for her arbitration.

Accordingly, there are no facts from which one could infer that Defendant's failure to respond to the disputes and disagreements Plaintiff had with officers of the Local regarding her arbitration was retaliatory.

**B.    This Court lacks jurisdiction over Plaintiff's claim to the extent it arises out of NAGE's petition to rescind its status as the Local's bargaining representative.**

Plaintiff also alleges that Defendants filed a petition with the FLRA seeking to rescind its status as the bargaining representative of Local R3-77 in retaliation for Plaintiff's protected conduct in violation of Title I. As set forth in the Motion to Dismiss, Congress created an exclusive statutory scheme under the Civil Service Reform Act ("CSRA"), 5 U.S.C. §§ 7101-7135, for resolving issues related to a public-sector union's representation of its members. Specifically, the Act provides that a petition with the FLRA may be filed "by any person seeking clarification of … a matter relating to representation," 5 U.S.C. § 7111(b)(2), which would certainly include complaints arising out of a union's decision to cease serving as a local's

exclusive bargaining representative.  Indeed, in the analogous case law addressing unfair labor practice claims brought against private-section unions,[2] it is clear that where a union member alleges that a union's representation decision was made in retaliation for the member's exercise of his free speech rights, that complaint is within the exclusive jurisdiction of the National Labor Relations Board.  *See, e.g., Dycus v. NLRB*, 615 F.2d 820 (9th Cir. 1980), *enforcing sub nom. Teamsters Local 42 (Grinnell Fire Prot.)*, 235 N.L.R.B. 1168 (1978) (affirming Board's finding that bargaining unit's transfer from one local to another was for legitimate reasons, and was not intended to prevent the employee, a member of the first local, from running for local office and to suppress his dissident activities).

In her opposition, Plaintiff does not dispute that the FLRA "possesses exclusive jurisdiction over federal labor relations matters," or that labor relations matters clearly includes a union's obligation to continue to represent a bargaining unit.  Mot. Dismiss at 14-15. Accordingly, for the reasons discussed above, this Court lacks jurisdiction to resolve any issue arising out of NAGE's petition to rescind its certification as the bargaining representative of the Local, which includes Plaintiff's claim that NAGE's decision to rescind its certification was impermissibly motivated under Title I of the LMRDA.

## II.     Plaintiff Cannot State A Claim for Breach of Fiduciary Duty

Plaintiff's Complaint also alleges a cause of action arising under 29 U.S.C. § 501(a), which provides that officers of a labor organization have a fiduciary duty to such organization

---

[2] *See Columbia Power Trades Council v. United States Dep't of Energy,* 671 F.2d 325, 326 (9th Cir. 1982) ("There can be no doubt after examining the legislative history that Congress intended the [Civil Service Reform] Act to fill the identical role in the public sector that the NLRA performs in the private sector…. The unfair practices section of the [Civil Service Reform] Act, 5 U.S.C. s 7116, is the same in substance as s 158 [of the National Labor Relations Act], so these statements of Congressional intent indicate the [Civil Service Reform] Act should be interpreted in a manner consistent with that given the NLRA and exclusive jurisdiction should be found." (internal citations omitted)).

and to its members, as the result of the dissemination of Plaintiff's medical records. Compl. ¶¶ 44-49. Plaintiff's claim, as set out in her Complaint, is not that Defendant Holway improperly disseminated her medical records or that Holway was even initially responsible to recover her medical records; rather, Plaintiff's theory is that Defendant Holway had a fiduciary duty to act when the Local's officers failed to retrieve her records and to punish the officials who failed to recover her records. *See, e.g.,* Compl. ¶ 48 ("Holway, NAGE, and Petta likewise violated their fiduciary duty … by not taking action to secure and/or retrieve the documents and to punish Jeffers."). Thus, Plaintiff would put Defendants NAGE and Holway in the same place as the Local, and its officer, Jeffers, who actually committed the alleged misconduct.[3]

As Defendants pointed out in their Motion to Dismiss, however, the problem with Plaintiff's claim is that she does not allege the "property" at issue—her medical records—was property belonging to NAGE; rather, the records belonged to the Local and were in the custody and control of the Local. Mot. Dismiss. at 3-4, 9, 14 n.7. As such, Holway, as an officer of NAGE and not of the local union, had no fiduciary duty to recover that property and did not breach any such duty by failing to act on Plaintiff's complaints. *See* 29 U.S.C. § 501(a) ("The officers … of a labor organization occupy positions of trust…. It is, therefore, the duty of each such person, … to hold its money and property solely for the benefit of the organization…."); *see also Operative Plasterers & Cement Masons Int'l Ass'n of U.S. and Canada v. Benjamin*, 843 F. Supp. 1267, 1274 (N.D. Ind. 1993) (holding that officer of local did not occupy a position of trust with the international, because "[t]he statute's plain language suggests an officer occupies a position of trust as to the organization he represents as an officer.").

---

[3] Plaintiff's fiduciary breach claim could only lie against Holway, in his official capacity, not NAGE itself. *Saunders v. Hankerson,* 312 F. Supp. 2d 46, 58 (D.D.C. 2004).

Moreover, for the reasons outlined in the section of Defendant's Motion to Dismiss addressing agency principles, Holway cannot be held responsible under section 501 for the failings of the Local's officials absent any allegation, of which there are none in the Complaint, that Holway authorized, ratified, or approved the Local's actions.  Mot. Dismiss at 11-14; *see also Saunders v. Hankerson*, 312 F. Supp. 2d 46, 59 (D.D.C. 2004) ("In the face of Congress' clear statement of the limits of an international union's legal responsibility for the acts of one of its local unions, it would be anomalous to hold that an international is nonetheless liable [under section 501] for its failure to take certain steps in response to actions of the local.  Such a rule would pierce the shield that Congress took such care to construct."); *infra* at 11-14 (citing cases).[4]  Because there are no such allegations, and because Plaintiff does not even dispute Defendants' argument that there can be no fiduciary breach claim here as the property at issue belonged to the Local,[5] Plaintiff's fiduciary breach claim should be dismissed for failure to state a claim.

---

[4] Indeed, had Plaintiff intended to allege that her medical records were properly considered the property of NAGE or that Holway had an independent duty to recover that property, Plaintiff was required to satisfy the jurisdictional requirement of demanding that NAGE, or its Executive Committee, bring legal action to obtain appropriate relief as a result of *Holway's* alleged failure. 29 U.S.C. § 501(b); *see also Saunders,* 312 F. Supp. 2d at 60 (discussing jurisdictional requirement of demanding that union or its governing officers bring legal action to obtain relief). Instead, Plaintiff's Complaint alleges only that she demanded Holway take action to obtain relief as a result of the Local's failures.  Compl. ¶ 47.  Thus, while Plaintiff may have satisfied the prerequisite to a lawsuit against the Local union officials, she has not satisfied the requirements as against Holway.  Nor is there any indication that Plaintiff satisfied the jurisdictional requirement of obtaining leave from the Court before filing a complaint pursuant to section 501(b).  312 F. Supp. 2d at 58 ("Before an action may be brought pursuant to Section 501(b), a plaintiff must… obtain leave of the court to bring an action with a showing of good cause…").

[5] To the extent Plaintiff argues that NAGE was liable for the Local's wrongdoing because it was the bargaining representative or because NAGE officials had a fiduciary responsibility to impose a trusteeship, those arguments are addressed *infra* at 13-14 and *supra* at 4.

### III.    Plaintiff Cannot State A Claim Under A "Respondeat Superior" Theory of Liability

Plaintiff's Complaint alleges a "Respondeat Superior" cause of action (Count VII) that seeks to hold NAGE liable "for the conduct or misconduct of officers of the Local." Compl. ¶ 72. A necessary precursor for any such claim against NAGE is a viable claim against the Local or its officers. *See, e.g., Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1430 (D.C. Cir. 1988) (holding that for national union to be liable for actions of local affiliate, the national union must authorize, ratify, or approve local's actions "*which are sufficient to establish a claim ... against the local*" (emphasis added)). The only causes of action in Plaintiff's Complaint against the Local, acting through its officers, however, are the fiduciary breach claim, for which Holway is not liable for the reasons discussed *supra,* and various state law tort claims, which, as discussed *infra,* are preempted by federal law.

Assuming *arguendo* that Plaintiff had alleged a viable claim against the Local, however, Plaintiff's Complaint does not allege facts sufficient to establish NAGE's liability. As set forth in Defendants' Motion to Dismiss, a national union, or its officers, are not held liable for the actions of its local affiliates absent facts establishing the existence of an agency relationship, *i.e.*, that the national union, "with knowledge of the surrounding circumstances, ... authorizes, ratifies, or approves a local's actions." *Berger*, 843 F.2d at 1430; *see also* Mot. Dismiss at 11-12. This is significant because absent allegations of affirmative acts undertaken by NAGE to authorize, ratify, or approve the local's actions, "the International's decision to take no action notwithstanding the complaints ... is insufficient as a matter of law" to establish liability. *Brenner v. Carpenters Local 514*, 927 F.2d 1283, 1290 (3d Cir. 1991). "An international union has no independent duty to intervene in the affairs of its local chapters, even where the international has knowledge of the local's unlawful acts." *Phelan v. Local 305*, 973 F.2d 1050,

1061 (2d Cir. 1992); *see also Rodonich v. House Wreckers Union Local 95*, 817 F.2d 967, 974

(2d Cir. 1987) (holding that international union was not liable for affiliated local union's act of

unlawfully disciplining a union member, where the international union, in an internal appeals

proceeding brought by the aggrieved member, affirmed the local union's discipline decision);

*Shimman v. Frank*, 625 F.2d 80, 99 (6th Cir. 1980) (refusing to impose on international unions

"a duty to oversee and correct … abuses" at the local union level; "[o]therwise, [i]nternational

[u]nions could be destroyed by liability findings based on a hindsight analysis of what they

should have done").  Indeed, at least with respect to state-law claims, the Norris-LaGuardia Act

makes it especially clear that a labor organization or its officers will only be held vicariously

liable for the unlawful acts of other officers or members where there is "clear proof of actual

participation in, or actual authorization of, such acts, or of ratification … after actual knowledge

thereof."  29 U.S.C. § 106; *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 736-37 (1966)

("The driving force behind § 6 . . . was the fear that unions might be destroyed if they could be

held liable for damage done by acts beyond their practical control."); *id.* at 737 ("Plainly, § 6

applies to federal court adjudications of state tort claims arising out of labor disputes . . . .").

      In this case, Plaintiff alleges no facts indicating that NAGE authorized, ratified, or

approved any alleged misconduct by Petta or Jeffers.  Although Plaintiff does not deny that her

Complaint alleges no such acts, she does argue that the agency case law cited in Defendants'

motion is inapposite because NAGE is not an International union and because NAGE was the

certified bargaining representative of the Local.  Opp. at 12-13.  Neither argument is availing.

      **1.**    Plaintiff asserts that agency principles are not applicable in this case because

NAGE is not an "international" union.  Opp. at 12.  Plaintiff, however, cites no authority, as

there is none, for her assertion that different principles should apply to a national union's liability

for the acts of a local than apply to an international union's liability for the acts of a local.[6]

Indeed, although NAGE is not itself an "international" union, it is a national labor organization

with some 42,000 members and, more importantly, is the parent union of Local R3-77.  *Johnson*

*v. Holway*, 439 F. Supp. 2d 180, 186 (D.D.C. 2006).  As the parent entity, NAGE stands in the

same place vis-à-vis the Local as an International union would to its local affiliates.  Most

notably, NAGE and the Local are separate legal entities, with separate capacities, for example, to

sue and be sued.  *See, e.g.,* Complaint (Plaintiff, on behalf of the Local, suing NAGE).  Indeed,

as Plaintiff's Complaint acknowledges, Local R3-77 elects its own union officers, Compl. ¶ 30,

invokes arbitration on its own behalf, Compl. ¶ 15, and files its own financial reports with the

Department of Labor, Compl. ¶ 29.[7]  Because the Local and NAGE are separate legal entities

and Plaintiff has not alleged any facts suggesting that NAGE controlled the Local during the

relevant time-period—*i.e.*, after Jeffers and Petta became elected officials of the Local, which by

definition occurred after the trusteeship concluded, Compl. ¶ 24—Plaintiff has not alleged the

facts that would be necessary to hold NAGE liable for the acts of the Local or its officers.

    **2**.    Nor does the fact that NAGE was the certified bargaining representative change

the analysis.  NAGE's status as the bargaining representative does not change basic agency

principles.  The only relevancy of bargaining representative status is where an individual is

bringing a claim alleging a breach of the duty of fair representation, which, by definition, must

---

[6] It is not surprising that Plaintiff cites no such authority given that, for example, under the
Norris-LaGuardia Act a labor organization or its officers will only be liable for the acts of
another officer or member of the *same* organization where there is "clear evidence" of
participation, authorization, or ratification.  29 U.S.C. § 106.

[7] The relationship between NAGE and the Local is further detailed in *Johnson v. Holway*, 439 F.
Supp. 2d 180, an opinion relied upon by both parties.  *See, e.g.*, 439 F. Supp. 2d at 185 (detailing
Local's by-laws, which were drafted by local officers and approved by NAGE); *id.* at 186
(Local's Executive Committee has authority to decide whether to pursue a grievance to
arbitration and Local's Treasurer maintains the local's own financial records).

be brought against the certified bargaining representative—although such claims must be brought before the FLRA under the CSRA.

Here, because NAGE and the Local are separate legal entities, it is clear that "an agency relationship cannot simply be presumed rather than proved … 'what should matter is not so much the International's theoretical control over the local as the nature and extent of actual control.'" *Berger*, 843 F.3d at 1431 (internal citations omitted). Accordingly, what is relevant here is the actual control NAGE had over the decisions of the local's officers. Not only does Plaintiff's Complaint contain no factual allegations suggesting that NAGE controlled Jeffers or Petta's handling of Plaintiff's arbitration, but even Plaintiff acknowledges that NAGE disclaimed all responsibility for Plaintiff's arbitration and that the arbitration was handled exclusively by Plaintiff and the Local. Compl. ¶ 16; *see also supra* at 6-7. Accordingly, because there is no factual basis from which one could infer that NAGE either had actual control over the alleged misconduct by Petta and Jeffers or that NAGE authorized, ratified, or approved of that misconduct, Plaintiff has failed to allege facts necessary to hold Defendants NAGE or Holway liable for the Local's alleged illegal acts.

## IV. Plaintiff's State Law Claims Are Preempted by Federal Law

Plaintiff's Complaint alleges five state law tort claims—specifically, a claim under the D.C. Mental Health Information Act (Count III) and claims for Invasion of Privacy (Count IV), Intentional Infliction of Emotional Distress (Count V), Negligence (Count VI), and Defamation (Count VIII). For a number of reasons, Plaintiff has failed to state a claim as to all of these state law claims.

1. As Defendants pointed out in their Motion to Dismiss, the state law claims alleged in Plaintiff's Complaint are premised upon the alleged misconduct committed by Jeffers and

Petta—*e.g.,* there is no allegation that Defendants released Plaintiff's medical records. Mot. Dismiss at 16, 16 n.9. Thus, Defendants would be responsible for the acts of Petta and Jeffers, both of whom are officers of the Local, only if agency principles applied. However, as discussed *supra,* the Complaint contains no allegations that Defendants NAGE and Holway authorized, ratified, or approved of any of the alleged acts underlying the state law tort claims.

2.      The test for whether a state law claim is preempted by federal labor law is not, as Plaintiff suggests, whether the state law provides an independent cause of action. Opp. at 12.[8] Rather, a claim is preempted "if it is based on the same conduct that would support a federal duty of fair representation claim or if it seeks to vindicate the same rights." *Cooper v. TWA Airlines, LLC*, 349 F. Supp. 2d 495, 508 (E.D.N.Y. 2004). Indeed, where a federal statutory provision establishes the exclusive procedure for remedying alleged misconduct within a given field, the facts pleaded to support the state-law cause of action even "need not [state] a cognizable, winning claim [under the federal provision] in order to fall 'within the scope' of the provision for purposes of the jurisdiction analysis." *Plumbing Indus. Bd. v. E.W. Howell, Inc.*, 126 F.3d 61, 69 (2d Cir. 1997); *see also Cooper,* 349 F. Supp. 2d at 508 ("If the duty of fair representation is inapplicable, plaintiff[] cannot avoid that result by simply using state common law labels for [her] claims"); *Wilson v. Libby*, 498 F. Supp. 2d 74 (D.D.C. 2007) (holding that where Congress has created "'an elaborate remedial system' encompassing a plaintiff's claim," courts must defer to that scheme, even where "Congress denies rather than provides a remedy to certain classes of plaintiffs or claims").

---

[8] The case Plaintiff cites for this proposition, *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 256 (1994), addressed the question of when an employer-employee dispute will be subject to the collective bargaining agreement's grievance and arbitration process, which is entirely distinct from the question of when a dispute between a labor union and its member will be preempted.

Here, Congress enacted the CSRA to provide a forum for resolving allegations by union members that their union engaged in misconduct.  As the Supreme Court has recognized, this scheme was designed by Congress "to leave the enforcement of union and agency duties under the Act to ... the FLRA and to confine the courts to the role given them under the Act." *Karahalios v. National Fed'n of Fed. Employees, Local 1263,* 489 U.S. 527, 537 (1989).  Thus, the CSRA "establish[es] the sole mechanism for resolving labor conflicts in the federal arena." *Montplaisir v. Leighton*, 875 F.2d 1, 3 (1st Cir. 1989).

Here, Plaintiff's allegations against NAGE, a national labor organization, and Holway, president of that national labor organization, fall squarely within the purview of the CSRA. Plaintiff's primary complaint, that her medical information was improperly disseminated, is properly characterized as a duty of fair representation claim.  Indeed, Plaintiff presented this allegation to the FLRA, which considered whether the release of Plaintiff's medical information violated the duty of fair representation and, in a decision issued September 28, 2007, held that it did not.[9]  Ex. 1 at 4 ("Without regard to whether or not the Union Representative properly or improperly release information regarding the Charging Party, this alone is insufficient to demonstrate a breach of the duty of fair representation.").

Similarly, Plaintiff's allegation that NAGE or Holway failed to act on her complaints against Jeffers and Petta, must, under the CSRA, be raised within NAGE's internal process for addressing such complaints or be brought to the Assistant Secretary of Labor, who has "exclusive jurisdiction" pursuant to section 7120 of the CSRA, 29 U.S.C. § 7120, over such matters.  Ex. 1 at 3 ("Charging Party also alleges that NAGE National failed to comply with its constitution and bylaws, to investigate her complaints against the Local Union, and to take action

---

[9] The FLRA's decision, which is a matter of public record, is attached hereto as Exhibit 1.

against either the Local Union or a Local Union Representative…. [T]he issues involve matters internal to the union and must be raised through whatever internal process NAGE has established … and/or through a complaint to the Assistant Secretary of Labor."); *American Fed'n of Gov't Employees*, 8 F.L.R.A. 718, 718 (1982) (*AFGE*) ("[T]he matters at issue involve allegations that certain of the Respondent's conduct was inconsistent with and violative of its constitution and bylaws, and thus are matters within the exclusive jurisdiction of the Assistant Secretary of Labor pursuant to the provisions of section 7120 of the Statute.").

**3.**      Finally, Plaintiff challenges Defendant's preemption argument as applied to her defamation and D.C. Mental Health Information Act claims. Specifically, Plaintiff argues that state law defamation claims have been brought against Holway in the past and that as the certified bargaining representative, NAGE was responsible for complying with the D.C. Mental Health Information Act. Opp. at 12. Both arguments are wrong as a matter of law.

To begin with, Plaintiff has not stated a defamation claim against Defendants here. While it is true that the district court in *Johnson v. Holway* ruled on the merits of a defamation action brought against Defendant Holway, plaintiffs in that case were suing Holway and the other named individuals for statements they themselves made in their individual capacities. Here, in contrast, because the Complaint contains no allegation that Holway himself made any false and defamatory statement concerning Plaintiff, Compl. ¶¶ 77-80, the only case Plaintiff could have against Holway[10] or NAGE, aside from one based on agency principles, would be a claim alleging that NAGE and Holway were obligated to respond to Plaintiff's protests about Jeffers's allegedly defamatory statements or to discipline Jeffers by virtue of some duty owed to

---

[10] Because there is no allegation that Holway made any defamatory statement, Plaintiff's only claim against Holway would have to be in his official capacity as NAGE's president. Indeed, neither Holway nor NAGE are even mentioned in the defamation count. Compl. ¶¶ 77-80.

Plaintiff by the parent labor organization.  Such a claim, however, would be preempted as it would be either a claim that Defendants failed to fairly represent Plaintiff or that Plaintiff was not provided some procedural avenue or protection due under NAGE's Constitution or other governing document—both of which are preempted by the CSRA.  *Supra* at 15-16.

Nor is Plaintiff correct in arguing that because NAGE is the certified bargaining representative, NAGE is responsible for Jeffers's and Petta's compliance, or alleged lack thereof, with the D.C. Mental Health Information Act.  Opp. at 12.  The D.C. Health Information Act of 1978, D.C. Code Ann. § 7.1201.01 *et seq*., makes it unlawful for a mental health professional, facility, or its employees to disclose or permit the disclosure of mental health information without authorization, unless certain exceptions are met.  While it is not clear how this statute would apply to the facts as alleged in Plaintiff's Complaint, at a minimum, one can certainly say that nothing in the statute makes the certified bargaining representative, as opposed to the entity with possession and control over the mental health information at issue—which in this case was the Local—responsible for unauthorized disclosure of that information.  Because of this, the only cause of action Plaintiff would have against NAGE (or Holway in his official capacity), aside from one based on agency principles, would again be a preempted claim—either that Defendants breached their duty of fair representation or that Defendants violated some internal union procedure.

**Conclusion**

For the foregoing reasons, and those set forth in Defendants' Motion to Dismiss,

Plaintiff's Amended Complaint fails to state a claim upon which relief should be granted.

Respectfully submitted,

_____/s/_____
W. Gary Kohlman (No. 177527)
Abigail V. Carter (No. 474454)
BREDHOFF & KAISER, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C.  20005
Telephone:  (202) 842-2600
Fax:  (202) 842-1888

*Counsel for National Association of*
*Government Employees and Defendant*
*David Holway*

Dated: October 19, 2007

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on this 19th day of October, 2007, she filed the

Defendants' Reply in Support of Defendants' Motion to Dismiss, through the Court's ECF

system and served paper copies to the following parties via UPS Second Day Air:

Rhonda N. Baird
13615 Layhill Road
Silver Spring, MD 20906

Dwayne Jeffers
1200 K Street, NW
Washington, DC 20005

Richard Petta
1200 K Street, NW
Washington, DC 20005

Robert Perry
1354 Monaco Drive
Severn, MD 21144

_____/s/_____
Abigail V. Carter



UNITED STATES OF AMERICA
## FEDERAL LABOR RELATIONS AUTHORITY
### SAN FRANCISCO REGION
901 Market Street, Suite 220
San Francisco, California 94103-1791
(415) 356-5000  Fax:(415) 356-5017

September 28, 2007

Rhonda Baird
13615 Layhill Road
Silver Spring, MD  20906

Re:    National Association of Government
          Employees, SEIU
          Case No. WA-CO-06-0467
              -and-
          National Association of Government Employees,
          Local R3-77, SEIU
          Case No. WA-CO-06-0468

Dear Ms. Baird:

The unfair labor practice charges in these cases were filed with the Washington Regional Office on May 18, 2006 and were transferred to the San Francisco Regional Office on May 9, 2007. . After investigation, consideration of the evidence, and application of the law to the facts, issuance of a complaint is not warranted.

As clarified in the investigation, the charge in Case No. WA-CO-06-0467 alleges that the National Association of Government Employees, SEIU, AFL-CIO (NAGE National) violated section 7116(b)(1)(2)(3) and (4) of the Federal Service Labor-Management Relations Statute (Statute) by acts in derogation of the duty of fair representation, by failing to fulfill obligations under the union's constitution and bylaws, and by discriminating against Charging Party.

The charge in Case No. WA-CO-06-0468, as clarified, alleges that the National Association of Government Employees, Local R3-77, SEIU, AFL-CIO (Local Union) violated section 7116(b)(1)(2)(3) and (4) of the Statute by violating orders of an Arbitrator and District Court, failing to investigate alleged misconduct of certain union representatives, interfering with the Charging Party's right to arbitrate a grievance, attempting to cause Charging Party's employer to discriminate against her; and discriminating against Charging Party with respect to union membership by refusing to fund her arbitration, process her complaints and/or provide her with proper representation.  The FLRA has jurisdiction over the matters raised in these charges.

Charging Party works as an attorney for the Pension Benefit Guarantee Corporation (PBGC).  At the time of the events involved in these cases, the Local Union held exclusive recognition for a unit of PBGC employees.  Charging Party was included in the unit of exclusive recognition and was a member of the Local Union at all times relevant to the events involved in these cases.

By way of background, Charging Party filed a grievance with the Local Union's assistance in late 2002.  The grievance was not resolved and, on February 20, 2003, the Local Union invoked arbitration.  In accordance with existing policy, NAGE National then determined whether or not to proceed to arbitration.  On January 12, 2004, the NAGE National President issued a final

decision to deny both representation and financial support for the arbitration of Charging Party's grievance.

The Local Union then notified Charging Party that although neither NAGE National nor the Local Union would represent her in arbitration, she could proceed at her own expense if she wished. Charging Party elected to proceed. On February 24, 2004, the Local Union agreed to Charging Party's request that her representative for the arbitration proceeding be authorized to receive official time for that purpose. The Charging Party had designated as her representative a unit employee who was also a Local Union Representative.

The arbitrator initially made a determination that the case could proceed on the merits. He then conducted 13 days of hearing. On April 20, 2005, the arbitrator issued a 90 page decision on the merits of the grievance. The arbitrator retained certain remedy issues for future proceedings. Thus, at the time of the events involved in these cases, the arbitration of the grievance had not been completed.

As a preliminary matter, to the extent that the allegations raised are based on conduct and actions that occurred prior to November 17, 2005, they are untimely raised in these charges and must be dismissed. In this regard, section 7118(a)(4)(A) of the Statute requires that any charge must be filed within six months of the alleged unfair labor practice. *U.S. Dep't of Labor*, 20 FLRA 296, 297 (1985) *(DOL)*. Thus, a charge must be "based on events occurring within the six-month period preceding the original charge[.]" *U.S. Penitentiary, Florence, Colo.*, 53 FLRA 1393, 1402 (1998).

Section 7118(a)(4)(B) provides an exception to this six month rule, where the charging party does not learn of the alleged unfair labor practice immediately, either due to a respondent's failure to perform a duty owed to the charging party, or because of concealment of the alleged unfair labor practice. *Dep't of the Treasury, U.S. Customs Serv., El Paso, Tex.*, 55 FLRA 43, 46 (1998); *U.S. Dep't of the Air Force, Williams Air Force Base, Chandler, Ariz.*, 38 FLRA 549, 560-61 (1990) (failure of agency to provide union with notice of change in working conditions warranted suspension of six month filing deadline for unfair labor practice charge). *See also, Veterans Admin. and Veterans Admin. Med. Ctr., Lyons, N.J.*, 24 FLRA 255 (1986)(breach of duty alone, is not enough to warrant exception; the failure to perform a duty must have prevented the discovery of the unfair labor practice within six months of its occurrence).

In these cases, there is no contention that NAGE National or the Local Union concealed alleged unfair labor practice conduct from the Charging Party. In addition, that the Charging Party was prevented from raising her allegations within six months based on failure by NAGE National or the Local Union to perform a duty owed her. In these circumstances, it is concluded that all allegations raised in these charges that are based on conduct that occurred on or before November 17, 2005 are untimely filed. *DOL*.

Further, no evidence was presented in either case to support a finding that NAGE National or the Local Union discriminated against the Charging Party in terms and conditions of membership in the labor organization.

With respect to Case No. WA-CO-06-0467, the Charging Party contends that in its treatment of her, NAGE National failed to comply with federal labor and civil rights laws. To the extent that these contentions involve alleged breaches of the standards of conduct for labor organizations set out in section 7120(a) through 7120(d) of the Statute, the issues must be raised with the Assistant

2

Secretary of Labor. Such allegations do not involve unfair labor practice conduct. Similarly, issues related to rights and obligations under civil rights laws, must be raised through the statutory or administrative procedures established for addressing such matters. These allegations also do not involve unfair labor practice conduct.

Charging Party also alleges that NAGE National failed to comply with its constitution and bylaws, to investigate her complaints against the Local Union, and to take action against either the Local Union or a Local Union Representative. To the extent any of these allegations are timely raised in Case No. WA-CO-06-0467, the issues involve matters internal to the union and must be raised through whatever internal process NAGE has established for addressing such matters and/or through a complaint to the Assistant Secretary of Labor. *See, Am. Fed. of Gov't. Employees*, 8 FLRA 718 (1982)(*AFGE*). These allegations do not involve unfair labor practice conduct.

In addition, the charge alleges that NAGE National's treatment of the Charging Party was an attempt to retaliate and discriminate against her for giving declarations in legal actions and for filing and pursuing unfair labor practice charges against both NAGE National and the Local Union. To the extent this allegation is timely raised, the investigation revealed that Charging Party provided declarations on behalf of plaintiffs in a lawsuit challenging NAGE National's imposition of a trusteeship on the Local Union. In addition, Charging Party filed unfair labor practice charges against NAGE National and the Local Union. She provided evidence in the investigations of the charges she filed. evidence that she had for testifying in court

While the Charging Party supported the lawsuit and filed charges against the union, the evidence fails to establish that NAGE National failed to comply with its constitution and bylaws, to investigate her complaints or to take action against the Local Union because she had done so. Further, there is no evidence to suggest that NAGE National engaged in violations of federal labor or civil rights laws because of Charging Party's support of the lawsuit and pursuit of unfair labor practice charges.

No evidence was presented of any attempt by NAGE National to cause or attempt to cause PBGC to discriminate against Charging Party or to coerce, discipline, fine or attempt to coerce Charging Party as punishment, reprisal or for the purpose of hindering or impeding her work performance, productivity or discharge of duties. Thus, there is no evidence in this case that of a violation of section 7116(b)(1)(2) and/or (3) of the Statute.

In Case No. WA-CO-06-0468, the Charging Party contends that the Local Union violated the Statute when a Union Representative released information concerning her in response to a subpoena in a U.S. District Court action. In this regard, the Charging Party alleges that the Local Union's conduct violated both an Arbitrator's order and a court order. To the extent these allegations are timely raised, it is concluded that no violation of the Statute occurred. First, an alleged failure to comply with a court order must be addressed through the court and does not involve unfair labor practice conduct.

As to the alleged violation of the Arbitrator's order, the investigation revealed that the Charging Party's grievance was subject to a bifurcated arbitration process. At the time the alleged release of information occurred, no final arbitration decision had been issued because the remedy portion of the case had not been heard. Therefore, there was no final and binding arbitration award. However, Charging Party contends that the Arbitrator made statements about release of information related to the arbitration and that the Local Union acted contrary to these instructions by providing such information in connection with the court proceeding.

It is an unfair labor practice to refuse to comply with a final and binding arbitration award. See, e.g., *Dep't. of the Treasury, U.S. Customs Svce., New York Region, New York, N.Y.*, 21 FLRA 119 (1986). In this case, there was no arbitration award that addressed the issue of the release of information and documents in connection with the Charging Party's case. Therefore, at the time the alleged improper release of information in the court proceeding occurred, there was no final and binding award. Thus, to the extent the Local Union released improperly released information related to the arbitration, this conduct did not violate the Statute.

The charge also alleges that the Union Representative made statements in a PBGC investigation in April 2006 that improperly released and falsely portrayed Charging Party's private medical information. In this regard, Charging Party asserts that the Union Representative informed her that he had been directed by agency management to release her medical diagnosis in an agency investigation into claims he had made against her. Charging Party contends that the release of this information was improper and constituted an attempt to cause the agency to discriminate against her. She notes that her appraisal has been lowered since the time that the Union Representative made these remarks to agency representatives.

Section 7114(a)(1) of the Statute imposes on federal sector unions a duty to fairly represent employees. In accordance with section 7114(a)(1), where a union is acting as the exclusive representative of its unit members, the activities of the union must be undertaken without discrimination and without regard to union membership. *See, Fort Bragg Ass'n of Educators, Nat'l Educ. Ass'n, Fort Bragg, N.C.*, 28 FLRA 908, 918 (1987) (*Fort Bragg*).

In addition, where union membership is not an issue, the test is whether the union deliberately and unjustifiably treated one or more bargaining unit employees differently from other employees in the unit. The union's actions must amount to more than mere negligence or ineptitude; the union must have acted arbitrarily or in bad faith, and the action must have resulted in disparate or discriminatory treatment of a bargaining unit employee. *Nat'l Fed'n of Fed. Employees, Local 1453*, 23 FLRA 686 (1986) (*NFFE*). A failure of the duty of fair representation is a violation of section 7116(b)(1) and (8) of the Statute and this charge has been considered as if it had alleged violations of section 7116(b)(1) and (8) of the Statute.

There is no evidence in this case that the Local Union directly sought to influence agency management to take an action against the Charging Party or to otherwise discriminate against her in violation of section 7116(b)(1) and (2) of the Statute. Rather, this allegation raises issues of whether the Local Union failed in its duty to fairly represent the Charging Party.

As regards the conduct of the Union Representative in the 2006 investigation, the evidence does not establish that a violation of the Statute occurred. Without regard to whether or not the Union Representative properly or improperly released information regarding Charging Party, this alone is insufficient to demonstrate a breach of the duty of fair representation. *Ft. Bragg; NFFE.*

With respect to the allegation that the Local Union failed to address her complaint about the alleged misconduct of certain union representatives, like the similar allegations against NAGE National, this allegation involves matters internal to the union and must be raised through whatever process NAGE has established for addressing such matters and/or through a complaint to the Assistant Secretary of Labor. *AFGE.* The allegation does not involve unfair labor practice conduct.

4

The charge also alleges that the Local Union discriminated against Charging Party with respect to her membership in the labor organization by failing to address her complaints about internal union matters and by failing to provide proper representation and financial support in her arbitration. To the extent these allegations are timely raised, the investigation revealed that the Charging Party has continued to attempt to secure union financial assistance in covering thousands of dollars of arbitration expenses.

Following the determination in January 2004 that the union would not provide representation or financial assistance in arbitration, neither NAGE National nor the Local Union has ever reversed this decision. No evidence was presented to suggest that the failure to change position on providing representation and/or funding the arbitration was discriminatory or that other unit employees were treated differently in similar circumstances. Thus, there is insufficient evidence to establish that the Local Union's conduct violated section 7116(b)(1) and (4) of the Statute.

Finally, the charge alleges that the Local Union's conduct amounted to interference, restraint or coercion with respect to the exercise of protected rights, including her right to proceed to arbitration. The evidence fails to establish that any of the conduct discussed above violated Charging Party's rights under the Statute. Further, there is no evidence of any independent interference with statutory rights in this matter or any statement made by any Local Union representative that interfered with protected rights. In particular, there is no evidence that the Local Union interfered with Charging Party's right to arbitrate her grievance.

The Charging Party has no independent right to arbitrate a grievance, only the parties to exclusive recognition have this right. In this case, the Local Union refused to arbitrate the grievance in 2004, but permitted Charging Party to proceed to arbitration without union representation and at her own expense. The statements and conduct of Local Union representatives between November 17 and May 18, 2006 do not change the union's 2004 denial of representation and refusal to pay for the arbitration. Therefore, the evidence fails to establish that the Local Union denied the Charging Party any right to arbitration as alleged in the charge.

Based on the foregoing, there is no basis for finding a violation of the Statute in either of these charges. Therefore, the charges are dismissed. An appeal may be filed by mail or hand delivery with the Office of the General Counsel at the following address:

> Federal Labor Relations Authority
> Office of the General Counsel
> 1400 K Street N.W., 2nd Floor
> Attention: Appeals
> Washington, D.C. 20424-0001

Whichever method is chosen, please note that the last day for filing an appeal of the dismissal (Case Nos. WA-CO-06-0467 and WA-CO-06-0468) is **October 29, 2007**. This means that an appeal that is mailed must be postmarked, or an appeal must be hand delivered, no later than , **October 29, 2007**. Please send a copy of your appeal to the Regional Director.

If more time is needed to prepare an appeal, a motion to request an extension of time may be filed. Mail or hand deliver the request for an extension of time to the Office of the General Counsel at the address listed above. Because requests for an extension of time must be **received** at least five days before the date the appeal is due, any request for an extension of time in this case must be **received** at the above address no later than **October 24, 2007**.

The procedures, time limits and grounds for filing an appeal are set forth in the Authority's Regulations, contained in Volume 5 of the Code of Federal Regulations at section 2423.11. The regulations may be found at any Authority Regional Office, public law library, some large general purpose libraries, Federal Personnel Offices and the Authority's Internet site: www.flra.gov. I have also enclosed a document that summarizes commonly-asked questions and answers regarding the Office of the General Counsel's unfair labor practice appeals process.

Sincerely,

*Gerald M. Cole*

Gerald M. Cole
Regional Director

Enclosures:    Certificate of Service
               Questions and Answers About Appeals

cc:    Gina Lightfoot Walker, Deputy General Counsel, National Association of Government Employees, SEIU, 601 North Fairfax Street, Suite, 125, Alexandria, VA  22314

       Colleen Duffy Kiko, General Counsel, Office of the General Counsel, Federal Labor Relations Authority, 1400 K Street NW, Second Floor, Washington, D.C.  20424-0001